**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SYNCPOINT IMAGING, LLC, | |
|      Plaintiff, | |
| v. | |
| NINTENDO OF AMERICA INC., a Washington Corporation; NINTENDO CO., LTD, a Japanese Corporation; GAME X CHANGE, INC., an Arkansas Corporation; GAMES2GO, a business in the Eastern District of Texas, and PIXART IMAGING, INC., a Taiwanese Corporation, | CIVIL ACTION NO. 2:15-cv-00247-JRG-RSP |
|      Defendants. | |

## **PLAINTIFF'S OPPOSITION TO DEFENDANT PIXART IMAGING INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND FAILURE TO STATE A CLAIM**

## **<u>TABLE OF CONTENTS</u>**

BRIEF STATEMENT OF FACTS ............................................................................................. 1

ARGUMENT ........................................................................................................................... 4

    A.    PixArt is Subject to Personal Jurisdiction In Texas ................................................ 4

        1.   PixArt, In Concert With Nintendo Defendants, Purposefully Directed
             Activities Into Texas. ................................................................................. 6

        2.   The Claims Arise Out of PixArt's Contacts with Texas ................................... 9

        3.   This Court's Exercise of Personal Jurisdiction over PixArt Comports with
             Constitutional Requirements .......................................................................... 11

    B.    For Similar Reasons, Venue is Proper in the Eastern District of Texas ................. 14

    C.    In The Alternative, this Court Should Allow Limited Jurisdictional Discovery on
        the Issues of Personal Jurisdiction and Venue ....................................................... 15

    D.    PixArt's Motion Should Be Denied Because SyncPoint's Complaint is Sufficient
        to State a Claim ..................................................................................................... 17

        1.   SyncPoint Pleads A Cause of Action For Breach of Contract Because the Court
             Must Not Consider Facts Outside of the Complaint ....................................... 18

        2.   SyncPoint States A Plausible Claim For Direct Infringement. ........................ 22

        3.   SyncPoint States A Plausible Claim For Inducement ..................................... 23

        4.   SyncPoint States A Plausible Claim for Contributory Infringement .............. 24

        5.   In the Alternative, This Court Should Grant SyncPoint's Request to Amend
             The Complaint. .............................................................................................. 27

CONCLUSION ...................................................................................................................... 28

# **TABLE OF AUTHORITIES**

## **Cases**

*Achates Reference Pub., Inc. v. Symantec Corp.,*
No. 2:11-CV-294-JRG-RSP, 2013 WL 693955 (E.D. Tex. Jan. 10, 2013) ......................................... 25, 26

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.,*
480 U.S. 102 (1987) .................................................................................................................................. 9

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) ........................................................ 18, 27

*Avocent Huntsville Corp. v. Aten Int'l Co.,*
552 F.3d 1324 (Fed. Cir. 2008) ............................................................................................................. 12

*Bausch v. Stryker Corp.,*
630 F.3d 546 (7th Cir. 2010) ................................................................................................................. 19

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................................................... 20

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
21 F.3d 1558 (Fed. Cir. 1994) ................................................................................................................. 5

*Boudeloche v. Grow Chem. Coatings Corp.,*
728 F.2d 759 (5th Cir.1984) .................................................................................................................. 20

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.,*
748 F.3d 631 (5th Cir. 2014) ................................................................................................................. 18

*Burger King Corp. v. Rudzewicz,*
71 U.S. 462 (1985) .............................................................................................................................. 5, 12

*Carter v. Stanton,*
405 U.S. 669 (1972) ............................................................................................................................... 18

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.,*
 395 F.3d 1315 (Fed. Cir. 2005) ............................................................................................................ 4, 9

*CoreBrace LLC v. Star Seismic LLC,*
566 F.3d 1069 (Fed.Cir.2009) ............................................................................................................... 17

*Cross Med. Prods., Inc. v. Medtronic Sofamore Danek, Inc.,*
424 F.3d 1293 (Fed.Cir.2005) ............................................................................................................... 25

*El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.,*
344 F.Supp.2d 986 (S.D.Tex.2004) ....................................................................................................... 15

*Electronics for Imaging Inc. v. Coyle*,
340 F.3d 1344 (Fed. Cir. 2003)...........................................................................................5

*Fotomedia Techs., LLC v. AOL, LLC*,
2008 WL 4135906 (E.D. Tex., Aug.29, 2008) ...................................................................24

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*,
867 F. Supp. 2d 859 (E.D. Tex. 2012) ...........................................................................6, 11

*GSK Technologies, Inc. v. Schneider Electric, S.A.*,
No. 6:06–CV–361, 2007 WL 788343 (E.D.Tex. March 14, 2007) .....................................4, 6

*In re Bill of Lading Transmission and Processing System Patent Lit.*,
681 F.3d 1323 (Fed.Cir.2012)............................................................................................24

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
326 U.S. 310 (1945)........................................................................................................5, 12

*Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.*,
No. 2:10-CV-90-TJW, 2011 WL 1004873 (E.D. Tex. Mar. 18, 2011) .........................22, 24, 26

*Jamieson v. Shaw*,
772 F.2d 1205 (5th Cir.1985) .............................................................................................27

*Keeton v. Hustler Magazine, inc.*,
465 U.S. 770 (1984)...........................................................................................................12

*Lormand v. U.S. Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ..............................................................................................17

*McZeal v. Sprint Nextel Corp.*,
501 F.3d 1354 (Fed. Cir. 2007)...............................................................................20, 22 ,23

*Morgan v. Hubert*,
335 Fed.Appx. 466 (5th Cir.2009) ......................................................................................18

*N. Am. Philips Corp. v. Am. Vending Sales*,
35 F.3d 1576 (Fed. Cir. 1994).............................................................................................11

*Paul v. Aviva Life and Annuity Co.*,
2009 WL 3815949 (N.D.Tex. Nov.12, 2009) ......................................................................15

*PI, Inc. v. Valcour Imprinted Papers, Inc.*,
465 F. Supp. 1218 (S.D.N.Y. 1979).....................................................................................16

*PixArt Imaging Inc. v. Agilent Technologies, Inc.*,
5:03-cv-04871-JW ..............................................................................................1, 2, 8, 10, 13

*QR Spex, Inc. v. Motorola, Inc.*,
507 F. Supp. 2d 650 (E.D. Tex. 2007).................................................................................4

*Randall D. Wolcott, M.D., P.A. v. Sebelius,*
635 F.3d 757 (5th Cir.2011) .......................................................................................... 18

*Renfrow v. BDP Innovative Chemicals Co.,*
No. CV-14-01183-PHX-GMS, 2014 WL 7146792 (D. Ariz. Dec. 15, 2014) .................... 5

*Rodale, Inc. v. U.S. Preventive Med., Inc.,*
2008 WL 4682043 (E.D.Tex. Oct.21, 2008). ................................................................. 15

*Secure Axcess, LLC v. Trustmark Nat'l Bank,*
2014 WL 3884258 (E.D. Tex. Aug. 7, 2014) .................................................................. 14

