# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SYNCPOINT IMAGING, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NINTENDO OF AMERICA INC., a Washington Corporation; NINTENDO CO., LTD, a Japanese Corporation; GAME X CHANGE, INC., an Arkansas Corporation; GAMES2GO, a business in the Eastern District of Texas, and PIXART IMAGING, INC., a Taiwanese Corporation, <br><br> Defendants. | CIVIL ACTION NO. 2:15-cv-00247-JRG-RSP |

## PLAINTIFF'S SURREPLY TO DEFENDANT PIXART IMAGING INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

## **INTRODUCTION**

To rebut SyncPoint's Opposition, PixArt takes positions in its Reply that are inconsistent and contradictory. PixArt argues that its commerce activities leave it squarely outside the jurisdiction of U.S. patent law. PixArt Motion to Dismiss, Dkt. No. 42, p.1. Then it argues that a declaratory judgment action on a U.S. patent that *it* previously filed in a U.S. court is wholly irrelevant to a jurisdictional analysis. PixArt Reply, Dkt. No. 82, pp. 4-5. Either PixArt is entirely outside the reach of U.S. patent law or it is not.

PixArt next claims that it sells its sensor products without any knowledge of whether its designs are incorporated into Nintendo's products or sold in the U.S. and this judicial district. Dkt. No. 82, p. 2. Then it turns around and claims that it is so obvious to a third party (SyncPoint) that PixArt's products are incorporated into Nintendo products that are sold in the U.S. Dkt. No. 42, pp. 26-27. PixArt uses this logic to attempt to dismiss SyncPoint's breach of contract claim but fails to square this argument with its denial of knowledge about its business dealings in this jurisdiction.

PixArt's inconsistent positions demonstrate (1) its willingness to submit to the jurisdiction of U.S. courts when it benefits PixArt, while denying jurisdiction when the action is to its detriment, and (2) that because of its privity of contract with Nintendo and its admission that it is obvious to any third party of Nintendo's substantial sales in this district of products that incorporate its designs, PixArt has knowledge that its designs end up not only in the U.S., but in Texas and this district. Furthermore, it is likely that through the course of discovery, SyncPoint will uncover facts relevant to the relationship between PixArt and Nintendo that further establish and solidify PixArt's contacts with this forum.

## ARGUMENT

**A. PixArt is Subject to Personal Jurisdiction In Texas**

PixArt's Reply sidesteps the relevant inquiry and mischaracterizes SyncPoint's arguments. SyncPoint does not argue that simple knowledge of a patent alone confers jurisdiction on a stream of commerce theory. Rather jurisdiction is proper in light of PixArt's purposeful availment in Texas according to the Supreme Court case it cites. *J. McIntyre Mach., Ltd. v. Nicastro,* 131 S. Ct. 2780 (2011). PixArt's purposeful availment of this Court's jurisdiction is proved in part by its admission that U.S. sales of Nintendo products that incorporate the PixArt sensor would be obvious to a third party observer. Dkt. No. 42, pp. 26-27. Because PixArt admits its designs end up in the United States and that it receives substantial revenues from its sales to Nintendo, PixArt is purposefully placing its designs into the stream of commerce with the expectation that Nintendo will sell such designs in Texas and this judicial district. PixArt claims that Nintendo purchases its designs whether or not Nintendo incorporates such designs into its final product. Dkt. No. 82, p. 4. But without such purposeful use of Nintendo's U.S. streams of commerce, PixArt could not maintain an advantageous business relationship with its business partner, Nintendo, nor could it maintain its argument that a third party, like SyncPoint, would have actual knowledge that PixArt's sensors are, in fact, incorporated into Nintendo products that are sold into the U.S. Dkt. No. 42, pp. 26-27.

PixArt relies on the plurality opinion articulated by the Supreme Court in *McIntyre* to support its position. *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011). There, the Court found that the following facts were not enough to exercise jurisdiction over a foreign defendant: (1) a single isolated sale into the state with no regular flow or regular course of sales in the state, (2) no specific effort to sell in the state, and (3) no showing that defendant delivered

its goods in the stream of commerce "with the expectation that they will be purchased" by users in the state. *Id.* at 2784. The plurality opinion noted that purposeful availment occurs when a defendant places "goods into commerce 'with the expectation that they will be purchased by consumers within the forum State.'" *Id.* at 2783. Unlike the defendant in *McIntyre,* PixArt's sensors incorporated in Nintendo's products do not represent a single, isolated sale into this district but rather substantial and repeated sales into the state and this judicial district. Even PixArt admits that U.S. sales of the Nintendo Wii are so substantial that it would be obvious to a third party that its sensors are shipped into the U.S. Dkt. No.42, pp. 26-27.

Instead, PixArt is much more similar to the Taiwanese manufacturer in *Beverly Hills Fan* for reasons articulated more fully in SyncPoint's opposition. *See* Dkt. No. 68, pp. 4-8. PixArt, however, argues that it is different from the Taiwanese manufacturer in that case, because the sensor that it purposefully creates for Nintendo does not constitute a fully assembled Wii product.[1] PixArt attempts to assign Nintendo total and complete responsibility for the commerce stream through which its sensors enter the U.S., Texas, and this judicial district. But PixArt does not offer any controlling law that supports its theory that stream of commerce jurisdiction requires a plaintiff to prove that the defendant itself established the relevant stream of commerce. In fact, jurisdiction need only be premised on the fact that PixArt uses established distribution channels, whether they are put in place by Nintendo or another party. *Nidec Corp. v. LG Innotek Co.*, 2008 WL 7048882, at *3 (E.D. Tex. Dec. 11, 2008) (applying *Beverly Hills Fan,* this Court found that in a patent infringement action, "allegations that a defendant purposefully shipped the accused product into the forum state through an established distribution channel are generally sufficient to establish specific personal jurisdiction.") Although PixArt claims willful ignorance

---

[1] Interestingly, PixArt attempts to distance itself from Nintendo in this Court while outwardly promoting its relationship in press releases: "Together, the two companies [PixArt and Nintendo] will make sure the motion sensors in the Wii Remote are as efficient as can be." See Dkt. No. 67, Exhibit D.

