**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SYNCPOINT IMAGING, LLC, | |
| Plaintiff, | |
| v. | |
| NINTENDO OF AMERICA INC., a Washington Corporation; NINTENDO CO., LTD, a Japanese Corporation; GAME X CHANGE, INC., an Arkansas Corporation; GAMES2GO, a business in the Eastern District of Texas, and PIXART IMAGING, INC., a Taiwanese Corporation, | No. 2:15-cv-00247-JRG-RSP |
| Defendants. | |

**<u>PLAINTIFF'S MOTION TO COMPEL NINTENDO CO. LTD. AND NINTENDO OF
AMERICA TO PRODUCE DOCUMENTS AND TESTIMONY,
AND TO AWARD FEES AND COSTS</u>**

## INTRODUCTION

Defendants Nintendo Co. Ltd. ("NCL") and Nintendo of America ("NOA"), collectively "Nintendo," continue to delay and obstruct SyncPoint Imaging, LLC's discovery of highly relevant documents and testimony relative to NCL's wholly owned subsidiary Retro Studios, Inc. ("Retro") located in Austin, Texas. Nintendo has likewise blocked meaningful use of its source code, and has otherwise made discovery excessively time-consuming, expensive, and burdensome resulting in an unnecessary multiplication of the proceedings.[1]

By this motion, SyncPoint requests the Court to compel Nintendo to: (1) produce all relevant Retro documents that should have been provided at the inception of the case and in conjunction with Nintendo's original production due June 19, 2015 and pursuant to Discovery Order ¶ 3, particularly where Nintendo put venue at issue in its Answer and its Initial Disclosures and then in its motion to transfer [Dkt. No. 97]; (2) produce all documents responsive to Plaintiff's Discovery Requests served July 23, 2015 and due August 23; (3) produce all documents responsive to the subpoena *duces tecum* served on Retro on July 30, 2015, due on or before August 13; and (4) produce a witness who is competent to testify on venue and substantive issues pursuant to the subpoena served on August 21, 2015 commanding a deposition on September 1, 2015. SyncPoint also respectfully requests its fees and costs where it followed proper processes to obtain the information and now is forced to undertake the time and expense in filing this motion.

## STATEMENT OF FACTS

In its complaint, SyncPoint put at issue game systems and games that employ the patented technology. Dkt. No. 1 ¶¶ 29-32, 36, 47. Nintendo had and maintains an affirmative

---

[1] Although Nintendo has finally granted access to its source code, it filed for a protective order to prevent use of the source code in amending infringement contentions.  That motion has been fully briefed.

duty to provide relevant discovery on this issue. Disc. Order ¶ 3; Fed. R. Civ. P. 26; Fed. R. Evid. 401. Nintendo understands the relevancy and interconnectedness of its hardware and software in light of extensive patent litigation before this Court. *Motion Games, LLC v. Nintendo C., Ltd., et al*, 6:12-cv-878, Dkt. No. 33-1. In *Motion Games*, Retro's CEO testified that it "designs games for Nintendo hardware systems, and has designed or worked on games for the Wii console…. Games are submitted for approval to [NOA] for North American versions, and to NCL for Japanese versions. Retro designs and develops all of its games at its offices in Austin, Texas." *Id.*, Dkt. No. 33-1 (Declaration of Michael Kelbaugh).   At a minimum, Nintendo should have disclosed Retro's existence and that its role is to design video game software exclusively for Nintendo products including the accused Wii products, where Retro's video game software and its integration in the Wii hardware practice the patented methods.[2] Nevertheless, Nintendo has refused to produce Retro documents and substantive testimony.

Nintendo and Retro are so closely related that Retro has designated Nintendo to speak on its behalf. *See* Declaration of Joseph Pia ("Pia Dec.") ¶ 32. Both Retro and Nintendo admit they share resources, materials, and most importantly, business purposes. For example, Retro admits that it uses its sister company, NOA, for recruiting, submitting resumes and employment applications, and other human resource activities for Retro's. *Motion Games, LLC v. Nintendo Co. Ltd., et al*, 6:12-cv-878, Kelbaugh Dec., Dkt. No. 33-1. Retro develops interactive games that NCL then manufactures; such Retro-designed games are fully operational and intended to be used on the accused Wii and Wii U products. *Id.* Nintendo is Retro's exclusive client, and

---

[2] For example, claim 1 requires among its limitations " . . . **detecting** at least one property of an external cursor and position of the external cursor relative to the output from the computer; **generating a command to move the internal cursor** to a position on the screen corresponding to the position of the external cursor; and **generating a command for the computer** based on the at least one detected property of the external cursor." U.S. Patent No. 6,275,214 ('214 patent"), Cl. 1 (emphasis added), Compl., Exh. A to Dkt. No. 1.

