**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SYNCPOINT IMAGING, LLC, *Plaintiff*, v. NINTENDO OF AMERICA, INC., et al. *Defendants*. | CIVIL ACTION NO. 2:15-cv-00247-JRG-RSP **[REDACTED]** |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT TO ADD AS A PARTY NINTENDO CO. LTD.'S WHOLLY-OWNED SUBSIDIARY, RETRO STUDIOS, INC.**

**INTRODUCTION**

Plaintiff SyncPoint Imaging, LLC ("SyncPoint") respectfully moves the Court for leave to file an amended complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. A copy of the Amended Complaint is attached hereto as Exhibit A. The Amended Complaint adds to the original Complaint defendant Nintendo Co. Ltd.'s wholly owned subsidiary, Retro Studios, Inc., ("Retro") as a party. The Amended Complaint alleges that Retro infringes the patent at issue through its development and sale of Wii game software titles designed exclusively for use with Nintendo Co. Ltd.'s ("NCL") and Nintendo of America's ("NOA," referred to herein collectively as "Nintendo")'s accused Wii and Wii U products. Retro and Nintendo are highly integrated and work in concert to directly and indirectly infringe U.S. Patent No. 6,275,214 ("the '214 Patent").

The deadline to amend pleadings without seeking leave from the Court based on the Docket Control Order was August 14, 2015. Dkt. No. 59 Docket Control Order; *see also* Dkt. No. 96 Order. However, during the recent deposition of Nintendo's designated Retro 30(b)(6) witness on August 31, 2015, and recently reviewed Nintendo source code on September 14-18 and again September 28-29, 2015 it has become clear that Retro should be added as a party. Retro develops software exclusively for Nintendo that uses the patented technology, and its infringement is directly related and integrated with Nintendo's infringement. In a recent litigation, this Court has previously found that Retro is subject to personal jurisdiction and that venue was proper in the Eastern District of Texas. *Motion Games, LLC v. Nintendo Co. Ltd. et al*, 6:12-cv-00878-RWS-JDL, Dkt. Nos. 126, 137.

**BRIEF STATEMENT OF FACTS**

On February 20, 2015, SyncPoint filed its Complaint against Nintendo and other defendants. Dkt. No. 1. Despite maintaining an affirmative duty to disclose Retro's specialized role in its Initial Disclosures, Nintendo did not do so until it filed its Motion to Sever and Stay and Motion to Transfer ("Motion to Transfer") on July 9, 2015. Dkt. No. 97. By that time, the deadline to join parties had already expired on June 5, 2015. Dkt. No. 96. In its Motion to Transfer, Nintendo identified Retro Studios as "a game software design studio" owned by NCL. Dkt. No. 97. Since then, Nintendo has attempted to distance itself from Retro and continued to stonewall SyncPoint's repeated efforts to gain information about Retro's relevance to the case all the while (1) sharing the same litigation counsel with Retro, (2) admitting that responsive Retro documents were included in Nintendo's production, and (3) admitting that Retro assisted Nintendo in its document production and witness preparation. See Dkt. No. 141, Motion to Compel, pp. 1-9.

Retro, in an effort to quash a SyncPoint subpoena, claimed that it is so closely tied to Nintendo that Nintendo's witness could testify about 75% of the subpoenaed deposition topics. *See* Non-Party Retro Studios, Inc.'s Opposed Motion to Quash Subpoena to Testify, Case No. 2:15-cv-00247-JRG-RSP Dkt. No. 1. Then on August 31, 2015 two weeks *after* the deadline to amend the pleadings without Court consent, Nintendo finally made a 30(b)(6) witness available to testify about its relationship with Retro. *See* Exhibit B, Declaration of Joseph Pia ("Pia Dec.") ¶¶ 4-5. During this Nintendo deposition, additional information came to light that made clear Retro's close relationship with Nintendo and its collaborative role as a direct and indirect

3

infringer.[1] Pia Dec. ¶¶ 7-10. Specifically, Retro's heavy involvement in the design of Wii console game software made and sold by Nintendo that includes programming that takes advantage of technology in the '214 patent, to generate game commands exposes Retro to liability for patent infringement.

In addition, Nintendo only recently allowed a first review of its source code, between September 14 and 18, and then again on September 28 and 29. Pia Dec. ¶ 15; *see also* Exhibit C, Declaration of Jay Bhatia ("Bhatia Dec.") ¶¶ 3-5. This code review enabled SyncPoint to identify how Nintendo and Retro use the patented technology, thereby giving rise to a claim of direct and indirect infringement against Retro. SyncPoint discovered for the first time as part of this source code review specific data that is made available to Wii console games. Pia Dec. ¶ 16; Bhatia Dec. ¶ 8.

