**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SYNCPOINT IMAGING, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>NINTENDO OF AMERICA INC., a Washington Corporation; NINTENDO CO., LTD, a Japanese Corporation; GAME X CHANGE, INC., an Arkansas Corporation; GAMES2GO, a business in the Eastern District of Texas, and PIXART IMAGING, INC., a Taiwanese Corporation,<br><br>    Defendants. | No. 2:15-cv-00247-JRG-RSP |

**PLAINTIFF'S OPPOSITION TO RETRO STUDIOS, INC.'S OPPOSED MOTION TO QUASH SUBPOENA TO TESTIFY, AWARD FEES, AND ISSUE A PROTECTIVE ORDER**

## INTRODUCTION

This Motion to Quash is related to discovery deficiencies SyncPoint has previously outlined for the Court in its Motion to Compel on September 17. Dkt. No. 141. Retro Studios, Inc. ("Retro"), acting in concert with its parent corporation Nintendo Co. Ltd. ("NCL") and its sister corporation Nintendo of America ("NOA," collectively "Nintendo"), continue to create procedural obstacles to access information that is highly relevant to SyncPoint's claims and defenses for no legitimate purpose.

SyncPoint respectfully requests its fees and costs incurred in opposing this Motion to Quash in addition to filing its Motion to Compel as well as expenses incurred in its futile attempts to procure this information from Retro.

## ARGUMENT

I.  **Retro Should Not be Permitted to Ignore Subpoenas Regarding Relevant Information Where it Provides Software Game Titles that Practice the Method of the Invention and Works Closely with its Parent Company, a Party in this Case.**

Syncpoint may, pursuant to the Federal Rules, "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Rule 45 permits courts to quash or modify a subpoena if it "(1) fails to allow a reasonable time for compliance…(3) requires disclosure of privileged or protected matters; or (4) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(i)-(iv); *see also Bagwell v. Rival Consumer Sales Corp.*, 2006 WL 2883137, at *2 (W.D. Tex. Sept. 19, 2006). As the moving party, Retro bears the burden to demonstrate that compliance with the subpoena would be unreasonable or oppressive or is subject to privilege. *Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004); *see also Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury,* 768 F.2d 719, 721 (5th Cir.1985). The court requires parties supporting a motion to quash to provide

affidavits and evidence apart from mere "[a]rguments of counsel" to support their contention that such subpoenas are unreasonable and oppressive. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.,* 813 F.2d 1207, 1211 (Fed. Cir. 1987). In the event that a subpoena is deficient, courts prefer to modify the subpoena to support compliance rather than to quash the subpoena outright. *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.,* 2015 WL 3466085, at *4 (5th Cir. June 2, 2015) (quoting *Wiwa,* 392 F.3d at 818-19). "A district court abuses its discretion when it does not explain its reasoning, does not allow the applicant an opportunity to cure any defects, and does not 'attempt to modify the subpoena to cure any overbreadth.'" *Id.*

a.  **Proper Service of the Subpoena**

Retro argues that this Court is *required* to quash SyncPoint's subpoena because SyncPoint inadvertently neglected to include the witness-fee payment required by Rule 45(b)(1).[1] But, as Retro notably admits, not only did SyncPoint cure this defect within 24 hours of Retro informing SyncPoint that it had not received payment, but also Retro was in possession of the witness payment before the deposition was scheduled to occur.

It is considered unreasonable and an abuse of discretion to quash a subpoena that does not allow the applicant to cure any defects. *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.,* 2015 WL 3466085, at *4. Indeed, Retro does not argue that any defects still exist as to service—just that they did exist. Further, Retro does not identify any harm or prejudice caused by obtaining the witness check before the deposition was scheduled to occur, although not

---

[1] Retro misapplies and misinterprets the law by telling the Court it *must* quash SyncPoint's subpoena for a number of reasons. This is incorrect. The law clearly states that "On timely motion, the court for the district where compliance is required must quash *or modify* a subpoena that" relates to the categories listed in Retro's motion. Fed. R. Civ. P. 45(d)(3) (emphasis added). Because courts favor modifying subpoena elements to quashing them outright, Retro's argument that this Court is required to quash the subpoena is an improper request.

