# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SYNCPOINT IMAGING, LLC<br><br>*Plaintiff*,<br><br>v.<br><br>NINTENDO OF AMERICA, INC., et al.<br><br>*Defendants*. | CIVIL ACTION NO. 2:15-cv-00247-JRG-RSP |

## PLAINTIFF SYNPOINT IMAGING, LLC'S MOTION FOR LEAVE TO SERVE ITS SECOND SUPPLEMENTAL INFRINGEMENT CONTENTIONS

### I.     Introduction

Plaintiff SyncPoint Imaging, LLC ("SyncPoint") files its Motion For Leave To Serve its Second Supplemental 3-1 and 3-2 Disclosures, attached hereto as Exhibit A, under Patent L.R. 3-6(b). SyncPoint served its 3-1 and 3-2 Disclosures on May 29, 2015, as provided by Docket Control Order ("DCO") (D.I. 96) and served its First Supplemental P.R. 3-1 and 3-2 Disclosures on June 12, 2015 per agreement by the parties and at Defendants' request (collectively, "Original Contentions"), attached as Exhibit B.[1] The First Amended Contentions were lodged with the Court on November 4, 2015 (D.I 181) based upon the Court's request at the October 30, 2015 *Markman* Hearing regarding Defendants Motion for Protective Order to prevent SyncPoint from relying on 3-1(g) for its infringement contentions. This matter was extensively briefed by the

---

[1]  Defendants Nintendo and PixArt requested additional specificity regarding paragraph 3-1(a) in SyncPoint's cover pleading. SyncPoint provided the Supplemental Disclosures to provide the requested specificity in paragraph 3-1(a). However, the original claim chart and the appendices provided on May 29, 2015 remained the same. The parties agreed to this supplementation.

parties. [D.I. 124, 126, 129, 135.]

Per the discussion at the hearing, it became clear that SyncPoint did not rely on 3-1(g) as a placeholder for its infringement contentions. Rather, SyncPoint's Original Contentions adequately and sufficiently set forth its infringement theories. The claim chart provided to Defendants as part of the Original Contentions is 34 pages, and includes 49 pages of appendices. (D.I. 181). SyncPoint served this detailed infringement analysis based on then-known facts and understanding of the accused products, which preceded any discovery of source code. It is detailed as to infringement of each asserted claim on an element-by-element basis. Even a cursory review of the claim chart and the appendices shows that SyncPoint gave Defendants reasonable notice of SyncPoint's infringement theories.

Because the Original Contentions were preliminary in nature and based on publicly available information, and no discovery had yet occurred, SyncPoint reserved the right to supplement its contentions after discovery. In its cover pleading of P.R. 3 - 1(c) SyncPoint provided:

> The claim chart attached as Exhibit 1, along with its accompanying appendices, identify where each element of each asserted claim is found within each of the Accused Instrumentalities. The claim chart and the citations included therein are exemplary and nonlimiting. Based on the information available to SyncPoint and its investigation thus far, the charts identify where each element of each asserted claim is found within the Accused Instrumentalities or by the use of the Accused Instrumentalities. On information and belief, certain elements of the asserted claims are satisfied by software or circuit components of the Accused Instrumentalities or combinations thereof. Defendants' internal confidential documentation, including but not limited to the relevant source code, firmware, or technical documents such as schematics, which have not yet been produced, may provide further information establishing infringement. SyncPoint reserves its rights under P.R. 3-1(g), P.R. 3-6, Fed. R. Civ. Proc. 26(e), or any other applicable rule, standard, or Court order, to modify or supplement these infringement contentions to the extent that good cause for such amendment arises on receipt and review of documents from Defendants or other third parties.

(Exhibit B, p. 3).

Good cause exists for SyncPoint's supplementation at this time because although no deadline has been missed, such as 3-1(g), and its infringement theories have not changed, SyncPoint wishes to cite to specific evidence including source code, that was not previously or publicly available and now has been reviewed, to help the parties understand the issues more clearly and particularly as they prepare for live discovery and expert reports. This supplementation is timely because it is being made promptly since the time of reviewing documentary discovery produced in the case including source code. There is no prejudice to the parties because SyncPoint's infringement theories are not new, and are consistent with its original theories. [2]

## II. Legal Standard

Local Patent Rule 3-6 states "(b) Leave required. Amendment or supplementation any Infringement Contentions or Invalidity Contentions, other than as expressly permitted in P. R. 3-6(a), may be made only by order of the Court, which shall be entered only upon a showing of good cause." The Court has broad discretion to determine what constitutes good cause to amend, and it generally considers four factors in its analysis: "(1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice." *Arbitron, Inc. v. Int'l Demographics, Inc.*, No. 2:06-CV-434, 2009 U.S. Dist. LEXIS

---

[2] On October 30, 2015, Nintendo and Retro Studios agreed to provide the source code and related technical documentation for one representative Wii game, Metroid Prime 3 as well as a witness to testify how the game uses optical pointer data to generate game commands and how Retro Studios works in concert with Nintendo on game development but this discovery has not yet been provided. SyncPoint believes that one omnibus supplementation of its infringement contentions that take place after such source code has been made available would be more efficient, but brings this motion anyway based upon the guidance provided by the Court at the October 30, 2015 *Markman* Hearing.

