**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF TEXAS**

**MARSHALL DIVISION**

| | |
|---|---|
| SYNCPOINT IMAGING, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>NINTENDO OF AMERICA, INC., et al.<br><br>    Defendants. | Civil Action No. 2:15-cv-00247-JRG-RSP |

**DEFENDANT PIXART IMAGING INC.'S RESPONSE TO
SYNCPOINT IMAGING LLC'S EMERGENCY MOTION TO STAY**

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................................... 2

    A. The Bankruptcy Trustee Intends to Sell the '214 Patent .................................................. 2

    B. The PTAB Institutes *Inter Partes* Review ....................................................................... 3

    C. PixArt's Dispositive Motions Remain Pending ............................................................... 3

III. RELEVANT LAW ................................................................................................................ 4

IV. ARGUMENT ......................................................................................................................... 4

    A. This Case Should Be Stayed Pending the Outcome of the IPR ....................................... 5

    B. This Case Should be Stayed Pending Resolution of PixArt's Motions ............................ 6

    C. All Factors Support A Stay Pending Resolution of All Dispositive Issues ..................... 7

        1. Prejudice to the Parties ................................................................................................ 7

        2. Simplification of Issues ............................................................................................... 8

        3. The Stage of Litigation ................................................................................................ 9

V. CONCLUSION .................................................................................................................... 10

## **TABLE OF AUTHORITIES**

*Alza Corp. v. Wyeth*, No. 9:06-cv-156, 2006 WL 3500015 (E.D. Tex., Nov. 21, 2006)................ 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 6

*Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404 (5th Cir. 1990) .............................. 6

*NFC Tech. LLC v. HTC America, Inc.*, No. 13-cv-1058, 2015 WL 1069111 (E.D. Tex. Mar. 11,
    2015).......................................................................................................................................... 5

*Petrus v. Bowen*, 833 F.2d 581 (5th Cir. 1987) ............................................................................. 6

### **Other Authorities**

35 U.S. Code § 315 ......................................................................................................................... 8

I.  INTRODUCTION

Defendant PixArt Imaging, Inc. ("PixArt") respectfully provides its response to Plaintiff SyncPoint Imaging, Inc.'s ("SyncPoint") Emergency Motion to Stay (Dkt. No. 220).

As SyncPoint's motion makes clear, its ownership of the '214 patent is in peril and it makes little sense for SyncPoint to litigate a patent it does not own. But there are other reasons why moving forward with this case makes little sense. Those other reasons should be incorporated into this Court's stay order, if one issues.

A stay is warranted in light of the Patent Trial and Appeal Board's ("PTAB") decision to institute an *inter partes review* ("IPR") of the single patent-in-suit, the '214 patent, including all claims asserted against PixArt. The Court should await the PTAB's decision on validity because it is likely there will be no valid claim of the '214 to assert against PixArt at trial.[1]

A stay is also warranted in light of PixArt's long-pending motions to dismiss for lack of personal jurisdiction, improper venue, failure to state a claim, and motions to compel and stay pending arbitration. These case-dispositive motions have been pending for approximately six months. The deadlines in the Court's Docket Control Order have, and will continue to force PixArt to spend money defending this lawsuit while its meritorious motions linger on the Court's docket.

Although the bankruptcy proceeding alone may not warrant a stay, when all three reasons for a stay are considered— (1) the Bankruptcy Court's proceedings challenging ownership of the '214 patent, (2) the PTAB's institution of an IPR on all claims asserted against PixArt, and (3) PixArt's pending motions showing there are no viable causes of action against PixArt and that

---

[1] The '214 Patent is also the subject of an *ex parte* reexamination. On May 13, 2015, the PTO entered an order granting ex parte reexamination of all claims of the '214 patent, finding that there are substantial questions of patentability, including anticipatory prior art. On October 6, 2015, the PTO issued a non-final office action which rejected all claims, claim 1-26, of the '214 patent. *See* Peden Decl., Ex. A.

1

the Court lacks jurisdiction and venue is improper—a stay can be entered, but it should remain in effect until all issues regarding ownership, validity, and jurisdiction are resolved.

The parties appear to agree that a stay will not unduly prejudice or disadvantage the other, as both are facing immediate deadlines for expert reports and pretrial preparation. As SyncPoint puts it "with trial little more than four months away, many deadlines are approaching in quick succession." Mot. at 2. All parties have a vested interest in avoiding the time and expense of trying an infringement case when the plaintiff lacks standing, the patent is invalid, there are no cognizable claims, and where the Court lacks jurisdiction. There is little doubt, given the number of case-dispositive issues pending in this court—and two other courts—that a stay will simplify the issues. Although discovery has closed and a trial date has been set, there is no reason for the Court or the parties to continue to litigate claims that, in all probability, are facing an inevitable demise.

