# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SyncPoint Imaging, LLC, | **REDACTED VERSION** |
| Plaintiff, | |
| vs. | [Unredacted version filed under seal pursuant to protective order] |
| Nintendo of America Inc., et al., | |
| Defendants. | **No. 2:15-cv-00247-JRG-RSP** |
| | [Jury Trial Demanded] |

**Nintendo's Opposition To Request For Dismissal**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................1

1. FACTS ................................................................................................2

    1.1 This case was frivolous when filed. .............................................2

    1.2 The bankruptcy proceedings—and SyncPoint's loss of the patent—resulted from Mr. Hansen's false statements to the New Hampshire bankruptcy court, not an "effective settlement." ..................................................................................4

    1.3 The '214 patent is also invalid. ...................................................7

    1.4 SyncPoint's Request for Dismissal improperly seeks dismissal without prejudice. .......................................................7

2. ARGUMENT ........................................................................................8

    2.1 The Court should deny SyncPoint's Request for Dismissal. ........8

    2.2 The Court should find that Nintendo and PixArt are prevailing parties. ................................................................12

CONCLUSION.........................................................................................13

## TABLE OF AUTHORITIES

**CASES**

*Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*,
  357 F.3d 1266 (Fed. Cir. 2004) ................................................................. 10

*Freeny v. Apple Inc.*,
  2014 WL 4954541, Case No. 13-cv-00361
  (E. D. Tex. Oct. 1, 2014) ............................................................................ 9

*H.R. Techs., Inc. v. Astechnologies, Inc.*,
  275 F.3d 1378 (Fed. Cir. 2002) ......................................................... 11, 12

*Hartford Accident & Indemnity Co. v.
  Costa Lines Cargo Servs., Inc.*,
  903 F.2d 352 (5th Cir. 1990) ..................................................................... 9

*Highway Equip. Co., Inc. v. FECO, Ltd.*,
  469 F.3d 1027 (Fed. Cir. 2006) ............................................................... 11

*In re FEMA Trailer Formaldehyde Prods. Liability Litig.*,
  628 F.3d 157 (5th Cir. 2010) ................................................................. 8, 9

*Inland Steel Co. v. LTV Steel Co.*,
  364 F.3d 1318 (Fed. Cir. 2004) ............................................. 8, 11, 12, 13

*National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
  ___ Fed. App'x ___, Appeal No. 2015-1406, 2017 WL
  360559 (2017) .......................................................................................... 10

**STATUTES**

35 U.S. Code § 285 ......................................................................................... 11

**OTHER AUTHORITIES**

9 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2364
  (3d ed., Updated thru April 2017) ............................................................ 8

Fed. R. Civ. Proc. 41 ................................................................................... 8, 9

Fed. R. Civ. Proc. 41(a)(1)(A)(ii) ................................................................... 8

Fed. R. Civ. Proc. 41(a)(2) ............................................................................ 12

Fed. R. Civ. Proc. 54 ....................................................................................... 2

# INTRODUCTION

SyncPoint's Request for Dismissal encapsulates the bad-faith with which SyncPoint has approached this case. When SyncPoint filed its Request, SyncPoint and its lawyers knew Nintendo and PixArt opposed the Request because SyncPoint did not seek dismissal with prejudice and did not identify Nintendo and PixArt as prevailing parties. Yet, SyncPoint filed its Request anyway without notifying the Court that the Request was opposed. Instead, SyncPoint titled its Request a "dismissal for mootness," and, despite knowing that Nintendo and PixArt disagreed, suggested that "one of the defendants has effectively settled this case." But this case was not "effectively settled." Far from it. SyncPoint lost on virtually every issue a patent plaintiff can lose on—including the fulcrum issues of literal infringement, damages, validity, and ownership.

Avoiding a dismissal with prejudice and the concomitant prevailing-party finding are high priorities for SyncPoint. This is so because Nintendo's forthcoming motion for attorney fees will establish that SyncPoint engaged in serious litigation misconduct leading up to and throughout this case. Thus, SyncPoint filed its Request not because it accurately reflected the state of the record or the parties' agreements, but rather, with the vague hope of avoiding an adverse judgment and all that follows from such a judgment.

