# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TEXAS

# MARSHALL DIVISION

| | |
|---|---|
| SYNCPOINT IMAGING, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NINTENDO OF AMERICA, INC., et al.<br><br>　　　　Defendants. | Civil Action No. 2:15-cv-00247-JRG-RSP |

**PIXART IMAGING, INC.'S JOINDER IN
NINTENDO'S MOTION FOR EXCEPTIONAL CASE ATTORNEY FEES
UNDER 35 U.S.C. § 285**

Defendant PixArt Imaging, Inc. ("PixArt") joins in Nintendo's Motion for Exceptional Case Attorney Fees Under 35 U.S.C. § 285 [Docket No. 290] ("Nintendo Motion") requesting the Court to declare the above-captioned case exceptional under 35 U.S.C. § 285, and asks the Court to grant PixArt's request for attorneys' fees and expenses against Plaintiff SyncPoint Imaging, LLC ("SyncPoint"), SyncPoint's sole owner, Mr. Karl Hansen, and SyncPoint's counsel of record, Pia Anderson Dorius Reynard & Moss. PixArt incorporates herein by reference the motions and corresponding memoranda of points and authorities submitted by Nintendo [Docket Nos. 290, 291], and supplements the Nintendo Motion with the following facts specific to PixArt's request.

## I.  INTRODUCTION

In February 2015, SyncPoint filed suit against PixArt and Nintendo and its related entities for infringement of U.S. Patent No. 6,275,214 (the "'214 Patent") arising out of the sale of Nintendo's Wii gaming system, but also suing PixArt for breach of an expired license agreement between it and Karl Hansen (sole owner of SyncPoint) and Brilliant Points (another Hansen entity), notwithstanding Mr. Hansen had previously asserted before the United States Bankruptcy Court for the District of New Hampshire that he had no claim against PixArt. SyncPoint dragged Defendants through a lengthy and costly legal battle for more than two years over demonstrably frivolous claims of infringement of the '214 patent, which was declared invalid in simultaneous reexamination and *inter partes* review proceedings, the latter instituted at the request of PixArt soon after the Complaint was filed. Even after this Court's claim construction [Dkt. No. 230] confirmed impossibility of infringement and after the '214 patent was declared invalid, SyncPoint refused to dismiss the case. It was only after SyncPoint was forced to give up ownership of the '214 patent and related patent assets to the bankruptcy estate of Karl and Lisa Hansen—resulting from Mr. Hansen's misrepresentations to the Bankruptcy Court—that SyncPoint agreed to dismiss the case. Even then, SyncPoint sought dismissal without prejudice and contended that it, not PixArt or Nintendo, was the prevailing party. SyncPoint's actions from start to finish, along with the litigation misconduct of SyncPoint and its counsel as

1

described by Nintendo in its motion, render this case exceptional, and PixArt joins with Nintendo in seeking recovery of attorneys' fees and expenses.

## II. LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An exceptional case under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

The circumstances a court should consider include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6. An award of attorneys' fees is appropriate when the plaintiff has "no objectively reasonable basis to contend that [the accused products] infringed." *Lugus IP, LLC v. Volvo Car Corp.*, No. 12-2906 JEI/JS, 2015 WL 1399175, at *6 (D.N.J. Mar.26, 2015), appeal dismissed Mar. 16, 2016).

## III. ADDITIONAL LITIGATION MISCONDUCT BY SYNCPOINT DIRECTED TOWARD PIXART

### A. SyncPoint Filed This Litigation Notwithstanding Hansen's Prior Acknowledgements of No Infringement and No Cause of Action Against PixArt

From the moment SyncPoint filed its complaint against PixArt and Nintendo, it engaged in litigation that it knew was frivolous. Less than three years earlier, on June 11, 2012, SyncPoint's owner, Karl Hansen, filed a Chapter 7 Voluntary Petition for Bankruptcy with the New Hampshire Bankruptcy Court. Case No. 12-11907-BAH, U.S. Bankruptcy Court, D.N.H. In his Voluntary Petition, Hansen stated under oath that his patents, including the '214 patent, had $0 value. Declaration of Duane H. Mathiowetz in Support of PixArt Imaging, Inc.'s Joinder ("Mathiowetz Decl."), Exh. 1. Hansen reasserted the worthlessness of his patents by testifying in the Section 341 Meeting of Creditors on July 16, 2012, that the patents had no value.