*Selva & Sons, Inc. v. Nina Footwear, Inc.,*
705 F.2d 1316 (Fed. Cir. 1983).................................................................................... 18

*Semitool, Inc. v. Tokyo Electron Am., Inc.,*
208 F.R.D. 273 (N.D. Cal. 2002).................................................................................. 16

*St. Louis Group, Inc. v. Metals and Additives Corp., Inc., et al.,*
275 F.R.D. 236, FN 4 (S.D. Tex. 2011) ........................................................................ 16

*Toys "R" Us, Inc. v. Step Two, S.A.,*
318 F.3d 446, 456 (3rd Cir. 2003) ................................................................................ 16

*Traffic Info., LLC v. YAHOOA Inc.,*
No. 2:09-CV-246-TJW-CE, 2010 WL 2545500, at *3 (E.D. Tex. Apr. 13, 2010).................... 25

*Tune Hunter Inc. v. Samsung Telecommunications Am., LLC,*
No. 2:09–cv–148–TJW, Dkt. No. 130, at *5–7 (E.D.Tex. Apr. 10, 2010) .......................... 24

*Varela v. Gonzales,*
773 F.3d 704, 707 (5th Cir. 2014) ................................................................................ 18

*Viam Corp. v. Iowa Export–Import Trading Co.,*
84 F.3d 424, 428 (Fed. Cir. 1996).................................................................................. 4

*Walden v. Fiore,*
134 S. Ct. 1115 (2014)................................................................................................ 12

*Whitmire v. Victus Ltd.,*
212 F.3d 885 (5th Cir. 2000) ....................................................................................... 27

*Wimm v. Jack Eckerd Corp.,*
3 F.3d 137 (5th Cir. 1993) .......................................................................................... 27

*Womack v. Nissan North America, Inc.,*
No. 2:06-cv-479-DF, 2007 WL 5160790 (E.D. Tex. Oct. 12, 2007)........................................ 16

*Worldwide Fin. LLP v. Kopko,*
No. 1:03-cv-0428-DFH, 2004 WL 771219 (S.D. Ind. Mar. 18, 2004) ............................. 16

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ................................................................................................................6, 12

**Statutes**

28 U.S.C. § 1391(c) .................................................................................................................... 14

28 U.S.C. § 1391(d) .................................................................................................................... 14

28 U.S.C. §§ 1338(a) .................................................................................................................. 11

35 U.S.C. § 271(b) ...................................................................................................................... 24

35 U.S.C. 287(a) ......................................................................................................................... 25

**Rules**

Fed. R. Civ. P. 12(b)(2) ................................................................................................................ 4

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 20

Fed. R. Civ. P. 15(a) .................................................................................................................. 27

Fed. R. Civ. P. 56 ....................................................................................................................... 18

Fed. R. Civ. P. 8(a)(2) ................................................................................................................ 23

Plaintiff SyncPoint Imaging, LLC ("SyncPoint") opposes Defendant PixArt Imaging Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim (hereinafter referred to as "Motion to Dismiss" or "Motion"). Accordingly, SyncPoint asks this Court to exercise jurisdiction over this case or, in the alternative, allow limited jurisdictional discovery to uncover facts relevant to PixArt's contacts with the forum and grant SyncPoint leave to amend its Complaint if necessary.

## BRIEF STATEMENT OF FACTS

1.     Plaintiff brought this patent infringement lawsuit in the Eastern District of Texas  (this "District") because of certain infringement activities by PixArt related to U.S. Patent No. 6,275,214 ("the '214 Patent").

2.     Defendant PixArt is a Taiwanese corporation with its principal place of business in Hsin-Chu, Taiwan, Republic of China with a principal place of business at 5 Innovation Rd., Hsin Chu Science Industrial Park, Hsin Chu, Taiwan. *See* Dkt. No. 1 at ¶ 8; Dkt. No. 42 p. 3; *see also PixArt Imaging Inc. v. Agilent Technologies, Inc.,* 5:03-cv-04871-JW, Dkt. No. 1 at ¶ 1.

3.     PixArt produces products that are used in a wide variety of applications that require image capture technology, such as digital cameras, digital camcorders, video conferencing systems, security systems, and optical mice. *PixArt Imaging Inc. v. Agilent Technologies, Inc.,* 5:03-cv-04871-JW, Dkt. No. 1, at ¶ 1. The product at issue in the PixArt declaratory judgment action includes the CMOS-process optical navigation sensors. *Id.*

4.     PixArt makes a CMOS-process optical navigation sensor for CompUSA, a leading retailer and reseller of personal computer-related products and services in the United States. *Id.* at ¶ 7.

5.     In a previous litigation, titled *PixArt Imaging Inc. v. Agilent Technologies, Inc.,* 5:03-cv-04871-JW ("PixArt DJ Action"), PixArt consented to personal jurisdiction in a U.S. federal court and purposefully availed itself of such privileges for purposes of seeking a declaratory judgment of non-infringement and invalidity of a U.S. patent. In the PixArt DJ Action, PixArt grounded jurisdiction and its argument that a case or controversy existed on the fact that PixArt makes component parts for a product that is sold in the United States. *Id.* at ¶¶ 6-7, 12, 14.

6.     In the PixArt DJ Action, Pixart claimed that it designed, developed, and marketed these component parts to customers who plan to incorporate these parts into their products or "who plan directly or indirectly to distribute such [products] to other companies for sale in the United States." *Id.* at ¶ 14.

7.     In the PixArt DJ Action, PixArt never once argued that it could not infringe because it did not do business in or sell its products in the United States. *Id.*

8.     Yet despite its admissions and pleadings in the PixArt DJ Action, PixArt now claims that its business practices (at least with respect to Nintendo) "are entirely outside the reach of U.S. patent law." Dkt. No. 42, p. 1.

9.     In its present Motion to Dismiss, PixArt admits that it designs components and parts for Nintendo Japan, claiming "PixArt designs components for Nintendo Japan." *Id.* at p. 26-27.  PixArt does not deny that its designs for components and parts that are sold to Nintendo are used in the Wii and Wii U video game systems.

10.    PixArt strongly suggests that it receives substantial revenue sales based on Nintendo's sale of the Nintendo Wii gaming system by claiming that "PixArt provided the

required accounting statements showing its sales of Licensed Products never exceeded the 180,000 threshold, and therefore could not have included sales to Nintendo." *Id.* at p. 4.

11.     PixArt, who conducts direct business with Nintendo, would have actual sales numbers with respect to its revenue derived from sales in the United States and Texas. *Id.*

12.     Although PixArt claims that "[n]o PixArt-designed components are delivered to Nintendo in the United States…through distribution channels **put in place by PixArt**," (Dkt. No. 42, p. 3), it specifically does not controvert SyncPoint's allegation that its component parts are sold "in many places, including Texas and the Eastern District of Texas" and that it has, through Nintendo and its U.S distributor, placed "video game systems into the stream of commerce with the intent that they be sold, offered for sale, purchased, and used…in Texas." Dkt. No. 1, ¶ 14-16.