3

as to the precise location of its sensors, it does not deny using Nintendo's established commerce channels.

### B. For Similar Reasons, Venue is Proper in the Eastern District of Texas

In a multi-district state, a corporate defendant resides in the district if personal jurisdiction would be proper if the district were a separate state. *Secure Axcess, LLC v. Trustmark Nat'l Bank,* 2014 WL 3884258, at *1 (E.D. Tex. Aug. 7, 2014) (citing 28 U.S.C. § 1391(d)). Therefore the state jurisdictional analysis is the same as applied to the district.

SyncPoint's argument for this Court to exercise jurisdiction incorporates its venue argument, which PixArt largely ignores. For example, PixArt ignores SyncPoint's arguments that PixArt's sensors are sold, as incorporated in the Wii product, "in many places, including Texas and the Eastern District of Texas" and encouraged these infringing sales "knowing that such infringement was likely to occur in many places, including the Eastern District of Texas, Dkt. No. 1, ¶ 14, 16-18, 35. SyncPoint argues that this district maintains a strong interest in adjudicating this dispute because it is "the location of substantial amounts of infringing products." [2] Dkt. No. 68, p.4. SyncPoint explicitly incorporates its venue analysis in its jurisdictional analysis before even addressing its venue-specific analysis on page 14 of its Opposition. *Id.* at pp. 4, 8, 10, 11, 13. Venue is proper because this Court may exercise jurisdiction in the Eastern District of Texas.

### C. It Is Improper to Weigh Facts and Consider Evidence Outside the Pleadings in a Motion to Dismiss

PixArt once again mischaracterizes SyncPoint's arguments by claiming that SyncPoint "admit[ted] that its Complaint is deficient in pleading." Dkt. No. 82, p. 9. In fact, SyncPoint directly argues the opposite: "The Court should deny PixArt's motion because the allegations contained in SyncPoint's complaint, if taken as true, state a claim of entitlement

---

[2] Notably, PixArt still does not controvert the fact that its component parts are sold "in many places, including Texas and the Eastern District of Texas." *Id.* at p. 8.

4

to relief"; "SyncPoint's complaint moves beyond the requirements set forth in [FRCP] Form 18 and is therefore more than sufficient to survive a motion to dismiss…"; and "SyncPoint's complaint is more detailed than the complaint that survived a motion to dismiss in *Intravisual* because it contains all elements of a claim for patent inducement." Dkt. No. 68, p. 20, 23-25. This Court cannot dismiss this case without first converting PixArt's motion to dismiss into a motion for summary judgment and allowing each side to present facts bearing on SyncPoint's breach of contract claims. *JRS Mgmt. v. Lynch*, 2015 WL 3699511, at *5 (Fed. Cir. June 16, 2015) (finding that a court must provide the parties with notice of the court's intention to convert a motion to dismiss into a motion for summary judgment).

PixArt argues a breach of contract claim must plead damages, which SyncPoint has done. Dkt. No. 1, ¶ 56; Dkt. 42, p. 26. PixArt also claims that under New Hampshire law, the statute of limitations begins to run when the breach of contract occurs. *Id.* at 26. PixArt attempts to introduce evidence outside the pleadings and the contract in order to prove the date of the breach. *Id.* Because PixArt puts forth *factual evidence* outside the current pleadings to support its motion, its motion should be denied or converted to a motion for summary judgment. *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1355 (Fed. Cir. 2007), *see also U.S., ex rel. Rose v. E. Texas Med. Ctr. Reg'l Healthcare Sys.,* 2007 WL 2350648, at *2 (E.D. Tex. Aug. 14, 2007) (finding that where the initial inquiry is intertwined with the merits of the case, it must be converted to a motion for summary judgment.)  If the Court is so inclined to issue rulings on the breach of contract claim so early in the case, it should convert this motion to a motion for summary judgment and allow SyncPoint to put forth its own evidence to prove its case.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion To Dismiss.

Respectfully Submitted,

Dated: July 6, 2015

By: /s/  Joseph G. Pia
Joseph G. Pia
joe.pia@padrm.com
Texas Bar No. 24093854
Robert Aycock (Admitted in this District)
Utah State Bar No. 8878
raycock@padrm.com
Sara Payne (Admitted in this District)
Utah State Bar No. 14008
spayne@padrm.com
PIA ANDERSON DORIUS REYNARD & MOSS
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 350-9000
Facsimile: (801) 350-9010

S. Calvin Capshaw
State Bar No. 03783900
ccapshaw@capshawlaw.com
Elizabeth L. DeRieux
State Bar No. 05770585
ederieux@capshawlaw.com
CAPSHAW DERIEUX, L.L.P.
114 East Commerce Avenue
Gladewater, Texas 75647
Telephone: (903) 236-9800
Facsimile: (903) 236-8787

*Attorneys for Plaintiff*

*Certificate of Service*

On July 6, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).

/s/ Joseph G. Pia_____
Joseph G. Pia