Nintendo handles all approvals and testing for games developed at Retro's headquarters in Austin, Texas. *Id.* At the recent Nintendo 30(b)(6) deposition, SyncPoint learned for the first time that Retro is so intertwined with Nintendo's alleged infringement-related activities that it is now clear that Retro should be a party to this lawsuit. Pia Dec. ¶¶ 24-26, 28-29, Kiel Dep. 52:2-52:7; 52:18-56:4.

Nintendo squarely placed Austin-based Retro at issue in this case when it challenged the convenience of party and non-party witnesses by raising venue in its Answer on May 11, 2015. Dkt. No. 27 ¶ 21; Dkt. No. 28 ¶ 21. On June 19, 2015, Nintendo served its Initial Disclosures, and made its first production. Pia Dec. ¶ 4. Although it produced approximately 60,000 pages, Nintendo notably failed to produce a single Retro document or identify a Retro witness despite later representing that any production Retro could provide overlapped with Nintendo's production.[3] Pia Dec. ¶ 29. SyncPoint later determined that although there is overlap, it is not 1:1 and Retro should have separately provided documents.

Nintendo knew very well that it has an automatic and continual obligation to provide relevant documents about all of its Texas activities in light of its venue challenge.  In the words of Nintendo's counsel:

> Given that venue is an issue in this case and in light of the fact that [Nintendo is] moving to transfer venue, my understanding is that Judge Gilstrap's Discovery Order requires production of these materials without a specific request.

Pia Dec. ¶ 33, Ex. L, 7/9/15 Email from Kinsel to Pia.  Nintendo, indeed, has insisted that SyncPoint abide by this mandate.  *Id*. However, Nintendo waited until one month after the deadline to join additional parties (June 5, 2015) before finally disclosing Retro's existence in its Motion to Transfer ("MTT"). Dkt. No. 97. The next day, SyncPoint sent Nintendo a deficiency

---

[3] Nintendo's own production included only 13 documents mentioning Retro in insignificant ways, such as that it is listed as an NCL subsidiary on the last page of an annual report.

letter, asking for relevant documents on Nintendo's related Texas entities, which would necessarily include Retro. Pia Dec. ¶ 5. Nintendo waited a week before responding that it did not understand how questions about its Texas subsidiaries related to venue. *Id.* at ¶ 7.  Yet, in another E.D. Texas case, Nintendo extensively briefed and argued about Retro in interrelated venue issues.  *Motion Games*, 6:12-cv-878-RWS, Dkt Nos. 34-70, 137.

The next day, SyncPoint promptly met and conferred telephonically with Nintendo's counsel, even offering to limit the scope of some of SyncPoint's venue requests to expedite a meaningful production. Pia Dec. at ¶ 9. Nintendo made verbal assurances that its production deficiencies would be timely cured. *Id.* at ¶ 11. However, after repeated back-and-forth, it became obvious that Nintendo did not intend to produce any information. *Id.* Thereafter, SyncPoint issued formal document production requests and interrogatories in a further attempt to get Retro documents and information. Pia Decl. ¶ 11, Exh C (Nintendo's Responses to Discovery Requests [incorporating and referencing SyncPoint's Discovery Requests]). For another week, Nintendo disputed whether the discovery constituted "informal" or "formal" requests that would count against SyncPoint's discovery limits. *Id.* at ¶ 10. Still, it provided no information.