SyncPoint should be permitted to add Retro as a party at this time where Nintendo:

- knew of the close relationship that it has with its wholly-owned subsidiary Retro but failed to produce readily available documents with its Initial Disclosures that would have made clear that Retro was an infringer;

---

[1] Retro and Nintendo readily admitted that Nintendo could readily speak for Retro with respect to 3 of 4 Retro 30(b)(6) deposition topics, showing the close custodial and operational relationship between the parties. *See* Declaration of Joseph Pia, deposition of Kristopher Kiel ("Kiel Dep.") 8:19-25; 22:22-23:17; 39:21-40:10; 44:19-46:8 (filed under seal). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id*; citing Kiel Dep. 8:19-25; 22:22-23:17; 39:21-40:10; 44:19-46:8.

- refused to cure its production deficiencies even after identifying Retro by name in its Motion to Transfer, and after SyncPoint made an appropriate demand[2];

- withheld and ultimately moved to quash a deposition of Retro on technical topics;[3]

- finally provided a Nintendo patent attorney to testify on Retro's behalf as its 30(b)(6) witness for some topics sufficient to create a basis for alleging infringement — after the deadline to add a party and amend pleadings;[4] and

- delayed source code review until just a few weeks ago which further supports a claim of infringement — also after the deadline to add a party and amend pleadings.[5]

In light of the foregoing, SyncPoint respectfully suggests that good cause exists for adding Retro as a party. Because good cause exists to add Retro as a party and there is no prejudice to the defendants, as explained below, this Court should grant SyncPoint's motion to amend the pleadings.

## ARGUMENT

Good cause exists to amend the pleadings by adding Retro as an infringer to this suit because (1) new information has come to light after the deadline that implicates Retro as a party whose infringement of the '214 patent is deeply interrelated to Nintendo's infringement, (2) Retro's exclusion in this suit would require SyncPoint to file a separate action against Retro which would multiply the parties' litigation costs and judicial resources,[6] and (3) no party will be prejudiced by

---

[2] *See* Dkt. No. 141, SyncPoint's Motion to Compel.
[3] *See* Non-Party Retro Studios, Inc.'s Opposed Motion to Quash Subpoena to Testify, Case No. 2:15-cv-00247-JRG-RSP Dkt. No. 1
[4] *See* Declaration of Joseph Pia ¶ 4, attached hereto as Exhibit B.
[5] *Id.* at ¶ 14-15.
[6] By excluding Retro from this suit thereby requiring SyncPoint to file against Retro in a separate lawsuit, this Court would have two cases with the same lawyers advocating the same positions, including claim construction on the same terms, with overlapping

5

adding Retro and if such prejudice exists, it may be mitigated by this Court by amending the scheduling order for Retro discovery as needed.

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Any modification to a scheduling order may be made "for good cause and with a judge's consent." Fed. R. Civ. P. 16(b). The decision whether to grant leave to amend a pleading is within the sound discretion of the district court, but as the Fifth Circuit has aptly recognized: "leave should be freely given when justice so requires." *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013). Where a party demonstrates good cause for missing the deadline to amend a complaint, "the more liberal standard of Rule 15(a) will apply to the district court's denial of leave to amend." *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015).

This Court has traditionally considered four elements to determine whether to modify the scheduling order: "(1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a continuance to cure such prejudice." *Ciena Corp. v. Nortel Networks Inc.*, 233 F.R.D. 493, 494 (E.D. Tex. 2006).

---

discovery. Moreover, the facts surrounding how Retro designs games directly to generate game commands are intertwined with how the Wii "operating system" uses the patented system because it has come to light that Retro and Nintendo ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6

In light of the factual and procedural developments that occurred after the deadline to add a party and amend the pleadings, good cause exists for amending the complaint to include Retro as a party. Once Nintendo identified Retro as a potential source of information in its Motion to Transfer, SyncPoint was diligent in obtaining information about Retro and its infringement-related activities. However, Nintendo failed to timely disclose Retro's specialized role in the use of the '214 patented technology in the Wii console system. This information was obtained after the 30(b)(6) witness deposition (which Nintendo has moved to partially quash) and a source code review after the deadlines had passed.