3

simultaneous with the subpoena. Retro does not allege that it failed to receive actual notice of the deposition, nor can it.

Retro has failed to demonstrate that a minor defect in service—immediately cured upon notice—was detrimental to its ability to answer the subpoena. Therefore, the Court should deny Retro's motion to quash.

### b. Reasonable time to comply and undue burden

As the moving party, Retro carries the burden of demonstrating that the time for compliance was unreasonable or oppressive, including demonstrating to the Court what is and is not reasonable. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.,* 813 F.2d 1207, 1210-11 (Fed. Cir. 1987). While Retro strains to find some sort of bright-line rule for reasonableness by identifying what other courts have found unreasonable (without reciting any facts that demonstrate those cases are relevant to this case), the law supports that courts look at the particular facts of the case. *Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004) ("Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case…'"). Courts often look at the relevance of the information requested, the party's need for the documents/testimony, the breadth of the request, the time period covered, and the burden imposed, among other factors. *Id.*

Retro failed to meet its minimum burden of providing evidence that the date of the subpoena was unreasonable. The time period to respond provided in the subpoena was reasonable in light of several important facts. First, Retro—a wholly-owned subsidiary of NCL and a close corporate sibling of NOA (wherein NOA handles *all* of Retro's HR, recruitment, training, etc)—had actual notice of the requested information needed at least as early as July 30, 2015, when SyncPoint served on Retro's and Nintendo's counsel its document requests for

certain venue and infringement-related material. *See* Motion to Compel, Dkt. No. 141, p. 4. Acting in concert with Nintendo, Retro refused to produce a single document, which would have included relevant, technical information.[2] This evidence was highly relevant to SyncPoint's rebuttal of Nintendo's venue and infringement-related arguments. SyncPoint also needed this information before this Court ruled on venue because the information in Retro's possession could likely persuade the Court to keep the case in Texas. Additionally, SyncPoint required this information from Retro to update its infringement contentions and amend its complaint.

The time provided for under the subpoena is reasonable for several reasons. First, Retro was able to and *did* comply with three out of the four topics identified in the subpoena by designating and preparing a Nintendo witness *via* phone calls with Retro employees. *See* Dkt. No 141, p. 11; *see also* Motion to Quash ("Retro next informed SyncPoint that Retro would designate Nintendo's witness, who is scheduled to testify on August 31, to testify on Retro's behalf with respect to the non-technical topics in SyncPoint's subpoena—topics 1 through 3— thus leaving only the technical topics."). Retro claims that "the subpoena would likely require at least two witnesses to address" all the subjects in the subpoena, but gives no reasons why only one witness was made available and prepared by Retro employees, and why another one could not equally be made available. *Id.* The fact that other courts have found specific lengths of time reasonable or unreasonable alone should not be persuasive to the analysis here. Rather, Retro's actions of showing an ability to prepare a witness in time as well as its actual knowledge of relevant topics for more than a month before the witness was scheduled to testify should be sufficient to show that the amount of time for compliance was reasonable.

---

[2] *See* Dkt. No. 141, pp. 13-14. During the 30(b)(6) deposition of Kristopher Kiel as stated more fully in SyncPoint's Motion to Compel, Nintendo admitted, on behalf of both Nintendo and Retro, that both parties share documents and access to certain servers and maintain highly integrated human resources, staff, and training departments. This demonstrates a highly coordinated response between Nintendo and Retro.

5

Second, the time frame was reasonable in light of the filing of SyncPoint's sur-reply to Nintendo's Motion to Transfer, which was due three days from the deposition date. SyncPoint has been diligently seeking Retro's substantive information because it appears that much of its is relevant to this case and available in this Court's back yard as opposed to Japan or Washington. *See* Motion to Compel, pp. 1-9. Nintendo effectively delayed producing Retro information to hide its ties with Texas and prevent SyncPoint from learning substantive information about infringement. The deposition of Retro was scheduled as a last opportunity to get the information before SyncPoint's final venue brief was due.

Third, as a third party to this case, Retro would not have needed the additional time that may in some other case be needed because of Retro's close affiliation with Nintendo. Retro's and Nintendo's counsel is the same, and there was no need for Retro to locate, secure, and bring up to speed outside counsel or witnesses that were not familiar with the facts of this case. And despite claiming to be this disinterested third party in the case, Retro has admitted to collaborating with Nintendo in producing documents in this case before the subpoena was even issued. *See* Motion to Amend, Dkt. No. 158, p. 3.