3191, at *1 (E.D. Tex. Jan. 16, 2009) (citing *S & W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)).

### A. SyncPoint's Seconded Supplemental Infringement Contentions are Seasonable Because No Deadline Was Missed.

As a primary matter, this motion is being filed not because any deadline was missed, but rather because new factual information has been produced and reviewed in the case, such as source code, that if incorporated now into SyncPoint's infringement contentions will assist the parties in understanding the issues and preparing for live discovery and expert reports. Defendants have argued in connection with their motion for protective order that SyncPoint should be prevented from supplementing its contentions under 3-1(g). The parties have extensively briefed this issue, and those arguments will not be rehashed here. [D.I. 124, 126, 129, 135.] Suffice it to say, Defendants' argument is mere misdirection as SyncPoint's Original Contentions were set forth in detail in its infringement theories in 34 pages of claim charts and 49 pages of appendices (with links to additional materials), which are readily understood by undertaking a review of Exhibit B. SyncPoint's identification now of more particularized evidence of infringement is not prejudicial or improper as further discussed below.

SyncPoint is moving promptly after its review of source code, even before Defendant PixArt has provided requested source code printouts in order to remove any claim of prejudice or delay.[3] For the same reasons, this supplementation is being provided before Nintendo has

---

[3] Even though PixArt has failed to produce printouts of specific portions of its source code identified by SyncPoint as required by the Protective Order by section 10(j) of the Protective Order (D.I. 80), and despite the fact that this failure makes the citation to source code difficult, SyncPoint's Seconded Supplemental Contentions include a number of examples of software modules that are involved in the processing of optical pointer data to detect specific values to be used in command generation, as well as software modules that use the optical pointer data to generate commands.

produced source code and related technical documents for its software video game Metroid Prime 3 that it represented at the *Markman* Hearing would be produced. SyncPoint must, in an abundance of caution, reserve the right to further supplement its contentions when PixArt produces source code printouts, and when source code for Metroid Prime 3(and potentially other software game titles) is produced.[4]

SyncPoint was diligent in its source code discovery. SyncPoint began its review of source code on September 14, 2015, which was the first date that both SyncPoint and Nintendo could mutually schedule such review after Defendants belabored, but eventually cleared SyncPoint's code reviewers under the protective order on September 3, 2015. *See* Declaration of Jay Bhatia, D.I. 158, Exhibit C. Moreover, SyncPoint began its review of PixArt source code on September 28, 2015, when PixArt was first able to schedule its code for inspection. PixArt has not yet fulfilled its obligations, because it still refuses to make available to SyncPoint the source code printouts it requested to complete the review. *Id.* at ¶.

Because SyncPoint has been diligent and no deadline was missed, and because SyncPoint's purpose in providing supplemental contentions is to assist all parties, the "good cause" analysis has been satisfied.[5]

---

[4] Nintendo also represented on the record that it would provide a 30(b)(6) witness for Retro Studios, Inc. to testify as to source code and other technical aspects of Metroid Prime 3.

[5] Even if the Court finds that SyncPoint is tardy, amended infringement contentions are important enough issues in the case that the Court should still grant leave to supplement its responses. In *Ultimate Pointer, LLC v. Nintendo Co. Ltd.,* Nintendo argued that the plaintiff's infringement contentions were inadequate because they did not contain pinpoint citations to source code. *UltimatePointer, L.L.C. v. Nintendo Co.,* No. 6:11-CV-496-LED, 2013 WL 6253767, at *3 (E.D. Tex. Dec. 3, 2013). Accordingly, the Court ordered plaintiff to amend its infringement contentions to contain newly relevant information.

  **B.**  **The Importance Of Permitting Syncpoint's Second Supplemental Infringement Contentions Is To Assist The Parties In Preparation For Live Discovery And Expert Reports, And Ultimately Trial; The Parties Are Not Better Served By Excluding A More Particularized Articulation Of Infringement.**

  Good cause exists for SyncPoint to serve its Second Supplemental Infringement Contentions to assist the parties as the case progresses, and to avoid confusion especially where Nintendo has complained that SyncPoint's infringement contentions are not particular enough, while at the same time arguing that SyncPoint cannot supplement under 3-1(g). SyncPoint wishes to head off this false straddle that may rear its head during live discovery, and result in additional and unnecessary motion practice in relation to expert reports. SyncPoint is also concerned that Nintendo seeks to limit a full presentation of evidence at trial, and believes granting this motion to supplement will assist in that regard.