## II. FACTUAL BACKGROUND

### A. The Bankruptcy Trustee Intends to Sell the '214 Patent

In June 2012, the patentee, Karl C. Hansen and his wife, Lisa, filed a voluntary petition for bankruptcy in New Hampshire. New Hampshire law permits a limited number of personal bankruptcy exemptions, which must be under a certain dollar amount.[2] In his bankruptcy petition, Karl Hansen did not list the '214 patent as personal property, but rather as an asset of his company, Brilliant Points, Inc., although he admits that until he assigned the '214 patent to SyncPoint[3] on the eve of filing this lawsuit, he owned the patent.

When Hansen's failure to disclose the '214 patent to the Bankruptcy Court became the subject of discovery in this case, Hansen's attorneys contacted the Trustee to disclose that the

---

[2] New Hampshire's are narrow, specific and slightly outdated. Personal exemptions include "clothing; beds, bedding and cooking utensils; furniture up to $3,500; Refrigerator, cooking stove, and heating stove; sewing machine; provisions and fuel up to $400; books up to $800; 1 hog and 1 pig, or pork if already slaughtered; 6 sheep and their fleeces; 1 cow, and hay up to 4 tons; domestic fowls up to $300; church pew; motor vehicle up to $4,000; jewelry up to $500; any property up to $1,000; and burial plot or lot. New Hampshire Revised Statutes § 511:2.
[3] Karl Hansen owns 100% of SyncPoint.

2

'214 patent was the subject of pending litigation against PixArt and Nintendo. *See* Dkt. No. 213 at ¶¶ 7-8. The Trustee determined that "[b]ecause the Debtors failed to properly disclose their interest in the Assets in their Schedules and § 341 Meeting, Mr. Hansen's transfer of some of the Assets to SyncPoint is invalid, and the Assets are all property of the bankruptcy estate." Dkt. No. 213 at ¶ 9. The Trustee asked the Court for permission to sell Hansen's undisclosed assets, including the '214 patent. *See* Dkt. No. 213. The Trustee sought to sell the assets on an expedited basis, and a hearing was held on January 5, 2016. At the hearing, the Bankruptcy Court denied the Motion to Sell without prejudice, pending the development of a more detailed factual record. PixArt has offered to purchase the assets from the estate and, if permitted, will be the owner of the '214 patent before this case reaches trial.[4] *Id.*

### B. The PTAB Institutes *Inter Partes* Review

On June 8, 2015, PixArt filed a Petition for Inter Partes Review of the '214 Patent. On December 16, 2015, the PTAB issued an order instituting the IPR for all challenged claims of the '214 patent, except dependent claims 20 and 21. *See* Peden Decl., Ex. B (PTAB Order). Claims 20 and 21 are not asserted in this case. *See* Peden Decl., Ex. C (Russ Report—filed under seal) at ¶ 2. Thus, all asserted claims of '214 patent are under review by the PTAB and there are substantial questions as to whether those claims are valid.

### C. PixArt's Dispositive Motions Remain Pending

On May 27, 2015, PixArt responded to the complaint by filing a Motion to Dismiss. PixArt's motion showed that this Court lacks personal jurisdiction over PixArt, that venue is improper, and that all counts of the complaint should be dismissed. *See* Dkt. No. 42. SyncPoint filed its response on June 15, 2015. Pursuant to the Court's Local Rules wherein the Court is not required to wait for a reply or sur-reply before ruling on pending motions, PixArt's motion to dismiss was ripe for ruling on June 15th—over six months ago.[5] To date, the Court has not ruled

---

[4] The '214 Patent is invalid and worthless, but the cost of purchase is less than litigation costs.
[5] PixArt's reply was filed on June 25, 2015 (Dkt. No. 82). SyncPoint's sur-reply was filed on July 6, 2015 (Dkt. No. 89). Even if the time the motions have been pending is calculated from the date of the sur-reply, the case-dispositive motion has been pending for nearly six months.

3

on PixArt's motion.