Nintendo opposes SyncPoint's Request because it would be highly prejudicial to both Nintendo and PixArt to allow this case to be dismissed without prejudice and without identifying Nintendo and PixArt as the prevailing parties. Nintendo and PixArt spent almost two years and millions of dollars defending against a case that never should have been filed. Nintendo warned SyncPoint against proceeding and long ago urged SyncPoint to dismiss. But SyncPoint gave Nintendo's warnings little consideration while ag-

gressively pursuing its case in the hope that pressure from excessive litigation costs might force a settlement. Now that those tactics have failed, SyncPoint wants Nintendo and PixArt to bear the costs of SyncPoint's own reckless and improper behavior. So, Nintendo respectfully requests that the Court either (1) deny outright SyncPoint's Request so that Nintendo and PixArt may move for summary judgment of invalidity and lack of standing, or (2) dismiss the case *with* prejudice and with an explicit finding that Nintendo and PixArt are the prevailing parties, entitled to their costs under Federal Rule of Civil Procedure 54 and entitled to seek their attorney fees under applicable law.

1. Facts

**1.1 This case was frivolous when filed.**

Within weeks of SyncPoint serving its complaint, Nintendo wrote to SyncPoint, providing technical details and describing why the accused device—the Wii—could not infringe the asserted patent.[1] As Nintendo pointed out, the asserted patent, U.S. Patent No. 6,275,214, required an "external cursor" that the Wii does not have.[2] Although this missing element would have been obvious from a simple pre-filing investigation of the Wii, Nintendo explicitly informed SyncPoint that the Wii did not have the required external cursor, and so, could not infringe the '214 patent.[3]

SyncPoint disregarded this information and aggressively pursued the case anyway, causing Nintendo to rack up huge costs and attorney fees. During the one year of active litigation, Nintendo, among other things, produced tens of thousands of documents including its closely held source code,

---

[1] Zeck Decl., Ex. A at 1-6 (4/14/2015 Letter from Kinsel to Pia).
[2] *Id*. at 4-6.
[3] *Id*. at 6.

sat for a week's worth of depositions in Japan, moved to transfer, responded to expedited discovery, sought a protective order, opposed a motion to compel, opposed a motion to amend, opposed a motion to file additional infringement contentions, and briefed and argued claim construction.

Ultimately, the Court's claim construction confirmed what Nintendo told SyncPoint long ago—the Wii cannot literally infringe because it does not have the required external cursor. Following the Court's claim-construction order, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[4] At the same time, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[5] In fact, in one of the last filings before the stay, Nintendo moved for leave to file a summary-judgment motion of no damages based on SyncPoint's waiver.[6]

Eventually, even SyncPoint saw the writing on the wall, but consistent with its bad-faith approach to this case, refused to do the right thing and dismiss Nintendo with no strings attached. In early January 2016, before the Court stayed this case, SyncPoint's counsel recognized that, in light of the Court's claim construction, the case had to be dismissed with prejudice. Thus, SyncPoint offered to dismiss Nintendo *with* prejudice, but only if Nintendo waived its prevailing-party rights. Having spent millions defending itself, Nintendo rejected SyncPoint's demand, and SyncPoint—even though it knew the case could no longer be maintained—refused to dismiss

---

[4] Zeck Decl., Ex. B ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
[5] *Id.*, Ex. C ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
[6] Dkt. 212.

Nintendo.[7]

**1.2 The bankruptcy proceedings—and SyncPoint's loss of the patent—resulted from Mr. Hansen's false statements to the New Hampshire bankruptcy court, not an "effective settlement."**

SyncPoint's Request suggests that PixArt purchased the patent in a settlement with SyncPoint. This is not accurate.

After SyncPoint waived its literal-infringement and damages claims against Nintendo and just months before the case was scheduled for trial, SyncPoint requested that the Court stay this case pending proceedings in the Bankruptcy Court in New Hampshire.[8] Before Nintendo could file its opposition to the requested stay, the Court granted SyncPoint's request and stayed the case, forcing Nintendo to delay its plans to seek summary judgment and its fees and costs.[9]

The bankruptcy proceedings arose out of a 2012 bankruptcy filing by Karl Hansen, SyncPoint's alter ego and the original owner of the '214 patent. In Mr. Hansen's 2012 bankruptcy filing, Mr. Hansen made false statements about the ownership and supposed value of the '214 patent (as well as several other patents he owned). For instance, in his bankruptcy proceeding, Mr. Hansen testified under oath to the trustee that he had no right to bring an infringement claim against anyone:

> Q. … And you don't have any basis to bring litigation against anyone for anything?
>
> A. No.[10]

---

[7] Zeck Decl., Ex. D (1/8/16 Letter from Kinsel to Pia).
[8] Dkt. 220 (filed Dec. 31, 2015) .
[9] Dkt. 233 (filed Jan. 7, 2016).
[10] *In re Karl C. and Lisa H. Hansen*, 12-11907-JMD ("Hansen BK"), Tr. of Meeting of the Creditors Pursuant to Section 341(a) of the Bankruptcy Code at 8:11–13, attached as Zeck Decl., Ex. E.



In September 2015, faced with ongoing discovery into his conduct in the bankruptcy case, Mr. Hansen decided to try to whitewash his bankruptcy file. To that end, Mr. Hansen reopened his 2012 bankruptcy and told the trustee—contrary to what he originally said under oath—that he might have the right to sue PixArt and Nintendo for patent infringement based on facts occurring before his 2012 bankruptcy. According to the trustee, "Debtors' counsel, Attorney Dahar, has recently brought to [the trustee's] attention that the Debtors may have rights to pursue patent infringement litigation against a third party, for actions that took place prior to the Debtors' chapter 7 filing."[13]

---

[11] Zeck Decl., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

[12] ▮▮▮▮▮▮▮▮

[13] Zeck Decl., Ex. G at ¶ 4 (Hansen BK, Ex Parte Motion for Order Reopening Case, Dkt. 26).

While Mr. Hansen tried to pass off his failure to disclose as mere inadvertence, the trustee disagreed. Instead, the trustee believed that Mr. Hansen misrepresented the facts surrounding his patents, and that the patents and any claims based on those patents belonged to the bankruptcy estate. According to the trustee, "at the Section 341 Meeting, Mr. Hansen testified that the Debtors had no basis to bring litigation, despite the fact the Debtors' claims against PixArt existed at the time of the Debtors' bankruptcy filing."[14] The trustee went on, "Mr. Hansen was involved in communications relating to potential litigation regarding the Assets in April 2012, just two months prior to the bankruptcy filing."[15]

Because the trustee was of the view that the '214 patent and any claim for infringement of that patent belonged to the estate, PixArt made an offer to the trustee to purchase the '214 patent for a fraction of the cost of defending the litigation in this Court. By so doing, if PixArt's offer were ultimately accepted and its purchase of the '214 patent consummated, SyncPoint would no longer have standing.[16] The trustee agreed to PixArt's offer and sought a court order to sell the '214 patent to PixArt to satisfy the bankruptcy creditors. Eventually, the bankruptcy court approved the trustee's sale.[17] The '214 patent was, thus, transferred to the trustee,[18] and then

---

[14] Zeck Decl., Ex. H at ¶ 17 (Hansen BK, Adversary Complaint, Dkt. # 57).
[15] *Id.* at ¶ 18.
[16] In fact, Mr. Hansen's assignment to SyncPoint was defective from the inception of this case, a fact that—as will be demonstrated in detail in Nintendo's fees motion—SyncPoint and its counsel attempted to cover-up by manufacturing evidence.
[17] Zeck Decl., Exs. I, J (Hansen BK, Dkts. 138, 139 (both date Apr. 25, 2017)).
[18] *See* Zeck Decl., Ex. K (Hansen Patent Assets Assignment).

to PixArt who owns the patent today.[19]

### 1.3 The '214 patent is also invalid.

In the meantime, while this case was stayed and before the sale to PixArt concluded, the PTO invalidated all of the asserted claims in the '214 patent. A third party filed an *ex parte* reexamination that ultimately resulted in cancellation of all of the claims of the patent,[20] and PixArt filed an IPR that resulted in cancellation of all claims except Claim 5.[21] The time to appeal these findings has expired. Thus, all of the asserted claims have been cancelled, and the patent is not enforceable—by anyone.