2

Mathiowetz Decl., Exh. 2. Hansen disclosed to the Bankruptcy Court and trustee that he had licensed his '214 patent to PixArt, but testified at the Meeting of Creditors that he had no claims against anyone, including PixArt. *Id.* at 6-8. As a result of Hansen's representations, the Bankruptcy Court entered an Order of Discharge on December 15, 2012, allowing Hansen to keep his worthless patents.

SyncPoint's allegations of infringement against Nintendo and PixArt, and for breach of contract against PixArt related to its sales of CMOS devices incorporated into the Wii system, are antithetical to the representations made by its alter ego Hansen in the bankruptcy proceeding. Hansen knew when he made his statements in the bankruptcy proceeding that PixArt was selling its CMOS devices to Nintendo and that such sales were not covered by the license agreement. Moreover, Hansen's representations were not limited to just those made in bankruptcy. As set forth in detail in the Nintendo Motion, Hansen knew for almost a decade prior to forming SyncPoint and filing the Complaint—and confirmed multiple times—that Nintendo's product, the Wii, did not use his technology. Nintendo Motion at 2-5. Thus, when SyncPoint alleged in its Complaint that PixArt breached its license agreement with Hansen because it sold CMOS devices to Nintendo that were used in the Wii system to infringe the '214 patent, SyncPoint knew it was not so. Nonetheless, it forced PixArt and Nintendo to spend millions of dollars to defend themselves against clearly false and contrived allegations.

On its own accord, SyncPoint expanded the litigation when it reopened the Chapter 7 bankruptcy in September 2015. Hansen and his counsel apparently sought to reopen the bankruptcy out of concern that Hansen and SyncPoint might not be entitled to the tens or hundreds of millions of dollars SyncPoint was seeking against Nintendo and PixArt in this litigation, in view of the statements Hansen had made to the Bankruptcy Court and the trustee for the bankruptcy estate back in 2012. The basis for re-opening the Hansen bankruptcy was described by the U.S. Trustee in its motion of September 2, 2015 to reopen the bankruptcy:

> 4. Debtors' counsel, Attorney Dahar, has recently brought to [trustee's] attention that the Debtors may have rights to pursue patent infringement litigation against a third party, for actions that took place prior to the Debtors' chapter 7 filing.[1]

3

      5. The United States Trustee alleges that the rights to bring patent infringement action may be property of the estate that should be pursued by the Debtors' chapter 7 trustee. Accordingly, the United States Trustee respectfully requests that the Court reopen the Debtors' bankruptcy case pursuant to 11 U.S.C. § 350 and find that the appointment of a chapter 7 trustee "is necessary to protect the interests of creditors and the debtor or to ensure efficient administration of the case." By reopening the case and authorizing the appointment of a chapter 7 trustee, the trustee may bring the matters before the Court for determination, and if it is determined that the action is property of the estate, to pursue said litigation in the name of the Debtors, and protect the estate's rights therein. See Fed. R. Bankr. P. 5010.

      6. The United States Trustee understands the Debtors consent to reopening this case and that upon reopening, they will file an amendment to disclose the potential patent <u>infringement claims.</u>

[1]The Debtors' schedules refer to three U.S. patents that appear to be associated with company named Brilliant Consulting Service, valued at $0. The Debtors also schedule "1 individual owned patent pending" valued at $0. The Debtors claimed a $0 exemption in Brilliant Consulting Service. *See* Schedules B,C.

Mathiowetz Decl., Exh. 3.