13.     Related technology that was at issue in the PixArt DJ Action is incorporated into Nintendo's products. *See* Declaration of Joseph Pia, attached hereto as Exhibit 1, Pixart Teams With Nintendo For Sensor Tracking Technology For Wii Controller ("PixArt Imaging Incorporation (PixArt), a market leader in CMOS sensor SoC (System-On-a-Chip) and related application semiconductors, today announces a strategic relationship with Nintendo Co., Ltd., to provide object tracking technology for Nintendo's new-generation gaming controller, the Wii Remote. PixArt's premium tracking technology will enable Nintendo to present innovative interaction gaming controllers for its new-generation gaming platform, Wii.").

14.     PixArt does not deny that it entered into a patent license agreement with SyncPoint here in the United States. *Id.*

15.     Texas, particularly the Eastern District of Texas, maintains a strong interest in adjudicating this dispute because it is SyncPoint's domicile and the location of substantial amounts of infringing products.

## ARGUMENT

### A.  PixArt is Subject to Personal Jurisdiction In Texas

SyncPoint's complaint against PixArt establishes a prima facie case for personal jurisdiction and has met its low burden. Because PixArt fails to controvert relevant jurisdictional facts alleged by SyncPoint, the complaint should not be dismissed.  *See* Fed. R. Civ. P. 12(b)(2).

Federal Circuit precedent controls personal jurisdiction in patent cases because jurisdiction is "intimately involved in the substance of enforcement of the patent right." *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 655 (E.D. Tex. 2007) (quoting *Viam Corp. v. Iowa Export–Import Trading Co.,* 84 F.3d 424, 428 (Fed. Cir. 1996)). Both the state's long arm statute and the requirements of federal due process must be satisfied in order for a court to exercise jurisdiction. *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005) (remanding the issue of personal jurisdiction for further inquiry because the defendant had derived substantial revenue from its sales to the United States and Delaware, even though the defendant had not directly conducted business in Delaware). The long arm statute in Texas is "co-extensive with federal limits on personal jurisdiction." *QR* Spex, 507 F. Supp. 2d at 655.  Therefore, the Texas long arm statute requirements collapse into those of federal due process. *GSK Technolgies, Inc. v. Schneider Elec., S.A.*, No. 606CV361, 2007 WL 788343, at *1 (E.D. Tex. Mar. 14, 2007).

The Federal Circuit applies the Supreme Court's minimum contacts test in patent cases. *QR* Spex, 507 F. Supp. 2d at 655. A court may exercise jurisdiction over a foreign defendant if it

determines that such exercise would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).  Minimum contacts "must be purposeful contacts." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)). A purposeful contact gives "fair warning that a particular activity may subject them to litigation within the forum." *Id.* at 1565.

Personal jurisdiction is either general or specific.  Courts may exercise general jurisdiction over a defendant if their contacts with the forum state are "continuous and systematic." *Renfrow v. BDP Innovative Chemicals Co.*, No. CV-14-01183-PHX-GMS, 2014 WL 7146792, at *1 (D. Ariz. Dec. 15, 2014). These contacts do not have to be associated with the complaint. *Id.* at *1.  Specific jurisdiction exists when a party deliberately engages in "significant activities within a state or has created continuing obligations between himself and residents of the forum." *Id.* at *1 (quoting *Burger King*, 471 U.S. at 475–76).

The Federal Circuit applies a three-part test for district courts to follow to determine whether specific jurisdiction exists over an out-of-state defendant in patent cases. *Electronics for Imaging Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).  A court may exercise jurisdiction if it finds the following:

(1) the defendant purposefully directed its activities at residents of the forum state,

(2) the claim arises out of or relates to the defendant's activities in the forum state, and

(3) assertion of personal jurisdiction is reasonable and fair.

*Renfrow*, 2014 WL 7146792 at *2 (quoting *Electronics for Imaging Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003)). "Directly shipping a product to a state qualifies as purposeful direction,

and, if that product is the alleged infringing product, the first two prongs of the specific jurisdiction test are met." *Renfrow*, 2014 WL 7146792 at *2.

Although SyncPoint bears the burden of proof that jurisdiction is proper, "in the absence of an evidentiary hearing, pleadings are construed in the plaintiff's favor and the plaintiff 'need only to make a prima facie showing that defendants are subject to personal jurisdiction.'" *Renfrow*, 2014 WL 7146792 at *2 (quoting *Electronics*, 340 F.3d at 1349).

### 1. *PixArt, In Concert With Nintendo Defendants, Purposefully Directed Activities Into Texas.*

PixArt is subject to personal jurisdiction in Texas because it purposefully directed its infringing activities to Texas by: (1) having actual knowledge of the patent, (2) willfully ignoring the patent, (3) while selling and profiting from designs it sells to a known multi-national gaming corporation that PixArt knows utilizes extensive channels of commerce and networks within Texas and the United States. This Court should exercise jurisdiction over PixArt because it actively derives substantial benefit from these established channels through which its infringing designs are sold.

Under Supreme Court precedent as applied by this Court, exercise of jurisdiction over a foreign defendant is proper where the corporation "delivers its [infringing designs] into the stream of commerce with the expectation that [those designs] will be purchased by consumers in the forum State." *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 866 (E.D. Tex. 2012) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98 (1980); *GSK Technologies, Inc. v. Schneider Electric, S.A.,* No. 6:06–CV–361, 2007 WL 788343, at *2 (E.D.Tex. March 14, 2007)). Where such a sale is not an isolated occurrence but represents the defendant's efforts to either directly **or indirectly** serve the market, then jurisdiction is proper. *Frito-Lay*, 867 F. Supp. 2d at 866 (emphasis added).

In *Beverly Hills Fan,* a Taiwanese manufacturer and its United States distributor were sued in Virginia. 21 F.3d 1558, 1566. The defendants claimed that they did not have sufficient contacts in the forum state to give the parties fair warning that litigation might occur there. *Id.* The court disagreed: "Defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Id.* The court found that through the Taiwanese manufacturer's business dealings with its United States distributor, the manufacturer could not profess ignorance of the judicial system or U.S. channels of commerce. *Id.* at 1569.

Like the Taiwanese manufacturer in *Beverly Hills Fan,* PixArt cannot escape liability for knowingly providing infringing designs to a multi-national corporation to whom it knows sells into Texas. PixArt admits that it knows (by claiming that SyncPoint should have known) that Nintendo Japan is a large corporation that sells PixArt-designed gaming devices in Texas and all over the United States. (Dkt. No. 42, pp. 26-27). PixArt may not have it both ways: on one hand claiming that it is obvious that Nintendo Japan uses its designs in the Nintendo Wii controller, which is "by far the most successful of the '3D' controller devices" (Dkt. No. 40, p. 26), yet on the other hand claiming complete ignorance of Nintendo Japan's streams of commerce with respect to the most successful product it sells. (*Id.* at p. 14). Furthermore, PixArt's allegations that it is unfamiliar and ignorant of any streams of commerce for its designs, are not entitled to the same presumptions as SyncPoint's pleadings. Like the defendant in *Beverly Hills Fan,* a company that knowingly places its products or designs into the U.S. stream of commerce cannot feign ignorance of the judicial system or U.S. channels of commerce. Even if PixArt's assertions are true, Federal Circuit precedent

does not allow a party to claim ignorance to these repeatedly used channels of commerce from which it derives substantial economic and commercial benefit.