Nintendo had already filed its MTT, and the due date for SyncPoint's Opposition was rapidly approaching without the relevant discovery. The Opposition was originally due July 27, 2015, but the parties stipulated to an extension until August 10, 2015 to allow additional time to receive and review the anticipated discovery. Dkt. Nos. 107-8; *see also* Pia Dec. ¶ 6. Having concerns that Nintendo would not produce documents, SyncPoint issued a document subpoena directly to Retro requesting the missing information on July 30, 2015. *See* Pia Dec. ¶¶  13-14, Ex. D. Nintendo's counsel quickly responded that it represented Retro, and that all future correspondence to Retro should go through Nintendo. *Id*. ¶ 15. Nintendo's legal representation of

Retro was surprising, since Nintendo had distanced itself from Retro when referring to its connection with subsidiaries located in Texas.  Dkt. No. 97, p. 5. On August 5, 2015, Nintendo provided responses to SyncPoint's interrogatories, but produced no Retro documents. *See* Pia Dec. ¶ 12, Ex. C, Nintendo of America Inc. and Nintendo Co., Ltd.'s Responses to SyncPoint's First Set of Interrogatories Nos. 1 through 10. Nintendo's responses consisted mostly of objections and were facially deficient. *Id.* For example, in response to:

> *Interrogatory No. 7:* Identify **the percentage** of Retro Studio's and NES Merchandising's business **that involves** Nintendo's Accused Products versus other products with respect to game development and other business activities.

(Emphasis added.) Nintendo spent nearly an entire page on objections, followed by a one sentence answer that failed to respond to the question: "Neither NES nor Retro Studios derive any revenue from their sale of the Accused Nintendo Products, and neither entity designed or developed the Accused Nintendo Products." *Id.*  SyncPoint later discovered that 100% of Retro's business is to provide software game titles to Nintendo for use with its hardware systems, including the Accused Products. Pia Dec. ¶¶ 24-25 Kiel Dep. 52:2-52:7; 52:18-56:4.

With only a few days before the extended Opposition deadline, Nintendo still had not provided any Retro documents and only sparse responses to interrogatories. Pia Dec. ¶¶ 8-18. Further, although Nintendo had offered to cooperate in providing a venue deposition in early July 2015, it had since claimed that its witness was unavailable because he was in trial for an undefined period.   Pia Dec. ¶ 8.[4] At this point, SyncPoint had spent a month requesting documents and noting deficiencies in Nintendo's production. Pia Dec ¶¶ 5-17.

Because neither Nintendo nor Retro had cured the production deficiencies, SyncPoint requested an in-person meet and confer on August 7, 2015. Pia Dec. ¶ 16. Before the meeting,

---

[4] SyncPoint inquired as to why in Nintendo's ranks of thousands of employees it could not produce another witness to testify.  *Id.* Nintendo ignored the question, delaying the deposition for nearly two months from when it first made the offer.

SyncPoint's counsel emailed a list of items for review, which included issues regarding Retro. Pia Dec. ¶ 17. During the meet-and-confer, the parties discussed the production of Retro information, and in particular that Nintendo had asserted in *Motion Games* that it had control over Retro, and consequently that discovery was within its "custody and control." *See* Pia Dec. ¶¶ 15-17; *see also Motion Games, LLC v. Nintendo Co. Ltd., et al*, 6:12-cv-878-RWS.[5] Counsel also discussed the fact that Nintendo had produced Retro documents in its prior *Motion Games* litigation, and had been sitting on SyncPoint's subpoena for more than a week and had not yet produced or even identified any Retro documents. Pia Dec. ¶¶ 17-19. Nintendo's counsel said that it would not respond to the Retro document subpoena until the last day provided for by the subpoena, August 13, 2015, notably three (3) days after the Opposition was due. Pia Dec. ¶ 16. Nintendo also maintained that its venue witness was unavailable. *Id.* ¶ 8. The additional time in which the parties had agreed to obtain venue discovery had now expired without either Nintendo or Retro producing a single Retro document. *See* Pia Dec. ¶ 18. SyncPoint therefore filed its Opposition to the Motion to Transfer without the benefit of Retro discovery. *Id.*

After filing its Opposition, SyncPoint continued to assert that Nintendo's production was deficient and that it should supplement before SyncPoint's Sur-Reply was due. Pia Dec. ¶ 19. In response, Nintendo developed a new argument as to why Retro would not produce any documents, namely that Nintendo's own production was inclusive of any documents that Retro

---

[5] To prevent this motion from getting filed, Nintendo argues that the in person meet and confer was insufficient.  Pia Dec. ¶ 34.  Both lead and local counsel for SyncPoint have handwritten meeting notes confirming discussion of Retro. *Id.* Counsel will provide these notes in camera if the court so desires. *Id.* Hoping to avoid a dispute on this point, lead and local counsel for both parties again met and conferred telephonically. *Id.* ¶ 35.  And again, counsel came to an impasse on whether the in person meet and confer was sufficient. *Id.* SyncPoint's counsel quoted and cited prior correspondence in an email to Nintendo's counsel asking it to reconsider.  *Id.* Nintendo refused. *Id.* ¶ 37.