1. **This Court Should Grant SyncPoint's Motion to Amend to Add Retro as a Party because SyncPoint Acted Diligently in Attempting to Obtain Information Relevant to Retro's Infringement-Related Activities and its Close Relationship with Nintendo.**

In *Ciena Corp. v. Nortel Networks Inc.,* a patent owner sued a competitor for infringement. 233 F.R.D. 493, 494 (E.D. Tex. 2006). In its answers and counterclaims, the competitor failed to add a claim for inequitable conduct. After the deadline to amend the pleadings had passed, the competitor sought leave to amend the complaint. *Id.* Although the competitor had a few pieces of information before the deadline to amend, it did not have sufficient evidence to show the elements of its claim for inequitable conduct. *Id.* at 494-495. The competitor requested documents responsive to a potential inequitable conduct claim, however, it did not receive such information until after the deadline to amend had passed. *Id.* at 495. The competitor also diligently sought the information from a third party when the patent owner delayed discovery. *Id.* The competitor also promptly notified the patent owner of its intent to amend the pleadings before doing so. *Id.* This Court granted the competitor's motion to amend

7

the pleadings because the competitor obtained additional information after the deadline that provided "much stronger support" for the competitor's claims than the "minimal evidence" the competitor initially possessed. *Id.*

Similar to the competitor in *Ciena Corp.,* SyncPoint was not in receipt of evidence regarding Retro's infringement until after the deadline to amend the pleadings had passed. Pia Dec. ¶ 18. But, through diligence and despite delay that SyncPoint did not cause, SyncPoint has come to learn that Retro infringes the patent and should be added as a party.

When SyncPoint filed its Complaint against Nintendo and other defendants on February 20, 2015, it included parties whose use, manufacture, and sale of certain component parts and services employed the patented technology based on SyncPoint's investigation and its previous dealings with defendants. Pia Dec. ¶ 19; *see also* Dkt. No. 1. Despite maintaining an affirmative duty to disclose Retro's specialized role in its early disclosures as possessing relevant information, Nintendo did not do so until it filed its Motion to Transfer on July 9, 2015. Dkt. No. 97. The deadline to join parties had already expired on June 5, 2015. In its Motion to Transfer, Nintendo identified Retro Studios as "a game software design studio" owned by NCL. *Id.*

### a. Retro and Nintendo's Close Custodial Relationship Was Disclosed After the Deadline to Amend had Passed.

Since Nintendo's initial disclosure of Retro's existence on July 9, 2015, Nintendo has attempted to distance Retro from the lawsuit. However, additional facts make clear that Retro should be a party to this lawsuit not only because of the close custodial relationship of all three parties (Retro, NOA, and NCL) but also because of

8

Retro's direct and indirect involvement in infringing activities related to Nintendo. *See* Pia Dec. ¶¶ 5-10. Although SyncPoint has been requesting responsive documents and information since July 2015 from both Retro and Nintendo, Nintendo, has delayed the production of such information that would help further prove what this Court has previously found: "it appears Retro works closely with Nintendo in ensuring the successful integration of their software into the final products sold to consumers." *Motion Games, LLC v. Nintendo Co. Ltd., et al,* 6:12-cv-878-RWS, Dkt. No. 126 p. 9; *see also* Dkt. Nos. 136-37. SyncPoint currently has pending in this Court a Motion to Compel such documents and information, which are highly relevant to this case. *See* Dkt. No. 141.

Retro claims that it is so closely tied to Nintendo that Retro designated Nintendo's own patent attorney to testify to about 75% of Retro's deposition topics. *See* Non-Party Retro Studios, Inc.'s Opposed Motion to Quash Subpoena to Testify, Case No. 2:15-cv-00247-JRG-RSP Dkt. No. 1. On August 31, 2015, two weeks *after* the deadline to amend the pleadings without the Court's consent, Nintendo finally made available a Retro 30(b)(6) witness to testify about Nintendo's relationship with Retro. Pia Dec. ¶¶ 4-5. During this deposition, additional information came to light that made clear Retro's integrated relationship with Nintendo and its collaborative role as a direct and indirect infringer. Pia Dec. ¶¶ 7-10. Therefore, it became clear after the August 14, 2015 deadline to amend the pleadings that Retro should be included in the above-captioned lawsuit.

9

### b. The Nintendo Source Code Review Uncovered Facts about Retro's Infringement that Could Not be Reasonably Discovered Before the Deadlines.