In the alternative, if the Court nevertheless finds that the time for compliance was unreasonable, it should modify the subpoena to conform to the Court's definition, based on the facts, of what a reasonable time should be for Retro to prepare a witness on the remaining topic. If the Court modifies the time period in which to comply, SyncPoint requests that the Court not decide Nintendo's venue motion and provide SyncPoint with the opportunity to supplement its briefing in Opposition to Nintendo's venue motion until a reasonable time after Retro complies with the subpoena.

      **c.    Undue burden**

When determining whether a subpoena subjects a person to undue burden, a court considers the following factors: "(1) the relevance of the requested information; (2) the party's need for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. In addition, if a person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party. A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Bagwell v. Rival Consumer Sales Corp.,* 2006 WL 2883137, at *2 (W.D. Tex. Sept. 19, 2006)(internal citations omitted).

The party refusing discovery, in this case Retro, must "demonstrate why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive," or should otherwise be limited. *Edward D. Ioli Trust,* 2012 WL 5830711, at *1; *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2-08-CV-158-T, 2010 WL 547478, at *2 (E.D. Tex. Feb. 10, 2010); *see also EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09-cv-116, 2010 WL 346218, at *4 (E.D. Tex. Jan. 21, 2010). Retro has the burden of showing its objections are valid by providing specific explanations or factual support as to how the discovery request is improper. *SSL Servs.*, 2010 WL 547478, at *2. Bare assertions of irrelevance or burden are insufficient to bar production. *Sedtal v. Genuine Parts Co.*, No. 1:08-CV-413-TH, 2009 WL 2216593, at *4 (E.D. Tex. July 23, 2009).

In its Motion, Retro claims that SyncPoint has not articulated the relevance of the subpoena topics or why it is unable to obtain this information from Nintendo. It is Retro's burden to provide evidence as to why the subpoena should be quashed; it is not SyncPoint's burden. Second, the relevance of such information, SyncPoint's need for the documents, and SyncPoint's

7

inability to obtain this information from other parties are articulated more fully in SyncPoint's Motion to Compel and the recently filed Motion to Amend. *See* Dkt. No. 141 and Dkt. No. 158. SyncPoint's subpoena requests information relevant to venue and infringement. When Nintendo raised venue as an issue in this case and disclosed Retro as its wholly-owned Texas subsidiary, it made Retro's business practices, relationship with Nintendo, and its Wii and Wii U games-related development relevant to rebut Nintendo's venue arguments and to establish its infringement contentions against Nintendo. This information may have been able to come from Nintendo, but Nintendo refused to produce such documents. *Id.* The scope of SyncPoint's subpoena is reasonable because it asks for information that is relevant or may lead to discoverable evidence. *Id*.

Retro develops interactive games that NCL then manufactures. *Motion Games, LLC v. Nintendo C., Ltd., et al*, 6:12-cv-878, Dkt. No. 33-1 (Declaration of Michael Kelbaugh). In *Motion Games*, Retro's CEO testified that it "designs games for Nintendo hardware systems, and has designed or worked on games for the Wii console…. Games are submitted for approval to [NOA] for North American versions, and to NCL for Japanese versions. Retro designs and develops all of its games at its offices in Austin, Texas." *Id.* Nintendo is Retro's exclusive client, and Nintendo handles all approvals and testing for games developed at Retro's headquarters in Austin, Texas. *Id.*

At the 30(b)(6) witness deposition of Kristopher Kiel, Nintendo's patent attorney, who was designated to represent both Nintendo and Retro, Kiel testified that he was not prepared to provide relevant answers to technical topics but that such topics could easily be obtained from Retro. *See* Declaration of Joseph Pia, ("Pia Dec.") attached to Dkt. No. 158, Motion to Amend, ¶¶ 6-10. Even though Kiel's knowledge was limited, he knew that Retro *does* maintain

8

documents responsive to at least some of SyncPoint's substantive infringement topics. *Id*. This establishes that relevant, responsive information is located in Austin, closer and more accessible to this District than Washington, and that prepared Retro witnesses could have given helpful testimony in this case.