  The rules themselves do not require that infringement contentions put forth all evidence to be presented at trial. The purpose of infringement contentions early in the case is to put the parties on notice of the plaintiff's infringement theories to guide the case and narrow the issues. *STMicroelectronics, Inc. v. Motorola, Inc.,* 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004); *see also Realtime Data, LLC v. Packeteer, Inc.,* 2009 WL 2590101, at *5 (E.D.Tex. Aug. 18, 2009) (stating that "[i]infringement contentions are not intended to require a party to set forth a *prima facie* case of infringement and evidence in support thereof."). Indeed, the Court has previously noted that "P.R. 3-1 does not require the disclosure of evidence and documents supporting infringement contentions." *Balsam Coffee Solutions Inc. v. Folgers Coffee Co.,* 2009 WL 4906860, at *3 n.2 (E.D.Tex. Dec. 9, 2009); *Linex Techs.,* 628 F. Supp. 2d at 713 (citing *STMicroelectronics, Inc. v. Motorola Inc.,* 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004); *ROY-G-BIV Corp. v. ABB, Ltd.,* 63 F. Supp. 3d 690, 700 (E.D. Tex. 2014).

  SyncPoint's infringement contentions are compliant with P.R. 3-1 because they provide Nintendo with notice of SyncPoint's theories on how the accused instrumentalities

meet the claim limitations. Therefore, although serving supplemental infringement contentions that contain a more particularized identification of supporting evidence, may technically be unnecessary at this stage, it is appropriate and important to continue to guide the remainder of discovery and the preparation of expert reports, and other motions and materials leading up to trial. All parties are better served by clarification and particularization of SyncPoint's infringement position that will streamline the litigation. *See Realtime Data,* 2009 WL 2590101, at *5.

### C. Defendants Will Not Be Prejudiced If Syncpoint Is Allowed To Supplement Its Infringement Contentions Because Syncpoint's Infringement Theories Have Not Changed, And It Is Providing Additional Particularity Regarding Infringement.

Nintendo and PixArt will not be prejudiced by receiving SyncPoint's Second Supplemental Infringement Contentions ahead of expert report deadlines and live discovery. To the contrary, this supplementation will help clarify SyncPoint's infringement theories by identifying specific facts, including exemplary source code modules by name as requested by Defendants.

### D. Syncpoint's Second Supplemental Infringement Contentions Do Not Add Any New Claims To The Original Contentions.. Defendants Will Not Be Prejudiced By Obtaining The Requested Additional Specificity Or By Getting An Advanced Look At Its Infringement Proof Prior To Expert Reports Being Exchanged. No Continuance Is Needed To Cure Prejudice.

Where the nature of SyncPoint's Supplemental Contentions is not to identify new infringement theories, but rather only to more particularly recite its theories and to specify particular examples of source code and other materials evidencing infringement, no continuance is needed.

### III. Conclusion

For the forgoing reasons, SyncPoint respectfully requests that its motion to supplement its infringement contentions be granted.

Respectfully Submitted,

Dated: November 17, 2015 By: */s/ Joseph G. Pia*
 Joseph G. Pia

Joseph G. Pia
joe.pia@padrm.com
Texas Bar No. 24093854
Robert Aycock (Admitted in this District)
Utah State Bar No. 8878
raycock@padrm.com
Sara Payne (Admitted in this District)
Utah State Bar No. 14008
spayne@padrm.com
PIA ANDERSON DORIUS REYNARD & MOSS
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 350-9000
Facsimile: (801) 350-9010

Elizabeth L. DeRieux
State Bar No. 05770585
ederieux@capshawlaw.com
CAPSHAW DERIEUX, L.L.P.
114 East Commerce Avenue
Gladewater, Texas 75647
Telephone: (903) 236-9800
Facsimile: (903) 236-8787

*Attorneys for Plaintiff*

*Certificate of Service*

On November 17, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).

                                                ___/s/ Joseph G. Pia_____

*Certificate of Conference*

      I certify that counsel for Plaintiff SyncPoint Imaging, LLC complied with the meet and confer requirement in Local Rule CV-7(h), and that the foregoing motion is opposed by Defendants Nintendo of America Inc. and Nintendo Co., Ltd. (collectively, "Nintendo").  On Friday, August 7, 2015, an in person meet and confer between lead and local counsel for SyncPoint and Nintendo was conducted. Grant Kinsel and Clyde Siebman attended on behalf of Nintendo. Joseph Pia and Jeff Rambin attended on behalf of SyncPoint. On Friday October 30, 2015, another  in person meet and confer between lead and local counsel for SyncPoint and Pixart was conducted. Claire Henry and Duane Mathiowitz attended on behalf of Pixart. Joseph Pia and Elizabeth DeRieux attended on behalf of SyncPoint. During these meetings, the parties expressed their views on the dispute but were unable to resolve the issue as the parties have differing understandings of what is required by the Court's Rules. Accordingly, the parties have met and conferred, in person, in good faith, and have jointly concluded, in good faith, that the discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

                                                                                                     ___/s/ Joseph G. Pia_____