In its first submissions to the Court on May 27, 2015, PixArt also filed a Motion to Compel Arbitration of the breach of contract claim, and a Motion to Stay Proceedings Pending Arbitration. *See* Dkt. Nos. 44 & 46. On June 15, 2015, SyncPoint responded to PixArt's motions. *See* Dkt. No. 70.[6] In the context of overruling PixArt's proposed docket control order that would have pushed the Court's proposed schedule out by three months to permit a ruling on PixArt's motions before discovery commenced in earnest, the Court denied PixArt's Motion to Stay Proceedings Pending Arbitration. *See* Dkt. Nos. 91 & 96. Because the Magistrate Judge erred by not applying controlling Federal Arbitration Act case law in deciding the motion to stay, PixArt filed a Motion for Reconsideration on July 21, 2015, which remains pending on the Court's docket.[7] *See* Dkt. No. 106. The companion Motion to Compel, also filed on May 27th, was argued on October 30, 2015, wherein the Court appeared to be leaning toward compelling arbitration, but no ruling has yet issued.[8]

## III. RELEVANT LAW

PixArt does not disagree with SyncPoint's statement of the relevant legal standard for motions to stay. Where additional authority is required, it is addressed below.

## IV. ARGUMENT

SyncPoint's Motion to Stay is entirely one-sided. SyncPoint would like to stay this case so that it can resolve the ownership of the patent before spending more time and money on this case. But SyncPoint's argument for delay applies with equal force to staying this case pending resolution of the IPR and PixArt's pending motions. Any stay entered in this case should remain in place until all potentially case-dispositive issues are resolved.

---

[6] PixArt's reply was filed on June 22, 2015 (Dkt. No. 79), and SyncPoint's sur-reply was filed on July 1, 2015 (Dkt. No. 87).
[7] SyncPoint's opposition was filed on August 7, 2015 (Dkt. No. 110), the reply was filed on August 12, 2015 (Dkt. No. 119), and the sur-reply was filed on August 24, 2015 (Dkt. No. 127).
[8] The subsequent briefing for the Motion to Compel Arbitration is the same as the Motion to Stay Proceedings Pending Arbitration, as SyncPoint opted to respond to both motions in a single pleading. *See* Dkt. Nos. 70, 79 & 87.

4

### A. This Case Should Be Stayed Pending the Outcome of the IPR

"A stay is particularly justified when 'the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues.'" *NFC Tech. LLC v. HTC America, Inc.*, No. 13-cv-1058, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015). A stay pending the outcome of the IPR gives the Court the benefit of the PTO's particular expertise on invalidity, which in turn may be case dispositive. *Id.* at *4. A stay pending the outcome of an IPR serves the important goal of reducing the burden of litigation on the parties and on the Court. *Id.* at *1-*2.

In this case, the likelihood of obtaining judicial efficiencies from the outcome of the IPR is high, warranting a stay. *See id*. at *4. The claims at issue in the IPR are identical to the claims asserted against PixArt in this case. In other words, there are no claims asserted against PixArt that are not currently under review by the PTAB. Awaiting resolution of the IPR will allow the parties and the Court to focus their resources on claims confirmed to be valid, if any. If, as PixArt expects, no asserted claims of the '214 Patent survive, the Court and the parties will not have wasted judicial resources to litigate invalid claims.

To be sure, this Court, in the past, has rejected stays pending the outcome of IPRs, noting that Plaintiff has an interest in having their patent rights timely enforced.[9] This case is different. In this case, **SyncPoint requested a delay,** it cannot then complain about PixArt's co-request for a stay, or argue that it a stay is unfair because of any delay in enforcing its patent rights.

If this Court is going to disrupt the case schedule, and presumably reset the trial date to await resolution of the Bankruptcy Court proceedings at SyncPoint's request, there is no reason that the stay cannot accommodate the resolution of the IPR.

---

[9] Delay is present in every instance of a stay and, standing alone, is insufficient to deny a stay. *See NFC Tech.*, 2015 WL 1069111, at *5 (citing cases), *see also Virtual Agility, Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318-20 (Fed. Cir. 2014) (finding that the patentee could be adequately compensated through a damages remedy and therefore could not show undue prejudice from a stay).

### B. This Case Should be Stayed Pending Resolution of PixArt's Motions

The Fifth Circuit has recognized that a stay is warranted when a motion to dismiss is pending because those motions are decided on the face of the complaint and, if granted, are likely dispositive of the entire case, thus avoiding undue expense and burden. *See Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 435-36 (5th Cir. 1990); *see also Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("A trial court had broad discretion and inherent power to enter a stay until preliminary questions that may dispose of the case are determined."). As the Supreme Court has explained, motions to dismiss serve as an important check to discovery abuse in a way that cannot otherwise be solved in later stages of litigation because "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

PixArt's Motion to Dismiss demonstrates that that this case should be dismissed. Notwithstanding its motion and continued objection to this Court exercising personal jurisdiction, PixArt has complied with Local Rule CV-26(a), and responded to SyncPoint's discovery, including to jurisdictional discovery. Discovery closed on December 14, 2015, and SyncPoint has not sought to supplement its opposition briefs based on favorable information learned in discovery because there is none. Yet, because its motion to dismiss remains pending, PixArt faces the increased costs of expert reports and discovery, dispositive motions, *Daubert* briefing, pretrial submissions and trial. Moreover, because this case has now proceeded past discovery, the Court will be asked to rule on motions that impact PixArt's substantive legal rights, a result that is untenable given that the Court lacks personal jurisdiction over PixArt.