### 1.4 SyncPoint's Request for Dismissal improperly seeks dismissal without prejudice.

All of the parties recognize that this case must be dismissed because (1) SyncPoint abandoned its literal infringement and damages case against Nintendo, (2) SyncPoint no longer owns the patent, and (3) all of the asserted claims have been canceled. To that end, the parties exchanged proposed forms of dismissal. SyncPoint again proposed a dismissal *with* prejudice, but, just like its previous offer, SyncPoint's dismissal required the parties to bear their own attorney fees and costs.[22] SyncPoint's position was that because SyncPoint lost its patent in the bankruptcy court and because the patent was invalidated in the PTO, Nintendo and PixArt had not "prevailed" in this Court. Nintendo and PixArt pointed out that SyncPoint's position

---

[19] Zeck Decl., Ex. L (Trustee Bill of Sale).
[20] The reexamination concluded by way of a January 2017 Patent Office action, and the Reexamination Certificate issued May 15, 2017, attached as Zeck Decl., Ex. M.
[21] The Final Decision in the IPR issued on December 14, 2016. Excerpts from the Final Decision are attached as Zeck Decl., Ex. N.
[22] Zeck Decl., Ex. O (5/17/2017 Email from Pia to Kinsel attaching Proposed Request for Dismissal), Ex. P (Proposed Request for Dismissal).

was contrary to prevailing Federal Circuit authority including *Inland Steel Co. v. LTV Steel Co.*, which holds that even if a defendant initially prevails on issues of invalidity in a different forum, like the PTO, upon dismissal the defendant is still the prevailing party.[23] Thus, Nintendo and PixArt proposed a dismissal with prejudice and with an express finding that Nintendo and PixArt are the prevailing parties. Without further responding on the substance, SyncPoint filed its current Request walking away from its earlier recognition that dismissal must be with prejudice and falsely suggesting that the case was "moot" because one of the defendants "effectively settled."

2.  **Argument**

**2.1  The Court should deny SyncPoint's Request for Dismissal.**

SyncPoint's Request for Dismissal is *not* a Federal Rule of Civil Procedure 41(a)(1)(A)(ii) stipulated dismissal, despite SyncPoint's implication otherwise. Nintendo did not—and does not—stipulate to SyncPoint's dismissal request.

Because Rule 41(a)(1)(A)(ii) does not apply, the Court has discretion to deny SyncPoint's Request. The Court may deny a request to dismiss without prejudice where the dismissal would prejudice the defendant beyond exposure to a subsequent case. As Wright & Miller put it, a plaintiff's request to dismiss an action without prejudice should be denied if "the defendant will suffer some plain legal prejudice other than the mere presence of a second lawsuit."[24] The Fifth Circuit has recognized that prejudice occurs—and a Rule 41 request to dismiss should be denied—"when a party proposes to dismiss the case at a late stage of pretrial proceedings, or seeks to avoid an

---

[23] 364 F.3d 1318, 1320 (Fed. Cir. 2004).
[24] 9 Wright & Miller, Federal Practice & Procedure § 2364 (3d ed., Updated thru April 2017).

imminent adverse ruling."[25] A late-stage dismissal, especially where, as here, the plaintiff is simply hoping to avoid an adverse judgment, exposes the defendant to substantial prejudice because the defendant will have expended significant time and effort defending the case. The Fifth Circuit in *Hartford Accident & Indemnity Co. v. Costa Lines Cargo Servs., Inc.* described it this way: "Where the plaintiff does not seek dismissal until a late stage and the defendants have exerted significant time and effort, the district court may, in its discretion, refuse to grant a voluntary dismissal."[26]

The court's decision in *Freeny v. Apple Inc.* is illustrative.[27] In *Freeny*, Judge Bryson, sitting by designation in the Eastern District of Texas, rejected a plaintiff's request to dismiss without prejudice. There, the parties had engaged in substantial pretrial proceedings, including discovery disputes and claim construction. The plaintiff then filed a Rule 41 request for dismissal when it determined that the defendant discontinued making the accused product. Judge Bryson refused to dismiss the case without prejudice because to do so would have been prejudicial to the defendant, "at least absent a proviso under which the plaintiffs would agree to pay [the defendant's] attorney fees and expenses in this action."[28] In finding prejudice to the defendant, Judge Bryson also found it significant that the plaintiff could not explain why the dismissal should be without prejudice: "The absence of a satisfactory explanation for why a dismissal should be without prejudice has been identified in numerous cases as an important factor bearing on the