The Hansen bankruptcy was reopened on September 3, 2015 at the request of counsel for Hansen.[1] Notwithstanding the fact that ownership of the patent-in-suit was at issue in the re-opened bankruptcy proceeding, SyncPoint and its attorneys failed to advise this Court or the Defendants of Hansen's request to reopen the bankruptcy.[2] Upon learning that the bankruptcy had been reopened and seeing an opportunity to end the frivolous claims, PixArt contacted the bankruptcy trustee and offered to purchase the patent assets, which the trustee now asserted

---

[1] In a pre-hearing brief submitted to the Bankruptcy Court, SyncPoint alleged that "[i]n a deliberate strategy to avoid being found liable for the $28 million in royalties due under the License Agreement, PixArt is believed to have informed the Chapter 7 Trustee ("Trustee") in this bankruptcy proceeding of the Texas Litigation. Upon learning of the Texas Litigation, the Trustee subsequently moved this Court *ex parte* to reopen the bankruptcy, which it did on September 3, 2015." Mathiowetz Decl., Exh. 4 at 2-3. The evidence demonstrates SyncPoint, not PixArt, sought to have the trustee reopen the bankruptcy proceeding. SyncPoint, an alter ego of Hansen, through its counsel, thus continued to mislead the Bankruptcy Court in pursuit of this frivolous litigation.

[2] Furthermore, notwithstanding Hansen had requested that the bankruptcy proceeding be re-opened and that it was reopened on September 3, 2015, SyncPoint did not advise the PTAB of the fact that ownership of the patent had been put at issue by Hansen, when SyncPoint filed the Patent Owner Preliminary Response to Petition for *Inter Partes* Review of U.S. Patent No. 6,275,214 on September 18, 2015, apparently intent on keeping PixArt, the Petitioner in the IPR, and the PTAB in the dark as to the ownership issue.

4

belonged to the bankruptcy estate. The trustee was understandably troubled by Hansen's apparent deception in 2012.

On December 22, 2015, the Chapter 7 trustee entered into a Purchase and Sale Agreement with PixArt pursuant to which the Trustee would, subject to Bankruptcy Court approval and absent a higher price at auction, sell the patents and all rights associated therewith to PixArt.[3] In its motion for authority to sell the patent assets, the Chapter 7 trustee advised the Bankruptcy Court as follows:

> 7. On or about September 1, 2015, Debtors' counsel contacted the Trustee and disclosed certain pending litigation relating to a patent formerly owned by Mr. Hansen and currently owned by SyncPoint Imaging, LLC, ("SyncPoint"). Karl Hansen in [sic] the sole member owner of SyncPoint.
>
> 8. After the filing of the bankruptcy petition, Mr. Hansen transferred his interest in some of the Assets to SyncPoint, and SyncPoint commenced litigation against Nintendo Co. and PixArt Imaging, Inc., case no. 2:15-cv-247, District Court for the Eastern District of Texas, Marshall Division, alleging breach of licensing agreement and patent infringement.
>
> 9. Because the Debtors failed to properly disclose their interest in the Assets in their Schedules and Section 341 Meeting, Mr. Hansen's transfer of some of the Assets to SyncPoint is invalid, and the Assets are all property of the bankruptcy estate.

Mathiowetz Decl., Exh. 5.

SyncPoint opposed the sale, and the Bankruptcy Court initially denied the trustee's motion to sell, without prejudice, on the grounds that the attempted sale failed to meet the procedural standards set forth in Bankruptcy Code § 363.13. The trustee was forced to file an adversary proceeding within the Chapter 7 bankruptcy court proceeding to establish ownership of the patent assets. A.P. No. 16-1010. In its Complaint, the trustee noted that Hansen testified in the present District Court litigation that he believed that the patents he owned had value <u>at the time of his bankruptcy filing</u>, which was contrary to his testimony earlier in the bankruptcy case. Mathiowetz Decl., Exh. 6.

---

[3] The "patent assets" were defined as the domestic and foreign patents identified as **US6275214B1**, US6952198B2, US7091949B2, EP1200955B1, DE60023900T2, CA2378154C, JP2003504705A (JP4822643B2), AU200057549A, and all rights associated with such patents.

5

SyncPoint responded by filing its own adversary proceeding, A.P. No. 16-1045, seeking to have the trustee removed from the bankruptcy proceeding for purportedly acting outside her authority by offering to sell the patent assets to PixArt. The competing adversary proceedings were resolved when SyncPoint and Hansen and the Chapter 7 trustee stipulated that the Bankruptcy Court would have final say on the disposition of the assets. The <u>trustee</u> would sell the assets to PixArt, or the trustee would accept what was deemed a "qualifying counterbid" by SyncPoint whereby SyncPoint would pursue the District Court litigation and use proceeds therefrom to pay unsecured claims and the trustee's administrative expenses. Mathiowetz Decl., Exh. 7. Inherent to the Stipulation was an acknowledgement by SyncPoint that ownership of the assets rested in the Chapter 7 trustee, not with SyncPoint. SyncPoint made no effort to submit a counterbid to secure ownership of the assets, forcing PixArt to litigate the matter before the Bankruptcy Court.