PixArt's argument that it is ignorant is particularly troubling in light of the fact that it has purposefully availed itself of the jurisdiction of other U.S. federal courts and U.S. patent law for the purpose of invalidating and obtaining a judgment of non-infringement of a U.S. patent. *PixArt Imaging Inc. v. Agilent Technologies, Inc.,* 5:03-cv-04871-JW, Dkt. No. 1, at ¶ 1. In the PixArt DJ Action, PixArt rooted its claim that the California court had jurisdiction over the case because PixArt makes component parts in Taiwan that are then placed in the stream of commerce and sold in the United States. *Id.* at ¶¶ 6-7, 12, 14. PixArt specifically claimed that it designed, developed, and marketed these component parts to customers who plan to incorporate these parts into their products or "**who plan directly or indirectly to distribute such [products] to other companies for sale in the United States**." *Id.* at ¶ 14 (emphasis added). This Court should accordingly give no credence to PixArt's claim that it is "entirely outside the reach of U.S. patent law and the State of Texas's jurisdiction." Dkt. No. 42. p. 1.

Importantly, the law allows the exercise of jurisdiction based on a party utilizing established channels of commerce. It is unnecessary for the party to have created those channels itself. PixArt attempts to deflect the relevant stream of commerce inquiry by claiming that "[n]o PixArt-designed components are delivered to Nintendo in the United States…through distribution channels **put in place by PixArt**." Dkt. No. 42, p. 3 (emphasis added). Yet PixArt does not controvert that its component parts, as SyncPoint pleads, are sold "in many places, including Texas and the Eastern District of Texas" or that it indirectly, through Nintendo and its U.S distributor, placed "video game systems into the stream of

commerce with the intent that they be sold, offered for sale, purchased, and used…in Texas." Dkt. No. 1, ¶ 14-16.

2.   *The Claims Arise Out of PixArt's Contacts with Texas*

PixArt receives substantial business from its contacts with the state of Texas, and therefore is subject to jurisdiction here. Justice Brennan's concurrence in *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.,* 480 U.S. 102, 104 (1987)*,* is particularly instructive in this analysis. In *Asahi*, the Supreme Court was split over how to analyze a foreign defendant's contacts with a jurisdiction. Justice Brennan's position, as set out in his concurrence and joined by three other justices, concluded that "[a]s long as a defendant is aware that the final product is being marketed in the forum State, jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause, and no showing of additional conduct is required." *Id.*

The Federal Circuit interpreted the *Asahi* ruling in a case involving a Taiwanese manufacturing defendant who sold a large volume of parts to companies who incorporated the parts into their final products. These products were then sold in substantial quantities in the particular jurisdiction. *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1320 (Fed. Cir. 2005). The district court granted the Taiwanese manufacturer's motion to dismiss and refused jurisdictional discovery. *Id.* The Federal Circuit, however, found that the district court imposed a burden on the plaintiff that was too high. It found that the allegations in the complaint as well as defendant's failure to rebut the factual inferences that devices incorporating the manufacturer's products were sold in the forum state were sufficient to establish that defendant had derived substantial revenues from sales of products in the forum state. *Id.* The Federal Circuit did not resolve the question of whether jurisdiction under a stream of commerce theory requires additional conduct beyond

simply a party's use of established commerce channels. *Id.* at 1323. The court did, however, remand the case to the district court to allow jurisdictional discovery, holding that the district court erred by refusing such discovery.

Likewise, it is improper to demand from the plaintiff at the pleading stage to prove or set forth all facts related to PixArt's contacts with the state. Conspicuously absent throughout PixArt's three page narrative describing the distance between PixArt and the final products sold in Texas is any declaration to refute SyncPoint's allegations that "PixArt sold to Nintendo components and parts for Nintendo video game systems, and encouraged infringement of SyncPoint's patent knowing that such infringement was likely to occur in many places, including the Eastern District of Texas." Dkt. No. 1 ¶¶ 14, 16. PixArt also fails to submit any evidence to refute that it places such components into the "stream of commerce with the intent that they be sold, offered for sale, purchased, and used" in Texas. PixArt instead chooses to rely on its claimed ignorance of such channels of commerce and the final destination of its products. (Dkt. No. 42, p. 4).

If, as PixArt now argues, its component parts and designs are only sold to manufacturers in Asia and are outside the reach of U.S. patent laws or the jurisdiction of any courts where its end products are sold, it is puzzling why it previously invoked another U.S. federal court's jurisdiction for declaratory judgment of non-infringement based on its design, development, and marketing of image sensors in Taiwan. *See PixArt Imaging Inc. v. Agilent Technologies, Inc.*, 5:03-cv-04871-JW Dkt. No. 1, ¶ 1. ("PixArt products are used in a wide variety of applications that require image capture technology, such as digital cameras, digital camcorders, video conferencing systems, security systems, and optical mice…"). The cause of action in the PixArt DJ Action, related to component parts it sold to CompUSA for an

optical mouse to be sold in the United States. *Id.* at ¶ 6-7. There, PixArt invoked the jurisdiction of the district court in California based on its argument that "PixArt plans to continue to design, develop and market [the accused products], including to customers who plan to sell optical mice incorporating PixArt [technology] in the United States, or who plan directly or indirectly to distribute such mice to other companies for sale in the United States." *Id.* at ¶ 14.

If PixArt's component parts and offerings did not reach the United States in the PixArt DJ Action, it would not have needed to invoke jurisdiction under 28 U.S.C. § 1338(a) nor would it have been able to maintain standing to invalidate the opposing party's patent. The PixArt DJ Action also demonstrates that PixArt knows and understands that the companies for whom it sells, designs, markets, or manufactures products actually sell throughout the United States. As the Federal Circuit has noted, "surely the reasonable market participant in the modern commercial world has to expect to be haled into the courts of that state, however distant, to answer for any liability based at least in part on that importation." *N. Am. Philips Corp. v. Am. Vending Sales,* 35 F.3d 1576, 1580 (Fed. Cir. 1994); *see also Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 867 (E.D. Tex. 2012) (finding that a party's knowledge that infringing products would be sold in the forum state and reaping the benefit of such sales is consistent with establishing jurisdiction). For these reasons, PixArt maintains ample contacts in the U.S. and with the Eastern District of Texas to support jurisdiction.