could produce.[6] *Id.* ¶¶ 16, 18. Based on Nintendo's representation, SyncPoint asked Nintendo to identify which materials in its production were Retro documents, and which were responsive to the outstanding subpoena. Pia Dec. ¶ 16. Nintendo refused on the basis that this process was too burdensome. *Id.* Nintendo argued that there is such overlap between it and its wholly owned subsidiary, that Nintendo cannot itself parse out Retro documents from its own production. *Id.*

Nintendo continues to hold in its possession and control documents related to Retro that were produced in its prior patent litigation before this Court.[7] Nintendo has streamlined access to this information making it easily obtainable, by consolidating documents from all of its patent cases with a third-party discovery company named DiscoverReady. Pia Dec. ¶ 27 *See* <u>Exhibit H</u>, Kiel Dep., 85:13-85:25. When Nintendo produces documents in litigation, it provides a link to a database that allows the parties to that litigation access to Nintendo's documents.  Pia Dec. ¶ 27. Thus, there is not a physical "production" *per se*, but rather the granting of permission to access folders containing the documents. *Id.* To satisfy its production obligations in this case, SyncPoint understands that Nintendo would simply allow SyncPoint access to the Retro patent litigation production folder held by DiscoverReady for *Motion Games*. *Id.*

In the absence of document production, and wishing to clarify venue-related issues as well as obtain substantive infringement testimony, SyncPoint issued a deposition subpoena to Retro on August 21, 2015 for a deposition on September 1, 2015, three days before the Sur-

---

[6] To date, SyncPoint has only identified a mere 21 references to Retro in Nintendo's 66,000-page document production. In previous representations to this Court and to opposing counsel, this number has been lower: either because Nintendo had not yet produced the new documents or SyncPoint had not yet reviewed and found the additional documents produced mentioning Retro. Nintendo's incomplete production of documents only makes the following mention of Retro: two mentions of Retro Studios as the developer of a game called "Metroid," references to Retro as a Nintendo subsidiary, references to Retro in relation to transcripts from the *Triton Tech v. Nintendo* case, and one reference to Retro in the Nintendo employee handbook referring to Retro as a Nintendo entity. No substantive documents have been produced.

[7] *See generally Motion Games, LLC v. Nintendo Co. Ltd., et al*, 6:12-cv-878.

Reply was due. Pia Dec. ¶ 20. The deposition date would allow a one-day turnaround on the deposition transcript and two days to incorporate the testimony into the brief. *Id.* ¶ 20, 29. Nintendo's counsel, on behalf of Retro, refused the deposition ("[L]et me be as clear as I can: We will move to quash the subpoena and seek fees and costs for doing so. There will be no Retro witness made available on 9/1 for topic 4."), and filed a motion to quash in the Western District of Texas. *Id.* ¶ 29, 32.[8]  Nintendo has complained that SyncPoint's topics are somehow improper because SyncPoint is under an obligation to first obtain all documents and testimony from the litigation parties before moving forward with Retro. *See* Pia Dec. ¶ 32, Non-Party Retro Studios, Inc.'s Opposed Motion to Quash Subpoena to Testify, Award Fees, and Issue a Protective Order, attached as Exhibit K.

Although refusing a Retro deposition, Nintendo finally agreed to provide its long since promised venue deposition on August 31, 2015. Pia Dec. ¶ 22. Nintendo designated a Nintendo in-house patent attorney to testify on venue topics for itself and on some Retro topics, but expressly excluded all topics that would show that pertinent infringement information resides in Austin.[9]  Pia Dec. ¶¶ 22-23. ("Pia: As I understand it, you're not here to testify as to the

---

[8] Nintendo is taking the position that before deposing Retro, SyncPoint must first take depositions of Japanese technicians in Japan, at the U.S. consulate in Japan with accompanying extensive red-tape, and in Japanese to get information that may be similar to what it can get from Retro in Austin in English.  Pia Dec. ¶¶ 26, 30. Nintendo, notably, does not play by its own rules. Nintendo has issued five third party subpoenas on the patent inventor, his wife, and all his sons, which have been complied with in a timely manner. Yet, Nintendo did not first ensure that this information could have been obtained from SyncPoint itself; even though it knows that SyncPoint's principal, Karl Hansen, is the inventor and the party most knowledgeable of many of the facts Nintendo sought to elicit in its own third party subpoenas.