During a Nintendo source code review, SyncPoint's technical consultant identified information about how Wii games employ the patented technology. *See* Bhatia Dec. ¶ 8. This information was only first made available to SyncPoint by Nintendo September 14, 2015 and as late as September 29, 2015. Bhatia Dec. ¶¶ 3-6. The code review enabled SyncPoint to identify with a degree of particularity how Nintendo and Retro use the patented technology, thereby giving rise to a claim of direct and indirect infringement against Retro. Pia Dec. ¶ 17. SyncPoint discovered for the first time as part of this source code review the specific kinds of data that are made available to Wii console games that generate game commands in violation of the patent. Pia Dec. ¶ 18. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Bhatia Dec. ¶ 8. *See* Patent cl. 1, col. 9, ln. 38-40; cl. 11, 14-15, 17, 19, 21, 24-26. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Because this information was not made available before the deadline, good cause exists for amending the pleadings.

Retro's heavy involvement in the design of Wii console game software made and sold by Nintendo that includes programming that takes advantage of patented features to generate game commands exposes Retro to liability for patent infringement, and therefore it should be added to the lawsuit. *See* Pia Dec. ¶ 18; *see also* Bhatia Dec. ¶ 8. By designing games that generate specific game commands a, Retro is providing commercial benefit to Nintendo in selling the Wii console system

10

and associated software of the Wii system and provides Nintendo an advantage in using the patented technology. *Id.* SyncPoint became aware of Retro's existence but did not have sufficient evidence to accuse Retro of infringement until after Retro's 30(b)(6) deposition and the Nintendo source code review, which occurred after the deadline to amend.

2. **The Court Should Allow Retro to be Added to the Complaint Because it Directly and Indirectly Infringes the Patented Technology in Ways Inseparable from Nintendo.**

This Court should not exclude Retro as a party to the lawsuit because Retro's infringement is directly linked to Nintendo's infringement, and it would conserve judicial and party resources to collect discovery in the same dispute where the key terms are being construed and related infringement positions analyzed, particularly where the same lawyers would be advocating the same positions for both its own and its subsidiary's defenses. As a direct and indirect infringer of the Patent, Retro has such close ties to Nintendo that party and judicial resources would be wasted if the two parties were tried separately.

As an exclusive game development studio for Nintendo, Retro designs and creates Wii console game software for Nintendo that takes direct advantage of patented features in generating game control commands. *See* Pia Dec. ¶¶ 17-18; Bhatia Dec. ¶ 8. Retro knows, understands, and uses the patented technology. Pia Dec. ¶ 20. In the first filed Complaint, Nintendo is accused of selling a Wii system that includes a Wii remote and a Wii console that employs the technology of the '214 patent. *See* Dkt. No. 1, ¶¶ 22, 29-32, 35-36. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

11

████This Wii console processor further processes the received digital information into more refined data that is then used by the system to generate computer commands, including game commands. *See* the '214 Patent cl. 1-2, 11, 15, 17, 19, 21, 24-26.

Retro is a direct infringer because it uses the patented technology in developing software for the Wii system that practices all elements of the claimed method. Retro also induces and contributes to infringement by creating games for and supplying games to Nintendo that take advantage of data coming from the Wii remote and converting that data into game commands. *Id.* at cl. 1, 17, 19, 24-26.

### 3. The Defendants Will Not Be Prejudiced By Retro's Addition To This Lawsuit, and Any Potential Prejudice Could be Cured.

This Court should allow SyncPoint to amend the pleadings to include Retro as a party because the defendants will not be prejudiced at this point in the proceedings.[7] The determination of whether prejudice would occur often includes assessing whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories. *See Parish v. Frazier,* 195 F.3d 761, 764 (5th Cir.1999); *Squyres v. Heico Companies, L.L.C.,* 782 F.3d 224, 238-39 (5th Cir. 2015). Defendants are not prejudiced, or caught off guard, by the new facts alleged in the amended Complaint because Nintendo has first-hand knowledge of the role that Retro plays in the alleged patent infringement. Nintendo admits on the record that it assists Retro with the process that SyncPoint accuses the parties of infringement and Retro, in turn, assists Nintendo with the process of infringement. Pia Dec. ¶¶ 4-5, 7-

---

[7] If the Court grants SyncPoint's motion to amend soon, the docket control and discovery dates will not need to change. If the Court grants this motion later, it may push back discovery dates in order to minimize any potential prejudice to any party. However, key deadlines like claim construction and trial will not change.

10. Nintendo's relationship with Retro and its shared witnesses and/or documents may, in fact, streamline the litigation. *See* Dkt. No. 141, Pia Dec. ¶¶ 4-5, 7-10. In Retro's and Nintendo's shared 30(b)(6) deposition, NOA attorney Kristopher Kiel testified that Nintendo's production of documents for Retro and Nintendo are held by the same third-party electronic discovery vendor. *See* Pia Dec. ¶ 10, citing Kiel Dep. 86:19-87:12.[8] Retro itself has admitted to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ *See* Pia Dec. ¶¶ 9-10, 13. Retro and Nintendo are also represented by the same counsel, and claim construction and substantive arguments would not conflict. *See* Pia Dec. ¶ 12.