Furthermore, Retro technical information is very relevant here because game systems and games that employ the patented technology are at issue. Compl, Dkt. No. 1 ¶¶ 29-32, 36, 47. SyncPoint's asserted claims include methods that "consist[] of doing something, and therefore ha[ve] to be carried out or performed." *Id; In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002); Dkt. No. 158, Pia Dec. ¶ 11. Retro's integrated software games "perform" the steps of SyncPoint's method claims. *Id.* Retro is therefore well positioned to provide information regarding the integration of its game software in the Wii hardware that will help establish infringement of the method claims. *See* Dkt. No. 138. The recent 30(b)(6) deposition further underscores Retro's relevance to this case as Retro uses all software integration documents and Nintendo source code in the development of software for Wii video game titles, and in turn generates its own documents. Dkt. No. 141, Pia Dec. ¶¶ 25-29. At the very least, discovery from Retro meets the minimum relevancy standard that it is likely to lead to discoverable evidence. Fed. R. Civ. P. 26(b)(1). Concurrently pending before this Court is SyncPoint's Motion to Amend to add Retro as a party to the lawsuit because of its infringement activities related to Nintendo. Dkt. No. 158.

SyncPoint's subpoena requests were narrowly tailored, timely circumspect, and particular enough for Retro to have notice of the information sought. SyncPoint asked only for evidence relevant to venue and infringement for reasons more fully articulated in SyncPoint's Motion to Compel. *See* Dkt. No. 141. SyncPoint tailored its request to Retro to certain infringement

activities related to the CMOS imaging array and how it is used in specific game design and game software. Topic 4 of the 30(b)(6) subpoena asks for testimony about the following relevant technical information:

> The interplay and functionality of the products and services Retro provides and the Accused Products, including without limitation:
> a. the CMOS imaging array module in the Wii controller, and the knowledge necessary to use data from the CMOS array in game or software development;
> b. Retro's development of games and software that make use of data from the CMOS imaging array module in the Wii remote,
> c. data from or based on the CMOS imaging array module,
> d. using data from the CMOS imaging array module,
> e. techniques for using the CMOS imaging array data,
> f. what commands can be generated using data from the CMOS imaging array,
> g. how such commands can be generated using data from the CMOS imaging array,
> h. how such commands are used to calibrate the system, manipulate game play, affect what is shown on the screen and manipulate a cursor.
> i. materials and resources such as guidebooks, manuals, APIs, SDKs, documentation, and hardware and software tools or development platforms.
> j. source code, and the functionality of such source code, related to Retro products and services that function with the Accused Products, and
> k. source code for the Accused Products, and the application of such source code related to Retro products and services that function with the Accused Products.

*See* Exhibit G, Retro 30(b)(6) subpoena. Because Retro has not identified how any of this information is overly broad or irrelevant, the Court should refuse to quash the subpoena. If, however, the Court finds that any particular request is overly broad or burdensome, SyncPoint asks the Court to permit modification of the subpoena to comply with the Court's policy to modify rather than to quash outright.

    **d.    Unnecessary disclosure of trade secrets**

The disclosure of trade secrets alone is insufficient to quash a subpoena. *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1025 (Fed. Cir. 1986) ("selective disclosure of protectable trade secrets is not *per se* "unreasonable and oppressive" when appropriate protective

measures are imposed."). The party moving to quash based on the unnecessary disclosure of trade secrets carries the burden to establish, through evidence, that the information qualifies as a highly confidential trade secret. *Bramell v. Aspen Exploration, Inc.,* 2008 WL 4425368, at *2 (E.D. Tex. Sept. 24, 2008). In determining whether a trade secret is protected from disclosure, this Court has looked at six non-exclusive criteria guided by the Texas Supreme Court: "(1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Id.* at *3.