The cost of PixArt's continued defense far exceeds the merits of SyncPoint's unraveling case. A stay pending resolution of PixArt's motions provides an important check against this continued unnecessary expense. Accordingly, the court should stay all deadlines until after PixArt's Motion to Dismiss and arbitration motions have been resolved. Again, there is no reasonable counter-argument that a stay will prejudice SyncPoint because it asks the Court for the same relief.

### C. All Factors Support A Stay Pending Resolution of All Dispositive Issues

All factors support staying this case until all case-dispositive challenges have been resolved.

#### 1. Prejudice to the Parties

A stay pending resolution of the IPR and PixArt's dispositive motions will not unduly prejudice or present a clear tactical disadvantage to SyncPoint. PixArt and SyncPoint are not competitors, and a stay pending resolution PixArt's motion and IPR will have no impact on SyncPoint's case. *See NFC Tech.*, 2015 WL 1069111, at *3. As a non-practicing non-research entity, SyncPoint will not be entitled to injunctive relief. Thus, in the unlikely event it prevails at trial, SyncPoint can be compensated with money damages. *See id*.

IPR is an inter parte procedure, so SyncPoint will not be prejudiced in its ability to defend itself and the '214 Patent. SyncPoint has the opportunity to fully participate at all stages of the IPR proceedings, which were timely initiated by PixArt. By contrast, absent a stay, the parties and the Court stand to waste a great deal of effort, time, and money given the likely invalidity of the asserted claims. Both parties could be forced to litigate a lengthy patent trial and a potential appeal only to have the outcome of the case invalidated by the PTO's actions. *See Alza Corp. v. Wyeth*, No. 9:06-cv-156, 2006 WL 3500015, at *4 (E.D. Tex., Nov. 21, 2006) (granting stay and noting that, if the parties continue to litigate the validity of the claims in court and the PTO subsequently finds that the claim in issue is invalid, the court action would be moot and the parties will have wasted all of their time and resources).

In fact, SyncPoint stands to benefit equally with PixArt from a stay. In the event that the PTO ultimately confirms some or all of the asserted claims, PixArt will have to overcome that determination when this litigation resumes. *NFC Tech.,* 2015 WL 1069111, at *4. Furthermore, PixArt will be barred from asserting in this case a challenge to the validity of the '214 patent on any ground raised or that reasonably could have been raised during the IPR. *See id*., citing 35

U.S. Code § 315. In light of the foregoing, there is no benefit that justifies actively litigating this case in parallel with the IPR.

Likewise there is no prejudice to SyncPoint in staying this case pending resolution of PixArt's pending motions. Discovery has now closed and SyncPoint has had a full and fair opportunity to gather the evidence it claims supports a finding of personal jurisdiction, or to show that the statute of limitations has not barred its breach of contract claim. Far from finding any such evidence, SyncPoint admits it has none. *See* Peden Decl., Ex. D (SyncPoint's Second Supplemental Response to Defendants' Interrogatory No. 5). Both parties will benefit from having the jurisdictional and statute of limitations issues resolved before they continue to litigate a case that will ultimately be dismissed by the Court.

If a stay is entered pending the outcome of the bankruptcy proceedings only, PixArt will be prejudiced as SyncPoint will have convinced the Court to eliminate the risk, expense and effort SyncPoint faces, while at the same time forcing PixArt to incur risk, time and expense defending this case while its claims of invalidity and lack of jurisdiction go unresolved. The court's equitable powers should apply equally, or what is known as "the goose and gander rule." If, as SyncPoint alleges, PixArt is not prejudiced by a stay so that SyncPoint can get resolution on the Bankruptcy issue, SyncPoint cannot claim to be prejudiced if PixArt is permitted a stay to obtain resolution of the validity and jurisdictional issues.