---

[25] *In re FEMA Trailer Formaldehyde Prods. Liability Litig.*, 628 F.3d 157, 162 (5th Cir. 2010).
[26] 903 F.2d 352, 360-61 (5th Cir. 1990) (citations omitted).
[27] 2014 WL 4954541, Case No. 13-cv-00361 (E. D. Tex. Oct. 1, 2014).
[28] *Id*. at *2.

court's decision whether to grant a motion to dismiss."[29]

Like the defendant in *Freeny*, Nintendo and PixArt face substantial prejudice if the case is dismissed without prejudice. Counting the stay, this case has been pending for about two years. When the Court entered the stay—which SyncPoint requested and Nintendo opposed—trial was less than five months away. Claim construction was complete. Fact discovery was complete. SyncPoint served its expert-witness reports. And Nintendo was preparing to move for summary judgment. By the time the Court entered its stay, the parties had spent millions of dollars in attorney fees and hundreds of thousands of dollars in costs, all on a case that was frivolous when originally filed.

Although dismissals for lack of standing are ordinarily without prejudice because of the possibility that the plaintiff may someday regain standing, that cannot happen here, mandating a dismissal with prejudice. The Federal Circuit has recognized that when a plaintiff cannot obtain standing, dismissal with prejudice is the appropriate remedy. As the Federal Circuit put it in *National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*: "[A] dismissal with prejudice is appropriate, especially where it [is] plainly unlikely that the plaintiff [will be] able to cure the standing problem."[30] SyncPoint was forced to transfer the '214 patent to the trustee, who then sold the patent to PixArt, a defendant in this litigation. It goes without saying that SyncPoint will not regain the patent. But, even if it did, the asserted claims have been found not patentable and cannot be enforced. So, the dis-

---

[29] *Id.*
[30] ___ Fed. App'x ___, Appeal No. 2015-1406, 2017 WL 360559, at *4 (quoting *Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004) (internal quotations omitted).

missal of SyncPoint's claims against Nintendo must necessarily be *with* prejudice for this additional, independent reason.[31]

Finally, aside from being prejudicial and inconsistent with the state of the case, SyncPoint's Request invites legal error. SyncPoint's Request seems to suggest that the *entire* case is moot, including Nintendo and PixArt's cost and fees requests. But even if a plaintiff's claims for patent infringement are "mooted" because the plaintiff no longer has standing to pursue its claims, courts can—and indeed must—retain jurisdiction to hear and decide issues of costs and fees. In *Highway Equip. Co., Inc. v. FECO, Ltd.*, the Federal Circuit found just that: "[A] claim for attorney fees under § 285 is independently within the district court's federal question jurisdiction…."[32]

In fact, the Federal Circuit has gone further and specifically held that it is error to dismiss a defendant's claim for section 285 fees at the same time as dismissing a plaintiff's claim for mootness. For instance, in *H.R. Techs., Inc. v. Astechnologies, Inc.*, the plaintiff believed it purchased the patent-in-suit and then asserted it against the defendant. But during discovery, facts came to light showing that the plaintiff had not successfully purchased the patent and so had no standing. The district court dismissed the entire case as moot, including the defendant's claim for section 285 fees. The Federal Circuit reversed because it was legal error to dismiss the defendant's fees motion simply because the plaintiff no longer had standing. "[I]t was legal error for the district court to dismiss [the section 285 claim] … [and so] we vacate the district court's order to the extent that it dismissed … the section

---

[31] *See, e.g., Inland Steel*, 364 F.3d 1318 (dismissal with prejudice following *ex parte* reexamination).

[32] 469 F.3d 1027, 1032–33 (Fed. Cir. 2006) (citations omitted).

285 claim for attorney fees."[33] *H.R. Techs.* mandates the result here: SyncPoint's claims must be dismissed with prejudice while the Court retains jurisdiction to hear Nintendo and PixArt's cost and fee requests.

## 2.2 The Court should find that Nintendo and PixArt are prevailing parties.

The Court, of course, has discretion to condition a dismissal on any "proper" terms.[34] Here, proper terms include that the dismissal is with prejudice, that Nintendo and PixArt's claims for attorney fees and costs remain pending, and that Nintendo and PixArt are the prevailing parties.