After a full-day hearing on April 12, 2017, the Bankruptcy Court decided that it was in the best interest of the bankruptcy estate for the Bankruptcy Court to authorize the sale of the assets by the Chapter 7 trustee to PixArt, and the sale was consummated shortly thereafter. Mathiowetz Decl., Exh. 8. SyncPoint and Hansen formally assigned the patent assets to the Chapter 7 trustee, who in turn assigned the rights to PixArt. Only then did SyncPoint abandon its meritless claims and agree to seek dismissal.

> **B.** **SyncPoint Unnecessarily Multiplied the Litigation by Refusing to Arbitrate the Claims Against PixArt**

SyncPoint alleged in its complaint that PixArt breached a 2008 license agreement entered into by Brilliant Points (a company owned by Hansen) and PixArt. The license agreement gave PixArt a non-exclusive license to several patents and pending applications, including the '214 patent asserted in this case. The Agreement defined a "Licensed Product" to be any product or part thereof containing a CMOS sensor that "[a]bsent the license granted hereunder, would infringe one or more clams of the Licensed Patents." The license agreement, drafted by Hansen, contained an arbitration clause that reads as follows:

6

> Any dispute between INVENTOR or AGENT and COMPANY concerning the amount of royalties payable to AGENT under this AGREEMENT shall be submitted for binding arbitration in accordance with the provisions of this Section 10 and the then-applicable rules of the American Arbitration Association (the "Association"). Judgment upon the arbitration award may be entered in any court of competent jurisdiction.

The license agreement included a "survival" clause, providing that the provisions of the agreement, including arbitration, would survive the expiration of the agreement.

On May 14, 2015, PixArt served SyncPoint with an arbitration demand. On May 26, 2015, SyncPoint rejected the demand, arguing that the present dispute was not subject to the arbitration clause, and saying that it would only participate in nonbinding arbitration or mediation. PixArt thereafter moved to compel arbitration and to stay the present litigation pending arbitration. [Docket Nos. 46, 44]. SyncPoint opposed the motions. [Docket No. 70].

The Court initially denied PixArt's motions. PixArt moved for reconsideration [Docket No. 106], and SyncPoint again opposed. [Docket No. 127]. The Court heard argument on the motions (at the conclusion of the Claim Construction hearing) on October 30, 2015. When questioned by the Court why the amount of royalties arising from the license agreement would not be subject to the arbitration clause, SyncPoint's counsel was forced to admit that damages being sought by way of its infringement claim might be the same royalties sought by its breach of contract claim, effectively repudiating SyncPoint's basis for opposing arbitration in the first place. Mathiowetz Decl., Exh. 9 (Hearing Tr. At 101-103).

Notwithstanding SyncPoint's refusal to arbitrate its dispute with PixArt when the demand was made, and after forcing Defendants to engage in costly discovery and claim construction proceedings, SyncPoint advised the Bankruptcy Court prior to the April 14, 2017 hearing that the claim against PixArt should be arbitrated: "In light of the invalidation of the patent claims of the '214 patent, which effectively moots SyncPoint's patent infringement claims, SyncPoint concedes that the remaining royalty dispute with PixArt must be resolved through binding arbitration as required by § 10 of the License Agreement." Once again, SyncPoint had no

7

compunction about taking opposite positions before this Court and the Bankruptcy Court, demonstrating continued bad faith in pursuing this litigation.

      **C.    SyncPoint Unreasonably Refused to Dismiss the Action Against PixArt Following Claim Construction**.

The Court held a claim construction hearing on October 30, 2015, at which time it substantially adopted Defendants' proposed constructions, in particular as to "external cursor," which unquestionably precluded infringement. The Court's subsequent Memorandum and Order rejected SyncPoint's "invisible" cursor theory as wholly inconsistent with the plain meaning and unsupported by lexicography and disavowal. [Docket No. 230 at 20-21].