### 3. *This Court's Exercise of Personal Jurisdiction over PixArt Comports with Constitutional Requirements*

PixArt is subject to the jurisdiction of Texas courts because its contacts with the state have been deliberate and significant in a way that comports with constitutional requirements. The

seminal constitutional standard is (1) whether the defendants "purposefully established minimum contacts in the forum state" in such a way that they should "reasonably anticipate being haled into court there" and that (2) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The U.S. Supreme Court clarified that the "traditional notions of fair play and substantial justice" inquiry looks at the relationship between the defendant, the forum, and the litigation. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, inc.*, 465 U.S. 770, 775 (1984)). Although the defendant's conduct must form the necessary connection with the forum state, such contacts that are "intertwined with his transactions or interactions with . . . other parties" may be the basis of exercising jurisdiction. *Id.* The Federal Circuit considers the following factors in a fair play analysis: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining convenient and effective relief, (5) the shared interest of the several States in furthering fundamental substantive social policies. *Avocent Huntsville Corp. v. Aten Int'l Co.,* 552 F.3d 1324, 1331 (Fed. Cir. 2008).

In its *Beverly Hills Fan* decision, the Federal Circuit also found that it was not unfair or unreasonable to subject a Taiwanese fan manufacturer to a lawsuit in the United States because "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Beverly Hills Fan.* at 1569 (quoting *World–Wide Volkswagen,* 444 U.S. at 294) (internal quotations omitted).  The only burden PixArt

identifies that it might suffer is that "PixArt is a small foreign-based company with limited resources to devote to litigation." Dkt. No. 42 at p. 18. PixArt never expressly argues that this Court's exercise of jurisdiction would be burdensome nor does it articulate how the company's size or location limits the constitutional reach of its torts.  The Constitution can certainly allow the exercise of jurisdiction over companies who commit torts and breach contracts within its borders no matter the company's size, location, or limitation in litigation resources.

Texas, particularly the Eastern District of Texas, maintains a strong interest in adjudicating this dispute because it is SyncPoint's domicile and the location of substantial amounts of infringing products. Litigation in Texas—more than any other jurisdiction— would allow SyncPoint to obtain convenient and effective relief. In the PixArt DJ Action, PixArt invoked the California federal court's jurisdiction, in part, because the defendant resided there. *PixArt Imgaing, Inc. v. Agilent Technologies, Inc.,* 5:03-cv-04871-JW, Dkt. No. 1 at ¶ 3-4. Because SyncPoint resides here, Texas remains the proper forum to resolve this dispute to further the interstate judicial system's interest in obtaining convenient and effective relief and respecting the states' shared interest in furthering fundamental substantively social policies.

This Court may exercise personal jurisdiction over PixArt without offending traditional notions of fair play and substantial justice because (1) PixArt has not articulated a burden that would not comport with constitutional requirements, (2) Texas maintains an interest in resolving this dispute, (3) SyncPoint is entitled to convenient and effective relief, (4) the interstate judicial system maintains an interest in obtaining convenient and effective relief, and (5) the States have a shared interest in furthering fundamental substantive social

policies by allowing a state to exercise jurisdiction over a company that openly and knowingly utilizes established channels of commerce directed at that state.

### B. For Similar Reasons, Venue is Proper in the Eastern District of Texas

In patent infringement cases, venue is proper in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. *Secure Axcess, LLC v. Trustmark Nat'l Bank,* 2014 WL 3884258, at *1 (E.D. Tex. Aug. 7, 2014). A corporate defendant's residence is "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Id* (citing 28 U.S.C. § 1391(c)). In a multi-district state, the corporate defendant resides in the district if personal jurisdiction would be proper if the district were a separate state. *Id.* (citing 28 U.S.C. § 1391(d)).

The venue analysis takes the personal jurisdiction analysis articulated above and applies it to the Eastern District of Texas. For the same reasons stated above, the Eastern District of Texas is the proper venue for this action. Further, SyncPoint has sufficiently pleaded facts to survive a motion to dismiss. *See* Dkt. No. 1, ¶ 10, 13, 14 ("PixArt sold to Nintendo components and parts for Nintendo video game systems, and encouraged infringement of SyncPoint's patent knowing that such infringement was likely to occur in many places, including Texas and the Eastern District of Texas," which are purchased in brick and mortar stores by "individuals located in the Eastern District of Texas" as well as "through interactive websites that are available in the Eastern District of Texas.") Venue is appropriate here, and it has been properly invoked.

**C.  In The Alternative, this Court Should Allow Limited Jurisdictional Discovery on the Issues of Personal Jurisdiction and Venue[1]**

If the Court is not persuaded that SyncPoint has made a *prima facie* showing of personal jurisdiction, SyncPoint respectfully requests the Court allow expedited, limited discovery to uncover facts related to PixArt's contacts in and revenue derived from the Eastern District of Texas.  To support its Motion, PixArt submits affidavits and other evidence that is uniquely in its possession and control. SyncPoint should have the opportunity to test the veracity of the evidence and obtain other relevant evidence from PixArt that PixAart may have withheld. Limited discovery should be expedited because good cause exists based on the narrow tailoring of the discovery requests to effectuate the limited purpose of determining proper venue without imposing an unnecessary burden on PixArt. Limited discovery should be permitted to counter PixArt's factual assertions, and clarify venue-related activities.

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" unless the Court orders otherwise.  An increasing majority of district courts, including several in the Fifth Circuit, have adopted a "good cause" standard to determine whether to permit such expedited discovery. *See El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.,* 344 F.Supp.2d 986, 991 (S.D.Tex.2004); *Paul v. Aviva Life and Annuity Co.,* 2009 WL 3815949, at *1 (N.D.Tex. Nov.12, 2009); *Rodale, Inc. v. U.S. Preventive Med., Inc.*, 2008 WL 4682043, at *1 (E.D.Tex. Oct.21, 2008).

Courts commonly consider the following factors in determining whether "good cause" exists to order expedited discovery:  (1) whether a preliminary injunction is pending, (2) the breadth of the discovery requests, (3) the purpose for requesting the expedited discovery, (4) the

---

[1] Concurrently filed herewith is SyncPoint's Motion for Expedited Discovery.

burden on the defendants to comply with the requests, and (5) how far in advance of the typical discovery process the request was made. *St. Louis Group, Inc. v. Metals and Additives Corp., Inc., et al.*, 275 F.R.D. 236, FN 4 (S.D. Tex. 2011).

Some courts have allowed limited, expedited discovery when failing to do so would have substantially impacted the case from progressing on the court's docket. *See e.g., Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 277 (N.D. Cal. 2002) (allowing limited discovery in a patent infringement case where it would "substantially contribute to moving the case forward and facilitating compliance with the Patent Local Rules").

Generally, district courts enjoy broad discretion in determining whether to grant limited discovery to explore jurisdictional facts, including venue. *See e.g. Worldwide Fin. LLP v. Kopko*, No. 1:03-cv-0428-DFH, 2004 WL 771219, at * 1 (S.D. Ind. Mar. 18, 2004) (granting a motion following six months of discovery with respect to transfer and a motion to dismiss for lack personal jurisdiction); *PI, Inc. v. Valcour Imprinted Papers, Inc.*, 465 F. Supp. 1218, 1220 (S.D.N.Y. 1979) (denying a motion for transfer following limited discovery on the question of transfer).

The Eastern District of Texas has determined that "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts…the plaintiff's right to conduct jurisdictional discovery should be sustained." *See Womack v. Nissan North America, Inc.*, No. 2:06-cv-479-DF, 2007 WL 5160790, at * 2 (E.D. Tex. Oct. 12, 2007) (unpublished) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3rd Cir. 2003)).