[9] In addition, Nintendo's "war of attrition" extends even further:  in response to SyncPoint's subpoena, well after SyncPoint's venue opposition, and after multiple meet and confers, SyncPoint has identified only 16 documents in Nintendo's production that even mention the term "Retro."  Nintendo states that its production is cumulative but refuses to identify which documents in its own production overlap. Pia Decl. ¶ 15.  Finally, Nintendo seeks to deny SyncPoint access to its source code.  *See* Dkt. Nos. 124, 126.

substance of any of the items identified in number 4 and its subparts; is that right? Kiel: That's right.").

At the deposition, when asked about technical information regarding the ways in which Retro uses the patented technology, arguably the most relevant of all topics, Kiel was unprepared to answer, but maintained that such answers could easily be obtained from Retro. *Id;* ¶¶ 22-23, 26. Even though Kiel's knowledge was limited, he was aware that Retro *does* maintain documents responsive to at least some of SyncPoint's substantive infringement topics. *Id*. ¶ 26. This admission establishes that relevant, responsive information is located in Austin, closer and more accessible to this District than Washington, and that a prepared Retro witness could have given helpful testimony.

Nintendo has unreasonably refused relevant discovery, and should be compelled to provide it with no further resistance.

## ARGUMENT

**I.      Nintendo Should Not Be Permitted to Dodge Deficiency Letters, Discovery Requests, and Subpoenas Regarding Information from Its Wholly Owned Subsidiary that Provides Game Titles that Practice the Invention.**

Rule 37 permits a party to move to compel production of any materials that are relevant and discoverable. *Edward D. Ioli Trust v. Avigilon Corp.,* 2012 WL 5830711, at *1 (E.D. Tex. Nov. 16, 2012); F.R.C.P. 37. The Federal Rules demand broad discovery to allow litigants to clarify the issues in civil trials. *Id* (*citing Herbert v. Lando,* 441 U.S. 153, 176 (1979)). Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . ." Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).

"It is well settled that the rules of discovery in the Eastern District of Texas are accorded a broad and liberal treatment to affect their stated purpose of adequately informing litigants in civil trials." *Collins v. Nissan N. Am., Inc.*, 2:11-CV-428-JRG, 2013 WL 1950002, at *1 (E.D. Tex. May 9, 2013) (Gilstrap, J.). Rule 26(b)(1) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Id.* The Discovery Order in this case required Nintendo to produce all relevant information, without any document requests, at the time that it issued its Initial Disclosures. Discovery Order ¶ 3. The parties' obligations to provide timely and responsive discovery are rigorously enforced in the Eastern District. *Reedhycalog UK, Ltd. v. United Diamond Drilling Servs., Inc.*, No. 6:07-CV-251, 2008 U.S. Dist. LEXIS 93177, at *6-7 (E.D. Tex. Oct. 3, 2008) ("This Court adheres to a policy of liberal, open, and forthright discovery and will not tolerate gamesmanship.").

Once the moving party establishes that materials requested are "within the scope of permissible discovery," the party refusing discovery must "demonstrate why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive," or should otherwise be limited. *Edward D. Ioli Trust,* 2012 WL 5830711, at *1. The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how the discovery request is improper. *SSL Servs.*, 2010 WL 547478, at *2. Bare assertions of irrelevance or burden are insufficient to bar production. *Sedtal v. Genuine Parts Co*., No. 1:08-CV-413-TH, 2009 WL 2216593, at *4 (E.D. Tex. July 23, 2009).

## A.  <u>Retro Documents Are Relevant And Must Be Produced</u>

Nintendo has established that Retro documents and information are highly relevant by representing that there is so much overlap between it and its wholly owned subsidiary that

Nintendo cannot itself parse out Retro documents from its own production. Pia Dec. ¶ 16. Retro exclusively provides video games specially made for use and integration with the accused products. Pia Dec. ¶ 24. Nintendo admitted that Retro and NCL "collaborat[e]" on software games.  Pia Dec. ¶ 25. This Court found that Retro and NCL work "closely" together, "ensuring the successful integration of their software in the final products sold to customers." *Motion Games LLC*, Case No. 6:12-cv-00878 (Mar. 7, 2014), ECF No. 126 at 8-9.