In addition, Retro is not a party that may be severed. Retro's development of specific games infringe the '214 patent claims when used with the Wii system. Retro's actions constitute direct and indirect infringement in ways that are separate and distinct from the Retail Defendants, much like PixArt. In its Motion to Sever and Stay, Nintendo notably declined to argue that PixArt is a party that could be severed from the lawsuit by tacitly identifying Nintendo and PixArt together as joint makers of the Accused Products. *See* Dkt. No. 97, pp. 5-6. Nintendo noted that claims against a retailer are peripheral to claims against a manufacturer because SyncPoint is precluded from collecting damages from retailers if damages are collected from the "maker … of that product." Dkt. No. 97, p. 6; *see Glenayre Elecs., Inc. v. Jackson*,

---

[8] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

443 F.3d 851, 864 (Fed. Cir. 2006); *Shifferaw*, 2010 WL 1064380, at *4; *LG Elecs.*, 126 F. Supp. 2d at 422. This is clearly not the case with Retro.

Here, Retro is not a peripheral retailer but is a direct and contributory infringer because it makes infringing games that are specifically designed to be used on the Wii console, using Wii console software, much like the CMOS imaging chip jointly developed by Nintendo and PixArt is a specifically designed component part to be used in Nintendo's systems. Using Nintendo's own argument, because SyncPoint alleges that Retro is involved in the "design or development of the Wii or Wii U or that they customize the Wii or Wii U in a way to cause infringement," they cannot be severed. Dkt. No. 97, p. 6.

### 4. No Other Reasons Exist To Prohibit SyncPoint From Amending Its Complaint.

The interests of justice and judicial economy will be served by having all allegations properly before the Court as set forth in Plaintiff's proposed Amended Complaint rather than two interrelated matters separately proceeding simultaneously before this Court or other courts. The amendments are narrowly tailored toward Retro and remain untouched against the Nintendo and all other defendants in this case. In so doing, this action can more effectively proceed on the merits.

Furthermore, there is no apparent reason for denying the motion to amend, as none of the factors that may mitigate against it are present in this case. Consistent with the liberal standard that applied to motions to amend, the Court should therefore grant Plaintiff's motion.

### **CONCLUSION**

In light of the above, SyncPoint requests the Court grants SyncPoint's motion to amend the attached Complaint.

Respectfully Submitted,

Dated: October 7, 2015    By: */s/ Joseph G. Pia*
　　　　　　　　　　　　　　Joseph G. Pia

　　　　　　　　　　　　　　Joseph G. Pia
　　　　　　　　　　　　　　joe.pia@padrm.com
　　　　　　　　　　　　　　Texas Bar No. 24093854
　　　　　　　　　　　　　　Robert Aycock (Admitted in this District)
　　　　　　　　　　　　　　Utah State Bar No. 8878
　　　　　　　　　　　　　　raycock@padrm.com
　　　　　　　　　　　　　　Sara Payne (Admitted in this District)
　　　　　　　　　　　　　　Utah State Bar No. 14008
　　　　　　　　　　　　　　spayne@padrm.com
　　　　　　　　　　　　　　PIA ANDERSON DORIUS REYNARD & MOSS
　　　　　　　　　　　　　　222 South Main Street, Suite 1830
　　　　　　　　　　　　　　Salt Lake City, Utah 84101
　　　　　　　　　　　　　　Telephone: (801) 350-9000
　　　　　　　　　　　　　　Facsimile: (801) 350-9010

　　　　　　　　　　　　　　S. Calvin Capshaw
　　　　　　　　　　　　　　State Bar No. 03783900
　　　　　　　　　　　　　　ccapshaw@capshawlaw.com
　　　　　　　　　　　　　　Elizabeth L. DeRieux
　　　　　　　　　　　　　　State Bar No. 05770585
　　　　　　　　　　　　　　ederieux@capshawlaw.com
　　　　　　　　　　　　　　CAPSHAW DERIEUX, L.L.P.
　　　　　　　　　　　　　　114 East Commerce Avenue
　　　　　　　　　　　　　　Gladewater, Texas 75647
　　　　　　　　　　　　　　Telephone: (903) 236-9800
　　　　　　　　　　　　　　Facsimile: (903) 236-8787

　　　　　　　　　　　　　　*Attorneys for Plaintiff*

*Certificate of Service*

On October 7, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).

/s/ Joseph G. Pia