Retro uses a "take our word for it" approach to convince the Court that subpoena compliance would disclose trade secrets, rather than actually showing how such information qualifies as a trade secret. Retro identifies the "trade secret" as source code, which distinguishes it from its competitors but gives no other insight into the extent to which others know and have access to this information (other than to strongly suggest that NCL and NOA may also have access), the specific value the requested information brings to the company, the measures Retro takes to safeguard this information, the amount of effort and money used to develop the source code, and the ease or difficulty with which the information could be acquired or duplicated by others (other than to imply that such information might be relatively easy to obtain from another party). The fact that both Retro and Nintendo admit to having access to this source code, and that Nintendo may have already disclosed some of this information in the case during SyncPoint's code review minimizes using "trade secret" status as an excuse to withhold discovery. Dkt. No.

158, Pia Dec. ¶¶ 15-18. Furthermore, any information that was not already disclosed during the source code review could be subject to the Protective Order thereby eliminating or minimizing any potential harm to Retro. Dkt. No. 80, Protective Order.

Source code is not categorically protected as a trade secret nor does Retro argue such. Furthermore, the source code that runs on the infringing products in this case is highly relevant and necessary in this case because such "source code is the legal equivalent of a piece of computer hardware and … 'in a legal sense, source code is a made part of a computer product.'" *Eolas Technologies Inc. v. Microsoft Corp.,* 399 F.3d 1325, 1332-33 (Fed. Cir. 2005) (finding that accused product components include software code). Such source code is therefore relevant to proving infringement in this case. Where SyncPoint is currently seeking leave to amend its Complaint to add Retro as a party, this information is even more germane. Furthermore, protective measures may easily be taken, such as subjecting the information to the Protective Order effective in this case. Dkt. No. 80, Protective Order.

Because Retro has not even attempted to demonstrate how its source code legally constitutes a protectable trade secret (and in fact introduces evidence about Nintendo's knowledge of its source code that suggests the opposite), Retro has failed to meet its burden and the Court should deny Retro's motion to quash.

## II. No fees to Retro but fees to SyncPoint

Retro is not entitled to attorney's fees because it has unreasonably delayed and refused to provide relevant information in this case, which Nintendo, its parent company, refused or could not provide. Retro claims that it "should not have been required to file this motion," yet it is a wonder it did so in the first place, when it decided not only to refuse to answer SyncPoint's subpoena *duces tecum* served on July 30, 2015, but also to never file a motion to quash that

subpoena, which would have provided evidence regarding infringement on this case and the motion to quash. Nintendo should not be permitted on the one hand to withhold requested documents, and yet on the other hand to file this motion claiming that the information is irrelevant.

Fees for Retro are not warranted. But the fact that Retro continues to dodge its obligations is grounds for the Court to award SyncPoint its attorney's fees in responding to this Motion as well as filing its Motion to Compel. When a motion to compel is granted, "the Federal Rules dictate that the court 'order the party whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees.'" Fed. R. Civ. P. 37(a) (5)(A); *SmartPhone Technologies LLC v. Apple, Inc.,* 2013 WL 789285, at *2 (E.D. Tex. Mar. 1, 2013). For the reasons set forth herein, Retro's and Nintendo's non-compliance were not substantially justified and SyncPoint is entitled to fees.

## CONCLUSION

For the foregoing reasons, this Court should DENY Retro's Motion to Quash, and grant SyncPoint's request for fees.

Respectfully Submitted,

Dated: October 12, 2015							By: */s/ Joseph G. Pia*
								Joseph G. Pia

								Joseph G. Pia
								joe.pia@padrm.com
								Texas Bar No. 24093854
								Robert Aycock (Admitted in this District)
								Utah State Bar No. 8878
								raycock@padrm.com
								Sara Payne (Admitted in this District)
								Utah State Bar No. 14008
								spayne@padrm.com

>PIA ANDERSON DORIUS REYNARD & MOSS
>222 South Main Street, Suite 1830
>Salt Lake City, Utah 84101
>Telephone: (801) 350-9000
>Facsimile: (801) 350-9010
>
>S. Calvin Capshaw
>State Bar No. 03783900
>ccapshaw@capshawlaw.com
>Elizabeth L. DeRieux
>State Bar No. 05770585
>ederieux@capshawlaw.com
>CAPSHAW DERIEUX, L.L.P.
>114 East Commerce Avenue
>Gladewater, Texas 75647
>Telephone: (903) 236-9800
>Facsimile: (903) 236-8787
>
>*Attorneys for Plaintiff*

*Certificate of Service*

On October 12, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).

    /s/ Joseph G. Pia