### 2. Simplification of Issues

Whether the outcome of the IPR will result in simplification of the issues before the Court is an important factor in the stay analysis—it may be the most important factor. *NFC Tech.*, 2015 WL 1069111, at *4. A stay of the present action pending resolution of the IPR will afford the Court the PTO's expertise in patent validity and will simplify the litigation by likely invalidating and/or changing the claims of the asserted patent, saving the parties and the Court the expense of trial before the PTO reaches a decision on the claims. As a result of the IPR, all asserted claims of the '214 Patent may be found invalid, or their scope altered to such a degree that infringement allegations can no longer be asserted in good faith, which would be the

8

ultimate simplification of the issues in dispute. In this case, the PTAB has granted review of all claims asserted against PixArt, "a highly significant factor" in the stay analysis. *Id.* Now that the IPR has been instituted, the case for a stay is strong. *Id*. at *5. Indeed, a "near-uniform line of authority" reflects the point that "after the PTAB has instituted review proceedings, the parallel district court litigation ordinarily should be stayed," and although the case law has developed in the context of covered business method review, the same approach applies in the analogous IPR setting.[10] *Id.* at *4.

The same reasoning applies to PixArt's pending motions. If this Court determines that it does not have personal jurisdiction over PixArt, or that venue is not proper in this district, this case will be dismissed. PixArt's Motion to Dismiss the breach of contract claim because it is barred by the statute of limitations is likely to result in dismissal of one of the two counts of the complaint, significantly reducing the issues the jury must decide.

### 3. The Stage of Litigation

Clearly, this case is not in its infancy, but it is also not so far along that it should not be stayed. SyncPoint apparently agrees, as the post-*Markman* stage of this case did not prevent SyncPoint from requesting a stay. Now, as SyncPoint's motion argues, the parties are facing significant expenses, including expert reports, expert discovery, pretrial work and trial preparation in the near future. Thus, entering a stay now will save the parties significant costs and effort that might be avoided if the bankruptcy proceedings, IPR, or dispositive motions results in the simplification (or obviation) of further proceedings. *Id.* at *3.

PixArt has been diligent in pursuing its remedies. PixArt timely filed its motions to dismiss, petition for IPR, and this motion to stay.[11] PixArt filed its IPR and Motions to Dismiss, Compel Arbitration, and Stay Pending Arbitration at the outset of this case. PixArt felt

---

[10] *NFC Tech.*, 2015 WL 1069111, at *5 (E.D. Tex. Mar. 11, 2015). Given the parallel policies of CBM review and IPR, several courts have applied the four-factor test in granting litigation stays pending resolution of IPR. *See id.*
[11] This motion was filed approximately three weeks after the PTAB instituted the IPR. *See e.g., NFC Tech.*, No. 13-cv-1058, at *7.

9

compelled to give this Court at least six months to rule on its pending motions before addressing the issue with the Court. Now that time has passed, and PixArt is raising the issue in a timely manner. This motion is not brought for an improper purpose, but rather for the purpose of simplifying and narrowing the issues the parties must litigate. In view of this timely motion, and in view of SyncPoint's recent motion also seeking a stay, a stay pending resolution of the pending motions is justified.

## V. CONCLUSION

The ownership and validity of the '214 Patent has been called into question and will remain uncertain until the Bankruptcy Court and the PTAB issue final decisions. This Court's jurisdiction over PixArt has long been in question, and will remain so until PixArt's pending motions are resolved. The viability of SyncPoint's breach of contract cause of action remains in question because the Court has not ruled on the statute of limitations bar briefed in PixArt's motion. Thus, if the Court is going to grant SyncPoint's requested stay, the stay should remain in place until all case-dispositive issues are resolved.

Dated: January 5, 2016

Respectfully submitted,

*/s/ Patricia L. Peden*

Patricia L. Peden (CA Bar No. 206440)
(admitted in the E.D. Texas)
Duane H. Mathiowetz (CA Bar No. 111831)
(admitted in the E.D. Texas) – lead counsel
Rick C. Chang (CA Bar No. 209515)
(admitted in the E.D. Texas)
LeClairRyan LLP
44 Montgomery Street, Suite 3100
San Francisco, CA 94104
Telephone (415) 391-7111
Facsimile (415) 391-8766
patricia.peden@leclairryan.com
duane.mathiowetz@ leclairryan.com
rick.chang@ leclairryan.com

*Attorneys for Defendant PIXART IMAGING, INC.*

**CERTIFICATE OF SERVICE**

I certify that all counsel of record who are deemed to have consented to electronic service are being served this January 5, 2016 with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3), and by email.

*/s/ Adriana L. Lawrence*

Adriana L. Lawrence