On this last point, the Federal Circuit has very clearly defined what it means for a party to be the "prevailing party." To be a prevailing party, the party must receive some relief on the merits of the case, even if the basis for some part of that relief is obtained in a forum outside of the court in which the case is pending. For example, in *Inland Steel Co. v. LTV Steel Co.*, the Federal Circuit reversed a district court's refusal to find that a defendant was the prevailing party where the court dismissed the plaintiff's case with prejudice following an *ex parte* reexamination.[35] In the district court's view, the defendant was not the prevailing party because the defendant obtained the basis for the dismissal from the PTO, and had not "won" the issue of invalidity before the district court. In reversing the district court, the Federal Circuit stated that once the court entered the dismissal with prejudice, the defendant was entitled to be found the prevailing party. The Federal Circuit described it this way: The dismissal with prejudice "is 'relief on the merits which alters … the legal relationship of the parties.'"[36] And even though the

---

[33] 275 F.3d 1378, 1386 (Fed. Cir. 2002).
[34] Fed. R. Civ. Proc. 41(a)(2).
[35] 364 F.3d 1318, 1321 (Fed. Cir. 2004).
[36] *Id.* at 1320 (citations omitted).

initial basis for this relief was obtained in the PTO and not the court, the defendant was still the prevailing party. According to the Federal Circuit, the defendant "is a prevailing party on a claim adjudicated by the district court, even though it initially prevailed on the issue of invalidity in a different forum."[37]

This case must be dismissed with prejudice on any number of grounds, including (1) SyncPoint's abandonment of its literal infringement and damages claims against Nintendo, (2) SyncPoint's lack of standing, and (3) the cancellation of the asserted claims. The mere fact that the basis for some of this relief—although by no measure *all* of the relief—was obtained in fora other than this court, does not diminish Nintendo and PixArt's role as the prevailing parties. Regardless of where ownership and validity were first determined, this case must be dismissed with prejudice, thereby "alter[ing] the legal relationship" between SyncPoint and Nintendo. In its most stark terms, SyncPoint and Mr. Hansen started this case demanding tens of millions of dollars from Nintendo. By the end, they got nothing, had to walk away from their literal infringement and damages case, lost their patent, had their patent invalidated, and now their case must be dismissed with prejudice against them. Nintendo and PixArt are the prevailing parties and any dismissal should explicitly recognize that fact.

## CONCLUSION

SyncPoint's Request for Dismissal would severely prejudice Nintendo and PixArt. Nintendo and PixArt have spent millions of dollars defending a case that never should have been filed, and which has been proven to be frivolous. Thus, SyncPoint's Request for Dismissal should be denied to allow

---

[37] *Id.*

Nintendo to move for judgment. In the alternative, if the Court, in its discretion, decides to dismiss this case, it should do so on the following terms: (1) the dismissal is with prejudice; (2) the Court retains jurisdiction to hear Nintendo and PixArt's cost and fee requests; and (3) Nintendo and PixArt are the prevailing parties.

                                                                 Respectfully submitted,

Dated: June 15, 2017               By:    /s/ *Grant Kinsel*
                                                    Grant Kinsel

                                              Grant Kinsel (lead attorney)
                                              CA Bar No. 172407
                                              Email: gkinsel@perkinscoie.com
                                              Kyle M. Amborn
                                              Wash. St. Bar No. 48340
                                              Email: kamborn@perkinscoie.com
                                              Kevin A. Zeck
                                              Wash. St. Bar No. 41689
                                              Email: kzeck@perkinscoie.com
                                              Perkins Coie LLP
                                              1201 Third Avenue, Suite 4900
                                              Seattle, WA 98101
                                              Tel: 206.359.3002
                                              Fax: 206.359.4002

                                              Clyde M. Siebman
                                              SIEBMAN, BURG, PHILIPS &
                                              SMITH, L.L.P.
                                              Federal Courthouse Square
                                              300 N. Travis Street
                                              Sherman, TX 75090
                                              Tel:   903.870.0070
                                              Fax:   903.870-0066
                                              email: Siebman@siebman.com

                                              Attorneys for NINTENDO CO., LTD.
                                              and NINTENDO OF AMERICA INC.

–15–

## **CERTIFICATE OF SERVICE**

I certify that all counsel of record who are deemed to have consented to electronic service are being served this June 15, 2017 with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3). Any other counsel of record will be served by facsimile transmission and/or first class mail.

/s/ *Grant Kinsel*
Grant Kinsel