Pursuant to the Court's Docket Control Order, the parties participated in mediation on November 24, 2015, but failed to reach settlement. At and subsequent to the mediation, PixArt offered a walk-away settlement, both sides bearing their own fees and costs, if SyncPoint would immediately dismiss the case with prejudice. Mathiowetz Decl., Exh. 10. SyncPoint refused, setting the stage for the proceedings before the Bankruptcy Court that ultimately resulted in the forced assignment by SyncPoint of its patent assets and all rights associated therewith to the bankruptcy estate. The trustee thereafter sold the assets to PixArt, which led to the dismissal with prejudice.

**IV.    THE COURT SHOULD AWARD PIXART ITS ATTORNEYS' FEES AND EXPENSES**

By this joinder in the Nintendo Motion, PixArt requests the Court to award PixArt its fees[4] and expenses, the amounts of which will be provided by PixArt (along with supporting documentation) upon the Court's finding that the case is exceptional or when ordered to submit them by the Court. Such fees and costs should include those related to PixArt's filing of the IPR.

---

[4] When a court finds that a case is exceptional, it can award the prevailing party both its attorney fees and expenses incurred in litigating the case. *Sorkin v. Universal Bldg. Products Inc.,* No. 1:08-cv-133, 2010 WL 519742, at *6 (E.D. Tex. Feb. 9, 2010) (awarding costs in addition to attorneys' fees after finding case exceptional under section 285). Through this motion, PixArt seeks both its attorneys' fees and expenses, but has used the term "attorneys" fees as a shorthand reference to both.

*See MyHealth, Inc. v. ALR Technologies, Inc.*, Case No. 2:16-cv-00535-RWS-RSP (Lead), 2017 WL 6512221 at *6 (E.D. Tex. Dec. 19, 2017)(awarding attorneys' fees, including fees for IPR because "defendants never would have sought IPR if they had not been sued for allegedly infringing the [] patent").

## V. CONCLUSION

SyncPoint and its counsel filed this case notwithstanding Karl Hansen's understanding and belief that he had no infringement case against Defendants and had no action for breach of contract against PixArt. The actions by SyncPoint and its counsel, as described in detail above and in Nintendo's motion, make this case stand out from the typical patent infringement case "with respect to the substantive strength of [SyncPoint's] litigating position (considering both the governing law and the facts of the case)" and "the unreasonable manner in which the case was litigated," more than satisfying the standard set forth in *Octane Fitness*. Accordingly, the Court should find this case exceptional under 35 U.S.C. § 285 and award Defendants their fees and costs.

Dated:  February 23, 2018　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　　　*/s/ Duane H. Mathiowetz*

　　　　　　　　　　　　　　　　　　　　　　Duane H. Mathiowetz (CA Bar No. 111831)
　　　　　　　　　　　　　　　　　　　　　　　 *(admitted in the E.D. Texas)*
　　　　　　　　　　　　　　　　　　　　　　Rick C. Chang (CA Bar No. 209515)
　　　　　　　　　　　　　　　　　　　　　　　 *(admitted in the E.D. Texas)*
　　　　　　　　　　　　　　　　　　　　　　FOLEY & LARDNER LLP
　　　　　　　　　　　　　　　　　　　　　　555 California Street, Suite 1700
　　　　　　　　　　　　　　　　　　　　　　San Francisco, CA 94104
　　　　　　　　　　　　　　　　　　　　　　Tel:　 (415) 434-4484
　　　　　　　　　　　　　　　　　　　　　　Fax:　 (415) 434-4507
　　　　　　　　　　　　　　　　　　　　　　dmathiowetz@foley.com
　　　　　　　　　　　　　　　　　　　　　　rchang@foley.com

　　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　　　　　　PIXART IMAGING, INC.

## CERTIFICATE OF CONFERENCE

I certify that counsel for Defendant PixArt Imaging, Inc. ("PixArt") complied with the meet and confer requirement in Local Rule CV-7(h), and that the foregoing motion is opposed by Plaintiff SyncPoint Imaging, LLC.  The motion is not opposed by Nintendo.

*/s/ Duane H. Mathiowetz*
Duane H. Mathiowetz

## **CERTIFICATE OF SERVICE**

On February 23, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                                  */s/ Nancy Li*
                                                  Nancy Li

4853-1265-5710.3