The pleadings and allegations here are much more particular than the pleadings and allegations that prompted this Court to allow limited jurisdictional discovery that included 25

16

interrogatories, 25 requests for admissions, and 25 hours of depositions in *Womack*.   In *Womack*, it was merely pleaded that a vehicle was designed, manufactured and marketed by defendant and that defendant conspired with another defendant to commit odometer fraud. *Womack*, 2007 WL 771219, at * 2.  Defendant did not foreclose the possibility that it was involved in the design or marketing.  *Id.*

Here, SyncPoint has alleged that PixArt conducts business in the Eastern District of Texas.  Dkt. No. 1 at ¶¶ 14, 16-18. PixArt does not deny that its products and/or designs are sold and used in the Eastern District of Texas. *See generally* Dkt. No. 42. However PixArt has only made broad and conclusory statements regarding the extent of its business in this District.  PixArt should not be allowed to succeed on a motion to dismiss by forbidding access to relevant information solely within its control that could counter its alleged factual assertions.

As set forth in its concurrently filed Motion for Limited Discovery, SyncPoint requests five interrogatories, five requests for admission, ten requests for production of documents, and one half-day 30(b)(6) deposition, all of which are limited to issues of personal jurisdiction and venue within the Eastern District of Texas. Many of the requests relate to customers, products, services, events, communications, marketing, and other contacts that are solely limited to, or within the subpoena power of, the Eastern District of Texas.

### D.  PixArt's Motion Should Be Denied Because SyncPoint's Complaint is Sufficient to State a Claim

Motions to dismiss are purely procedural, and therefore the Federal Circuit applies the law of the regional circuit. *CoreBrace LLC v. Star Seismic LLC,* 566 F.3d 1069, 1072

(Fed.Cir.2009). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009).

The Supreme Court established a two-step procedure to determine the sufficiency of a complaint under Rule 12(b)(6). *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). First, the Court identifies conclusory allegations and disregards them. *Id.* Second, the court considers whether the factual allegations in the complaint are entitled to relief. *Id.* This Court interpreted the *Iqbal* standard to "simply call[] for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert,* 335 Fed.Appx. 466, 470 (5th Cir.2009). All well-pleaded facts must be treated as true and viewed in the light most favorable to plaintiff. *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (citing *Randall D. Wolcott, M.D., P.A. v. Sebelius,* 635 F.3d 757, 763 (5th Cir.2011)).

    1. *SyncPoint Pleads A Cause of Action For Breach of Contract Because the Court*
       *Must Not Consider Facts Outside of the Complaint*

On a motion to dismiss, the court must only consider the contents of the pleadings and attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.,* 748 F.3d 631, 635 (5th Cir. 2014). A district court abuses its discretion when it decides the merits of a case on a motion to dismiss. *Selva & Sons, Inc. v. Nina Footwear, Inc.,* 705 F.2d 1316, 1322 (Fed. Cir. 1983). The Fifth Circuit considers it reversible error to consider evidence outside the pleadings without converting a motion to dismiss into a motion for summary judgment. *Id.* If a district court considers matters outside the pleadings, procedural rules require that the motion shall be treated as one for summary judgment under Fed. R. Civ. P. 56. Considering matters outside the complaint on a motion to dismiss is reversible error because it denies both sides the opportunity to present all material made pertinent under a Rule 56 motion. *Carter v. Stanton,* 405 U.S. 669, 671 (1972).

The statute of limitations tolling is an affirmative defense, and pleadings are not required to "anticipate or attempt to circumvent affirmative defenses," and such affirmative defenses do not justify dismissal under Rule 12(b)(6). *Bausch v. Stryker Corp.,* 630 F.3d 546, 561-62 (7th Cir. 2010); *see* Dkt. No. 42 at p. 26.

In *Brand Coupon,* an intellectual property owner alleged in its complaint that an infringer began infringing in 2010, while the complaint was filed after the one-year limitations period had run. 748 F.3d at 633-34. The district court concluded that the owner's allegation seemed to suggest that the owner became aware of the infringement at that time, and therefore the action was time barred and the infringer's motion to dismiss was granted. *Id.* at 634-35. The district court based its decision, in part, on affidavits filed with the owner's opposition to motion to dismiss that seemed to augment the timeline noted in the complaint and also seemed to support the infringer's statute of limitations defense. *Id.* at 635. The Fifth Circuit found that the district court erred in dismissing the case under Rule 12(b)(6) because it considered evidence outside the pleadings and did not convert the motion to dismiss to a motion for summary judgment. *Id.* The Fifth Circuit stated that even though both parties acknowledged the one-year limitation that begins to run when the owner has actual knowledge, dismissal was inappropriate because the complaint did not allege a time for when the owner received actual knowledge. *Id.* at 634-635.

Discovery is the most appropriate time to set forth and uncover facts that serve to enhance a party's claims or defenses, not a motion to dismiss. Like the owner in *Brand Coupon*, SyncPoint's allegations are sufficient to state a claim for relief because all facts are taken as true and are construed in SyncPoint's favor. SyncPoint is not required at this stage to prove facts or provide rebuttal arguments to PixArt's affirmative defenses nor is it permissible for this Court to look at such evidence on a Rule 12(b)(6) motion. PixArt attempts to introduce new information

outside of SyncPoint's complaint and asks the Court to improperly consider PixArt's affirmative defenses and its own version of the factual timeline.

This Court should deny PixArt's motion because the allegations contained in SyncPoint's complaint, if taken as true, state a claim of entitlement to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558 (2007) ("A claim should be dismissed under Fed. R. Civ. P. 12(b)(6) when the allegations in a complaint, however true, could not raise a clam of entitlement to relief.").

In *Sprint,* a trademark owner filed a complaint for infringement against Sprint Nextel. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355 (Fed. Cir. 2007). The owner alleged that Sprint used and advertised the mark for "identical telecom services and products, which are confusingly similar to plaintiff's but without a license or permission from the plaintiff." *Id.* at 1358. The owner also alleged that Sprint's use of the mark "caused and is likely to continue to cause members of the public to believe that the Defendant's telephone services are offered by way of a license or other agreement with [the trademark holder], which in fact they are not." *Id.* The owner's infringement allegation was that Sprint caused "irreparable economic loss to plaintiff and affiliates." *Id.* The district court granted Sprint's Rule 12(b)(6) motion to dismiss for failure to state a claim because the district court found that the mark was generic. *Id.* at 1355 and 1357.

On appeal, the Federal Circuit vacated the district court's decision, finding that a plaintiff "need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *Id.* at 1357. The Federal Circuit noted that at this stage of the litigation, it was improper for the district court to make findings of fact, which it concluded the district court must have done in making a determination that the mark was generic. *Id.* The appellate court further noted that a motion for summary judgment—not a motion to dismiss—is the appropriate vehicle for

considering material outside the pleadings. *Id.* at 1358 (*quoting Boudeloche v. Grow Chem. Coatings Corp.,* 728 F.2d 759, 761 (5th Cir.1984).   Even in that case, where it appeared to a reasonable judge that it was likely that the plaintiff would ultimately lose a motion for summary judgment, the Federal Circuit explained that "where pleadings are sufficient… a motion to dismiss for failure to state a claim must nevertheless be overruled." *Id*. Like the defendant in *Sprint*, only when the record is developed through discovery may PixArt later renew its motion in the context of Rule 56. *Id*.  Now is simply not the time for the Court to consider PixArt's essentially factual arguments.