In its complaint, SyncPoint put at issue game systems and games that employ the patented technology. Compl, Dkt. No. 1 ¶¶ 29-32, 36, 47. SyncPoint's asserted claims include methods that "consist[] of doing something, and therefore ha[ve] to be carried out or performed." *Id; In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002); Pia Dec. ¶ 28. Retro's integrated software games "perform" the steps of SyncPoint's method claims. *Id.* Retro is therefore well positioned to provide information regarding the integration of its game software in the Wii hardware that will help establish infringement of the method claims. *See* Dkt. No. 138.

Nintendo's recent 30(b)(6) deposition further underscores Retro's relevance as it uses all software integration documents and Nintendo source code in the development of the software for its Wii video game titles, and in turn generates its own documents. Pia Dec. ¶¶ 25-29. At the very least, discovery from Retro meets the minimum relevancy standard that it is likely to lead to discoverable evidence. Fed. R. Civ. P. 26(b)(1).

As explained above, SyncPoint requested this information through deficiency letters, telephonic meet-and-confers, subpoenas, and an in-person meet and confer.  Pia Dec. ¶¶ 4-15. Nintendo has ignored and refused these requests. *Id.* Specifically, the Retro document subpoena requests relevant technical documents pertaining to infringement. Pia Dec. ¶¶ 13-14.  Nintendo

has represented that it has custody or control over this information and can produce it in the case. Pia Dec. ¶ 27.

**B.** **Nintendo Should Have Produced A Witness Competent To Testify As To Retro Substantive Topics**

Nintendo readily produced a Nintendo witness to testify on behalf of Retro as to topics 1-3 in the deposition subpoena, but not topic 4. Pia Dec. ¶¶ 21, 29. For purposes of venue, topics 1-4 were vital to the convenience analysis.  Topic 4 in particular shows the location of substantive infringement evidence in the case – evidence that Nintendo claims SyncPoint must obtain from its witnesses in Japan, in Japanese, at the U.S. Consulate. Pia Dec. ¶ 30. If this evidence exists in the Court's backyard, and with a party the Court has already held is subject to this Court's jurisdiction and venue, Nintendo cannot show that Washington is a "clearly more convenient" forum. *Motion Games v. Nintendo Co., LTD, et al,* 6:12-cv-00878-RWS, Dkt. No. 137.

**C.** **Syncpoint Has And Continues To Be Prejudiced By Nintendo's Discovery Blockade**

From the day Nintendo first filed its MTT, it has blocked access to information by claiming ignorance or misunderstanding and delaying responses, all the while stating a willingness to provide responsive documents in time to fully brief the issue of venue. Pia Dec. ¶¶ 5-11, 13-21. Nintendo's dualism has prejudiced SyncPoint by preventing access to relevant venue-related information that it could have incorporated in its venue briefing. Now that venue briefing has concluded, Nintendo's is precluding obtaining evidence of infringement.[10]

In addition to the venue analysis, SyncPoint's own infringement theories were thwarted by Nintendo's refusal to produce information relevant to the ways in which Nintendo practices and uses the claimed patent methods (thereby implicating Retro). SyncPoint intends to file a motion

---

[10] Depending on the information produced upon granting this motion, SyncPoint may have good cause to provide supplemental briefing on venue incorporating the new facts.  Specifically, adding Retro as a party to this litigation, which SyncPoint intends to do, will significantly alter the venue analysis as to convenience of the parties.

to add Retro as a party to this action, but would not have needed to clutter the docket with an additional motion had it received the requested information before the deadline to add parties. By withholding discovery, Nintendo is unnecessarily multiplying the proceedings in this case and wastefully driving up costs.

**D.** **Nintendo Failed To Adequately Respond To Interrogatories, Production Of Documents, And 30(B)(6) Deposition Topics For Its Closely-Controlled Texas Entity, Retro Studios**

Nintendo raised venue as an issue in its Answer and its Initial Disclosures, and then again when it filed its MTT on July 9, 2015. Dkt. No. 97. In its MTT, Nintendo identified its relationship with Retro for the first time in this case and Retro's role in designing game software exclusively for Nintendo. In its briefing, Nintendo tried to distance itself from Retro by alleging that it "has no employees with knowledge relevant to this case," without explaining why. *Id*. p. 5.