At this stage of the litigation, SyncPoint is not required to make particular factual assertions in order to clear the low hurdle of putting PixArt on notice of the claims and plausibly suggesting a right to relief. On the one hand, SyncPoint's well pleaded allegations are assumed to be true, and on the other hand, PixArt's factual assertions, the veracity of which have yet to be established, are accorded no weight, and should not be considered in the first instance. For these reasons PixArt's motion should be denied.

This Court should not consider the additional outside evidence presented by PixArt in its determination of whether SyncPoint's complaint is sufficiently pleaded. By so doing, the Court would prejudice SyncPoint by not supplying it with a reasonable opportunity to respond and develop an appropriate record in opposition to PixArt's unsubstantiated conclusions. PixArt claims that its timeline and version of events surrounding the breach of contract claim must be given conclusive weight to eliminate SyncPoint's claims at this early stage of the case. It is impermissible for this Court to grant a motion to dismiss based on PixArt's identification and manipulation of the timeline of events that contradict SyncPoint's pleadings.   SyncPoint's complaint sufficiently states plausible claims for patent infringement and breach of contract as

more fully illustrated below. PixArt's motion should be denied because SyncPoint has met its pleading requirements, and PixArt cannot use documents or assertions outside of the pleading to prove that the complaint is insufficient.

### 2. SyncPoint States A Plausible Claim For Direct Infringement.

Direct infringement claims are sufficient to survive a Rule 12(b)(6) when they comport with the requirements of Federal Rule of Civil Procedure Form 18. *Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.*, No. 2:10-CV-90-TJW, 2011 WL 1004873, at *3 (E.D. Tex. Mar. 18, 2011) (citing *McZeal,* 501 F.3d at 1356–57) ("A patent infringement complaint that pleads at least the facts in Form 18 must be sufficient to state a claim under Rule 8(a) because to hold otherwise would render Federal Rule of Civil Procedure 84 a nullity."). The Federal Rules also do not require a complaint to plead that infringement occurred in the United States in order to survive a motion to dismiss. *Id.* Rather, Form 18 simply requires: "1) an allegation of jurisdiction; 2) a statement that the plaintiff owns the patent; 3) a statement that defendant has been infringing the patent 'by making, selling, and using the device embodying the patent'; 4) a statement that the plaintiff has given the defendant notice of the infringement; and 5) a demand for an injunction and damages." *McZeal v. Sprint Nextel Corp.,* 501 F.3d at 1357.

In *Intravisual,* a patentee filed for patent infringement, pleading all pertinent facts "upon information and belief" without detailing any factual assertions beyond the bare-boned elements of patent infringement. *Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.,* 2011 WL 1004873, at *1 (E.D. Tex. Mar. 18, 2011). The alleged infringer argued that because the complaint was not supported with any specific factual allegations surrounding the alleged infringement and because the complaint was pleaded "upon information and belief," none of the pleadings could be taken as factual allegations and were considered impermissible

conclusory statements. *Id.* *2. This Court disagreed, finding that Federal Circuit guidance establishes that "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend" in order to survive a motion to dismiss. *Id* (quoting *McZeal v. Sprint Nextel Corp.,* 501 F.3d at 1357 n.4). This Court reiterated that a complaint is required to "contain a 'short and plain statement of the claim showing that the pleader is entitled to relief." *Id* (quoting Fed. R. Civ. P. 8(a)(2)).  The standard for patent cases post-*Twombly* remained unchanged. This Court stated, and "a complaint for patent infringement is sufficient if it includes the elements in Federal Rule of Civil Procedure Form 18's sample pleading for patent infringement." *Id.*

SyncPoint's complaint moves beyond the requirements set forth in Federal Rule of Civil Procedure Form 18 and is therefore more than sufficient to survive a motion to dismiss. SyncPoint adequately pleads the required claims under Form 18 that entitle SyncPoint to relief. Specifically, SyncPoint (1) makes specific jurisdictional allegations (Dkt. No. 1 ¶¶ 1-21); (2); clearly states that it owns the patent (Dkt. No. 1 ¶¶ 22-28); (3) alleges that PixArt infringes by "making, selling, and using the device embodying the patent" (Dkt. No. 1 ¶¶ 35) ("Defendants, either alone or in conjunction with others, have infringed the '214 Patent by making, using, selling, offering to sell, and/or importing methods and/or systems covered by the claims of the '214 Patent"); (4) states that PixArt had knowledge of infringement (Dkt. No. 1 ¶¶ 14, 37-39, 44); and (5) demands an injunction and damages (Dkt. No. 1 ¶ 50; Prayer For Relief, II-V). Any pleading beyond this requirement supplements and supports the complaint, but is not required under the laws of the Fifth Circuit.

### 3.  SyncPoint States A Plausible Claim For Inducement

Just like direct infringement, induced infringement is sufficiently pleaded when the complaint complies with Form 18 in the Appendix of Forms to the Federal Rules of Civil

Procedure. *Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.*, No. 2:10-CV-90-TJW, 2011 WL 1004873, at *5 (E.D. Tex. Mar. 18, 2011) (citing *Tune Hunter Inc. v. Samsung Telecommunications Am., LLC,* No. 2:09–cv–148–TJW, Dkt. No. 130, at *5–7 (E.D.Tex. Apr. 10, 2010).

In *Intravisual,* the patentee pleaded the following for induced infringement:

> Upon information and belief, [the accused infringer] **has actively induced others to infringe and contribute to the infringement of one or more claims of the '845 patent** in violation of 35 U.S.C. § 271(b) and (c) **through its marketing, supplying, and sale of video decoders** that comply with H.264 including, but not limited to [the accused infringer's] products with the following model numbers … **with the knowledge and intent** that such products are to be integrated into other downstream electronic products, and that such products are to be placed into national distribution networks throughout the United States, including in this judicial district.

*Id.* (emphasis added). The Court held that this statement exceeded the pleading requirements articulated in Form 18 for induced infringement and therefore was more than enough to survive a motion to dismiss. *Id.* at *6. This Court also noted that it is not necessary to plead "each individual element of a claim for indirect infringement." *Id.* at *5 (quoting *Fotomedia Techs., LLC v. AOL, LLC*, 2008 WL 4135906, at *2 (E.D. Tex., Aug.29, 2008)).

SyncPoint's complaint is more detailed than the complaint that survived a motion to dismiss in *Intravisual* because it contains all elements of a claim for patent inducement. And even if this Court finds that some elements are not strongly developed, the Court is permitted to make inferences about whether such a claim is plausible.