A more complete view of the record shows that Nintendo shares access to certain servers and documents with Retro, as well as shared human resources, staff, and training departments. *Motion Games, LLC v. Nintendo C., Ltd., et al*, Dkt. No. 33-1 ¶ 5; *see also* Pia Dec. ¶¶ 24-27, 32. It is probable that relevant access to sources of proof and witnesses reside in Texas that would tip the scales in a venue analysis. Indeed, Nintendo fails to explain why the few witnesses it has identified in its Initial Disclosures would have more relevant information than the testimony of witnesses currently working and residing in Texas.

SyncPoint made every effort to accommodate Nintendo to obtain the requested discovery directly from Nintendo. Nintendo ignored or refused the requests. Left with no alternative, SyncPoint subpoenaed Retro. Nintendo then stepped in as counsel for Retro, issued lengthy objections to the discovery, produced no documents, and then designated its own unqualified patent litigation attorney to testify on behalf of Retro.  Nintendo, now objects to SyncPoint

13

seeking the discovery from Retro by filing a motion to quash the substantive portion of the subpoena in the W.D. of Texas arguing that SyncPoint should seek all substantive information from Nintendo first (referring to taking the deposition of Nintendo's identified Japanese technical witnesses).[11]  Nintendo will not provide the information, and will not permit Retro to provide the information.  Meanwhile, this game of ping-pong has resulted in incomplete briefing on venue, and substantial delay in substantive discovery regarding infringement.  Nintendo is hindering SyncPoint's ability to complete substantive discovery before December 14, 2015 per the DCO. Dkt. No. 59.

## II.     SYNCPOINT IS ENTITLED TO RECOVER ITS REASONABLE EXPENSES AND ATTORNEY'S FEES INCURRED IN BRINGING THIS MOTION

When a motion to compel is granted, "the Federal Rules dictate that the court 'order the party whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees.'" Fed. R. Civ. P. 37(a) (5)(A); *SmartPhone Technologies LLC v. Apple, Inc.,* 2013 WL 789285, at *2 (E.D. Tex. Mar. 1, 2013). The district court "may not award fees and expenses if the opposing party's nondisclosure was 'substantially justified.'" *Id.*

Nintendo's delay, lack of response, and sometimes outright refusal to engage in the discovery process is not substantially justified, and an award to SyncPoint of its fees and expenses is necessary to encourage Nintendo to no longer delay the release of important information in the case.

## CONCLUSION

For the foregoing reasons, SyncPoint respectfully requests that its motion be granted and that Nintendo be required to immediately provide comprehensive and complete

---

[11] The parties have stipulated to move the issue of the motion to quash to this Court. Pia Dec. ¶ 32.

discovery regarding Retro and the other issues identified herein, including the subpoena *duces tecum*, and the subpoena to provide a Retro witness competent to testify on Topic 4.

Respectfully Submitted,

Dated: September 17, 2015                By: */s/ Joseph G. Pia*
                Joseph G. Pia

                Joseph G. Pia
                joe.pia@padrm.com
                Texas Bar No. 24093854
                Robert Aycock (Admitted in this District)
                Utah State Bar No. 8878
                raycock@padrm.com
                Sara Payne (Admitted in this District)
                Utah State Bar No. 14008
                spayne@padrm.com
                PIA ANDERSON DORIUS REYNARD & MOSS
                222 South Main Street, Suite 1830
                Salt Lake City, Utah 84101
                Telephone: (801) 350-9000
                Facsimile: (801) 350-9010

                S. Calvin Capshaw
                State Bar No. 03783900
                ccapshaw@capshawlaw.com
                Elizabeth L. DeRieux
                State Bar No. 05770585
                ederieux@capshawlaw.com
                CAPSHAW DERIEUX, L.L.P.
                114 East Commerce Avenue
                Gladewater, Texas 75647
                Telephone: (903) 236-9800
                Facsimile: (903) 236-8787

                *Attorneys for Plaintiff*

15

*Certificate of Service*

On September 17, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).

_____/s/ Joseph G. Pia_____

*Certificate of Conference*

Lead and local counsel for SyncPoint Imaging, LLC met and conferred with lead and local counsel for Nintendo Co. Ltd., Nintendo of America, and Retro Studios, Inc. on August 7, 2015.

DATED: September 16, 2015.

PIA ANDERSON DORIUS
REYNARD & MOSS

/s/ Joseph G. Pia
Joseph G. Pia
*Attorneys for Plaintiff SyncPoint, Inc.*