### 4.  *SyncPoint States A Plausible Claim for Contributory Infringement*

A complaint properly pleads a claim for contributory infringement if it contains sufficient facts from which a court may conclude that the claim is plausible. *In re Bill of Lading Transmission and Processing System Patent Lit.*, 681 F.3d 1323, 1337 (Fed.Cir.2012).

The elements of contributory infringement are (1) an act of direct infringement, (2) that the defendant knew was both patented and infringing, and (3) with components that have no substantial non-infringing uses." *Cross Med. Prods., Inc. v. Medtronic Sofamore Danek, Inc.,* 424 F.3d 1293, 1312 (Fed.Cir.2005).

As explained in more detail above, this Court, applying *Twombly*, repeatedly held that a complaint need not plead detailed factual allegations and that "neither Form 18 not the holdings from the Federal Circuit require the pleadings of each individual element of a claim" for contributory infringement. *Traffic Info., LLC v. YAHOOA Inc.,* No. 2:09-CV-246-TJW-CE, 2010 WL 2545500, at *3 (E.D. Tex. Apr. 13, 2010) *report and recommendation adopted,* No. 2:09CV246TJWCE, 2010 WL 2542226 (E.D. Tex. June 21, 2010). Because a plaintiff's contributory infringement claims provided "a level of detail similar to that approved by Form 18, the Federal Circuit, and the Eastern District of Texas," defendant's motion to dismiss was denied. *Id.* Likewise, elements of a contributory infringement claim may be inferred based on the pleading's facts. *Achates Reference Pub., Inc. v. Symantec Corp.,* No. 2:11-CV-294-JRG-RSP, 2013 WL 693955, at *2 (E.D. Tex. Jan. 10, 2013) *report and recommendation adopted,* No. 2:11-CV-294-JRG-RSP, 2013 WL 693885 (E.D. Tex. Feb. 26, 2013).

SyncPoint's complaint pleads contributory infringement (direct infringement, knowledge, and no substantial, non-infringing uses) in required detail under Form 18 as follows: (1) "Defendants, either alone or in conjunction with others, have infringed the '214 Patent by making, using, selling, offering to sell, and/or importing methods and/or systems … covered by the claims of the '214 Patent; and/or have contributed to infringement…" Dkt. No. 1 at ¶ 35 and (2) "PixArt had actual knowledge of the '214 Patent through the marking of products sold under the License Agreement since 2008, pursuant to 35 U.S.C. § 287(a). *Id.* at

¶ 44, and (3) "Defendants have further infringed, and continue to so infringe, by knowingly providing to its end users video game systems, or components of video game systems, which are especially made or especially adapted for infringement under the '214 Patent, which are a material part of the infringement, **and for which there are no substantial non-infringing uses**." *Id.* at ¶ 47 (emphasis added).

PixArt attempts to deflect the relevant pleading inquiry into one that is unnecessary under the laws of the Federal Circuit and this District by claiming that SyncPoint is required to allege that PixArt sold or imported the components it designs into the United States. Dkt. No. 42, p. 24-25. However "the pleading requirement set forth in *Twombly* and *Iqbal* do not require the patent to specifically identify where in the United States the accused products are made or name an individual who has purchased, attempted to purchase, used, or imported one of the accused products in the United States." *Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.,* 2011 WL 1004873, at *3. SyncPoint meets this standard by alleging that "PixArt sold to Nintendo components and parts for Nintendo video game systems, and encouraged infringement of SyncPoint's patent knowing that such infringement was likely to occur in many places, including Texas and the Eastern District of Texas." Dkt. No. 1 at ¶¶ 14, 35. PixArt attempts to convince this Court to treat its motion to dismiss as a motion for summary judgment and weigh the facts set forth by both parties before SyncPoint has had an opportunity to discover facts specific to the relationship between PixArt and related companies.

Even if this Court disagrees with SyncPoint about the specificity of SyncPoint's Complaint, the Complaint may still survive a motion to dismiss because all elements of contributory infringement are present by inference. *Achates Reference Pub., Inc. v. Symantec*

*Corp.,* 2013 WL 693955, at *2 (E.D. Tex. Jan. 10, 2013). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009).

SyncPoint specifically alleges each element of contributory infringement in its Complaint. Dkt. No. 1 at ¶¶ 33-50. If any minor technical deficiencies remain, SyncPoint's Complaint nevertheless places PixArt on notice of the claims against it such that this Court may reasonable infer that PixArt is liable for the alleged conduct.

5.  *In the Alternative, This Court Should Grant SyncPoint's Request to Amend The Complaint.*

Federal Rule of Civil Procedure 15 instructs courts to liberally permit parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a). Although such leave to amend resides within the trial court's discretion, courts should freely grant a plaintiff leave to amend except in very limited circumstances. *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir. 1993) (finding that the district court may consider cases of undue delay, bad faith, dilatory motive on the part of the movant, repeated failures to cure deficiencies, undue prejudice, or futility of amendment.) "If the district court lacks a substantial reason to deny leave, its discretion is not broad enough to permit denial." *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir.1985).

The Fifth Circuit guides district courts to avoid dismissal of lawsuit on technical grounds and to grant motions for leave to amend even if the complaint would do nothing "more than state an alternative jurisdictional basis for recovery upon the facts previously alleged." *Whitmire v. Victus Ltd., 212* F.3d 885, 888 (5th Cir. 2000). The Fifth Circuit considers it an abuse of discretion to summarily dismiss without leave to amend with no indication of how such denial

was grounded in bad faith, dilatory motive, delay, futility of amendment, or prejudice. *Whitmire v. Victus Ltd.,* 212 F.3d 885, 890 (5th Cir. 2000).

If the Court grants SyncPoint leave to amend the Complaint, it would be SyncPoint's first amendment, which would not result in undue prejudice to PixArt at this early stage of the litigation. If the Court views the present motion as warranted, then justice requires that SyncPoint be given a chance to file an amended pleading to address any pleading infirmities.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that this Court deny Defendant's Motion To Dismiss.

Respectfully submitted,

Dated: June 15, 2015

By:   /s/ Joseph G. Pia
      Joseph G. Pia
      Joe.pia@padrm.com
      State Bar No. 24093854
      PIA ANDERSON DORIUS REYNARD & MOSS, LLC
      222 South Main Street Suite 1830
      Salt Lake City, UT 84101
      Telephone:  (801) 350-9000
      Fax:  (801) 350-9010

      S. Calvin Capshaw
      State Bar No. 03783900
      ccapshaw@capshawlaw.com
      Elizabeth L. DeRieux
      State Bar No. 05770585
      ederieux@capshawlaw.com
      CAPSHAW DERIEUX, L.L.P.
      114 East Commerce Avenue
      Gladewater, Texas 75647
      Telephone: (903) 236-9800
      Facsimile: (903) 236-8787

      ATTORNEYS FOR PLAINTIFF

*Certificate of Service*

On June 15, 2015, I electronically submitted the foregoing document with the clerk of court for

the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the

court. I hereby certify that I have served all counsel and/or pro se parties of record electronically

or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).


_____/s/ Joseph G. Pia_____

Joseph G. Pia