IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SYNCPOINT IMAGING, LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 2:15-CV-00247-JRG-RSP |
| NINTENDO OF AMERICA INC., ET AL; | § § | |
| *Defendants*. | § § § | |

## MEMORANDUM OPINION AND ORDER

On September 5, 2018, Karl Hansen and his attorney Joseph G. Pia appeared before the Court in response to an order to show cause why sanctions should not be imposed under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, or the Court's inherent powers. Pia included certain statements shown to be materially untruthful in the August 10, 2015 declaration prepared for Hansen and relied upon in Plaintiff's memorandum in opposition to Nintendo's venue motion. [Dkt. No. 363]. After considering Pia's response to the show cause order [Dkt. No. 366], arguments presented at the June 14, 2018 hearing on Nintendo's Motion for Exceptional Case Attorney Fees Under 35 U.S.C. § 285 [Dkt. No. 290], and the arguments presented at the September 5, 2018 show-cause hearing, the Court now makes the following findings.

### BACKGROUND

Hansen was granted United States Patent No. 6,275,214 in August 2001. After spending a considerable amount of time evaluating the Wii product, Hansen concluded that the '214 patent covered the Wii. Hr'g Tr. 104:19-107:20, [Dkt. No. 354]. Hansen and one of the defendants,

PixArt, entered into a license that included rights to practice the '214 patent in 2008. [Dkt. No. 1], ¶ 37. The license lasted four years until PixArt decided not to renew it in 2012. *Id.* at ¶ 40.

In November 2014, Hansen formed SyncPoint Imaging, LLC with the assistance of Pia, and assigned to SyncPoint the right to enforce the '214 patent [Dkt. No. 290], pp. 9-10. SyncPoint then leased an office in Plano. Rent for the office was $250 per month, and clients of Pia's firm had been leasing the same office for years. Hr'g Tr. 94:6-10, [Dkt. No. 354]. The office contained a computer, a server, some back-up drives, an uninterrupted power supply, a printer, and other basic office supplies, prototypes, business records, and books. *Id.* 92:13-18.

SyncPoint sued Defendants on February 20, 2015, alleging infringement of the '214 patent [Dkt. No. 1]. SyncPoint was represented by Pia. *Id.* In its complaint, SyncPoint alleged that it was a Texas limited liability company with its principal place of business in the Eastern District of Texas. *Id.* at ¶ 1. SyncPoint alleged that venue was proper in this district because Defendants infringed SyncPoint's patent rights within the Eastern District of Texas. *Id.* at ¶ 21.

In July 2015, Nintentdo moved to transfer the suit to the Western District of Washington under 28 U.S.C. § 1404(a). [Dkt. No. 97]. SyncPoint responded to the venue motion by emphasizing, *inter alia*, its ties to Texas. *See* [ Dkt. No. 133], p. 5. In support of its response [Dkt. No. 113] and its sur-reply [Dkt. No. 133], SyncPoint cited a declaration from Hansen. *See* [Dkt. No. 116]; [Dkt. No. 290-28]. Hansen's declaration, signed August 10, 2015 under penalty of perjury, indicated:

> 61. SyncPoint employs several consultants to conduct business at SyncPoint's Texas office, including Texas residents Ryan Thomas, Dale Buechele, Dave Vance, and Edwin Bland, who performed a variety of services as needed.

[Dkt. No. 116], ¶ 61 ("Paragraph 61").

During discovery, Nintendo subpoenaed an ISP for records concerning "Brilliant Points." Brilliant Points was the entity through which Hansen had entered into a licensing agreement with PixArt. Among the records produced by the ISP was a February 20, 2015 email from Hansen. [Dkt. No. 290], p. 15. This email was sent two days before the filing of this lawsuit and six months before Hansen's August 2015 declaration discussing one of SyncPoint's alleged consultants – Ryan Thomas, a full-time suburban dentist and family friend from the Dallas area, Hr'g Tr. 46:22-25, [Dkt. No. 354]. The email from Hansen described the job responsibilities of a "consultant:"

> Hi Ryan, […] For helping us, basically just pick up any mail at the office every couple weeks or so, and check to make sure the computer is running and is on the network. You can check the computer both remotely (i.e. can you access it from your house) and at the office (is it able to connect to the internet). […] The key is to give you the ability to honestly say you are doing work for SyncPoint Imaging, even if it seems trivial, because it is an essential part of keeping the office up and running. Because you are established in Texas, combined with me having been born in Texas and having worked there several times, it makes it very difficult for any parties in the lawsuit to try to change venue to some other more favorable-to-them district. […] Best regards, Karl

[Dkt. No. 290-34]. Apparently, Dr. Thomas declined the offer. At the June 14, 2018 hearing, Hansen testified that Dr. Thomas "came to the office a couple of times, and then in a subsequent email, he said that he didn't think he was going to be able to do it." Hr'g Tr. 47:14-16, [Dkt. No. 354].

The ISP also produced an April 2015 email exchange with Hansen. [Dkt. No. 290], p. 14. This April 2015 email was sent four months before Hansen's August 2015 declaration discussing one of SyncPoint's consultant: Edwin Bland. Although Hansen's declaration represented to the Court that Bland was a SyncPoint consultant, Bland's email indicates that he was not a consultant:

> Hi Edwin, […] Hey, I'm looking for someone who can drop by the office for SyncPoint Imaging when we are not in town and pick up any mail and make sure the server is running. I thought you might

3

> be interested. The guy I had doing it won't be available after the end of April. It doesn't involve much, part time, swinging by the office maybe once per week and checking the server and picking up any mail. Either me or one of my boys (or all of us sometimes) will be in Dallas periodically and we would meet you for lunch or wherever and get any accumulated mail. The pay is not much until the lawsuit with Nintentdo settles out […]. Best, Karl
>
> ***
>
> Hi, Karl, […] I've taken a look at the office location. I won't be able to help you this time. It's considerably outside of my normal commute & I believe I'd likely get stuck in traffic trying to drive up to it. I also have a PO Box for our rental business. … It's only 4 miles from my home … but it's a big pain in the back side to remember to pick up the mail … even once or twice a month. I hope all goes well with the lawsuit for you.

[Dkt. No. 290-33], pp. 2-3.

Hansen's testimony at the June 14, 2018 hearing revealed the outcome for the remaining two alleged SyncPoint consultants. As to Buechele, Hansen stated that he did not know if he "ever came to the office." Hr'g Tr. 48:5-8, [Dkt. No. 354]. As to Vance, he may have been the only alleged consultant to visit the SyncPoint office. *Id.* at 49:16-50:3.

This case was dismissed before Nintendo's venue motion was ever decided, and thus the Court did not ultimately rely on Hansen's declaration. The scheduling order in this case was entered in May 2015, the venue motion was filed in July and was briefed through September. However, the case was stayed in January 2016 due to Hansen's bankruptcy proceedings. [Dkt. No. 233]. The bankruptcy became final two years after the stay was entered, with PixArt emerging as the buyer of the '214 patent. The only remaining question for the parties at that time was dismissal. Dismissal with prejudice gave Defendants the "prevailing party" status and option to pursue a claim for attorneys' fees. [Dkt. No. 279]; [Dkt. No. 283]. Defendants filed a motion requesting the Court to find this case exceptional, to award attorneys' fees to Nintendo, and to join Hansen

4

and Pia's law firm as third-party defendants responsible for paying the attorneys' fees [Dkt. No. 290].

While the Court did not find the merits of SyncPoint's suit frivolous nor the case exceptional, the Court expressed concerns with Paragraph 61 of Hansen's declaration:

> Most troubling is the part of the declaration about SyncPoint's consultants. There is no way around the conclusion that there really were no consultants. At best, only one of the four people identified in Hansen's declaration (Vance) ever even visited SyncPoint's office. In the words of Hansen's own email, the point was simply to make it "very difficult for any parties in the lawsuit to try to change venue to some other more favorable-to-them district." ECF No. 290-34. SyncPoint's office in Plano would have carried little weight in the transfer analysis, given its recent origin and very limited contents, but for the claim that SyncPoint employed various consultants at that office. Not only did Hansen's declaration include these misrepresentations, SyncPoint continued to rely on the declaration well after it was called into question. In the very first sentence of the sur-reply to the venue motion, for example, SyncPoint stated that "Nintendo has ignored and failed to contradict Mr. Hansen's declaration establishing the legitimate business purposes for SyncPoint's incorporation and office set-up in Plano." ECF No. 133 at 1.

[Dkt. No. 362], p. 17. The Court therefore ordered Pia and Hansen to show cause why appropriate sanctions should be not be imposed under Rule 11, 28 U.S.C. § 1927, or the inherent power of the Court. [Dkt. No. 363].

At the September 5, 2018 show cause hearing, Hansen candidly testified "I didn't know what matters in a venue. To me if I - - if I hire an office temp and have them come in, I am employing them as a person to get the mail. If I hire - - if I hire an IT guy to come in and check on the server, you know, I'm doing that. […] Those don't matter for venue, I didn't think." Hr'g Tr. 21:16-23, [Dkt. No. 369]. Pia represented to the Court: "I did not talk to Mr. Hansen directly about his declaration and did not go paragraph by paragraph with Mr. Hansen. […] I could have been more thorough. Certainly, I could have talked to Mr. Hansen about that paragraph myself, and I

5

did not do that." *Id.* at 8:8-20. Instead, Pia employed a contract attorney to draft the venue motion. *See* [Dkt. No. 366], p. 12. At the September 5th hearing, Pia admitted that he still did not know the alleged SyncPoint consultants. Hr'g Tr. [Dkt. No. 369], 8:21-9:1.

## DISCUSSION

There are at least three sources on which the Court could rely to impose sanctions in this suit: Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent powers.

Under Rule 11, attorneys have a responsibility to conduct a reasonable inquiry into the facts and law of a case when they affix their signature on any papers filed with the court. Fed. R. Civ. P. 11(b); *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001). By signing and filing those papers with the Court, attorneys certify that to the best of their knowledge that the allegations and factual contentions submitted to the Court have evidentiary support. Fed. R. Civ. P. 11(b)(3). Rule 11 is designed to "reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of attorneys and reinforcing those obligations through the imposition of sanctions." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 870 (5th Cir. 1988) (*en banc*).

When certain Rule 11 sanctions may not be available, the Court may look to statutory authority to impose appropriate sanctions.[1] 28 U.S.C. § 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The statute requires that "there be evidence of bad faith, improper motive, or

---

[1] The Advisory Committee's notes to the 1993 amendments to Rule 11 are instructive in this regard: "Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards. It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927. *See Chambers v. NASCO*, 501 U.S. 31 (1991)."

6

reckless disregard of the duty owed to the court." *Clark v. Mortensen*, 93 Fed. Appx. 643, 650 (5th Cir. 2004). Here, the Court has already found that there was no improper conduct other than the declaration discussed above, and SyncPoint's venue misrepresentations were not themselves the of Defendants' substantial attorneys' fees. *See* [Dkt. No. 362], pp. 17-18. Therefore, the Court finds it inappropriate to impose sanctions under § 1927.

Even if relief is not available under Rule 11 or § 1927, the Supreme Court has recognized that federal courts have the inherent power to impose attorneys' fees as a sanction for bad faith litigation conduct. *Chambers*, 501 U.S. at 47–48; *see also Batson v. Neal Spelce Assoc.*, 805 F.2d 546, 550 (5th Cir. 1986) ("[F]ederal courts possess inherent power to assess attorney's fees and litigation costs when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.") (internal quotation marks omitted). Before awarding attorneys' fees, a court must make specific findings as to the frivolousness of the suit. *See Crenshaw v. General Dynamics Corp.*, 940 F.2d 5, 129 (5th Cir.1991). Here, the Court has already found this suit was not frivolous. [Dkt. No. 362], p. 15. Thus, sanctions should not be imposed under the Court's inherent power.

Accordingly, the best standard to consider regarding sanctions in this matter is Rule 11.

### *Rule 11 was Violated in This Case*

Sanctions may be imposed when an attorney, firm, or party makes factual contentions without evidentiary support. Fed. R. Civ. P. 11(c)(1). In assessing whether a represented party and counsel made a reasonable factual inquiry into the basis of a filing, the Court considers a number of factors, including: (1) the time available to counsel for investigation; (2) the extent to which counsel relied on his client for the factual support of the allegations; (3) the feasibility of prefiling investigation; (4) the complexity of the factual and legal issues; and (5) the extent to which the

7

development of factual circumstances underlying the claim required discovery. *Smith v. Our Lady of the Lake Hospital, Inc.*, 960 F.2d 439, 444 (5th Cir. 1992); *Thomas*, 836 F.2d at 873.

Here, representations about the alleged SyncPoint consultants were made in Paragraph 61 of Hansen's declaration, which was submitted in response to Nintendo's venue motion. Nintendo's venue motion was brought under 28 U.S.C. § 1404(a). Since "the availability of compulsory process to secure the attendance of witnesses" is a key factor in a § 1404(a) analysis, *see In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008), the discussion of four potential witnesses – the SyncPoint consultants – in Paragraph 61 is a critical factual allegation.

Paragraph 61 is also a factual allegation that indisputably lacks evidentiary support. Two of the four nominal consultants had already declined to be involved with SyncPoint by the time the declaration was signed. Of the two remaining consultants, one had at most visited the SyncPoint office. Even if Dr. Thomas, Buechele, Vance, and Bland all agreed to visit SyncPoint's office, Hansen's email to Dr. Thomas indicates that the only "business" the alleged consultants were asked to conduct was picking up mail and making sure the server was still running. The declaration clearly implies that these four consultants conducted the business of SyncPoint and should thus be considered as potential witnesses. The email to Dr. Thomas is particularly concerning, as it makes clear that Hansen's request was made solely to support venue, not to conduct SyncPoint's business.

The Court finds that this email is necessarily the fault of Hansen's attorney – Pia – not Hansen. Hansen's email reflects what his lawyers must have told him to provide, since Hansen candidly admitted at the September 5, 2018 show cause hearing that he "didn't know what matters in a venue." Hr'g Tr. 21:16-23, [Dkt. No. 369].

Similarly, Paragraph 61 is also attributable to counsel. Pia admitted that he did not review Hansen's declaration and never verified whether Dr. Thomas, Buechele, Vance, or Bland were truly SyncPoint consultants. This is especially troubling given that Pia had sufficient time to conduct a prefiling investigation into relatively straightforward factual contentions. In the month Pia took respond to Nintendo's venue motion, Pia never investigated these venue facts. In fact, nearly three years later, the alleged consultants are still not known to Pia. While Pia advised the Court that he relied on a contract attorney to draft SyncPoint's response to Nintendo's venue motion, there has been no showing that the contract attorney was responsible for the misrepresentations in Paragraph 61, which was, in any event, made under Pia's signature.[2] Thus, there is simply no excuse for Pia's failure to make a reasonable inquiry into these critical factual representations. Pia violated Rule 11.

As to Hansen, however, the Court finds that he is not jointly responsible for the false allegations in this matter. Rule 11(c)(1) authorizes the Court to impose sanctions on Pia, as the violating attorney, and on Hansen, as the party potentially responsible for the violation. A client is responsible for a Rule 11 violation if the client "know[s] that the filing and signing [of a pleading, motion, or other paper] is wrongful." *In re Motion for Sanctions Against Meyers*, No. 4:12-MC-015-A, 2014 WL 1494099, at *8 (N.D. Tex. Apr. 16, 2014), *supplemented*, No. 4:12-MC-015-A, 2014 WL 1910621 (N.D. Tex. May 9, 2014) (citing *Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp.*, 854 F.2d 1452, 1475 (2d Cir.1988) *rev'd in part sub nom Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989)). In appropriate instances, the Fifth Circuit has held both the attorney and client jointly and severally liable. *See Jennings v. Joshua Indep. School Dist.*, 948 F.2d 194, 196 (5th Cir. 1991). Here, Hansen's testimony makes clear that he was not aware

---

[2] The contract attorney's signature is not affixed to any of SyncPoint's venue responses.

of the importance of Paragraph 61 and the need for precision in its wording. Therefore, sanctions against Hansen are inappropriate.

*Sanctions Against Joseph Pia are Appropriate*

Because Pia violated Rule 11(b)(3), the Court now examines what sanctions are appropriate. *See Jennings*, 948 F.2d at 197 (citing *Business Guides, Inc. v. Chromatic Commc'ns Ent., Inc.*, 498 U.S. 533, 541-47 (1991)). Sanctions may be imposed either on motion or *sua sponte*. On its own, the Court may order an attorney, law firm, or party to show cause why such conduct specifically described in the order has not violated Rule 11(b). Fed. R. Civ. P. 11(c)(3).[3] If the Court determines that Rule 11(b) has been violated, the Court may impose an appropriate sanction on the attorney, law firm, or party responsible for the violation. Fed. R. Civ. P. 11(c)(1). The central purpose of court-imposed sanctions is to "deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

The Fifth Circuit has recognized that "the district court is vested with considerable discretion in determining the 'appropriate' sanction to impose upon the violating party." *Thomas*, 836 F.2d at 876–77. "What is 'appropriate' may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." *Id.* at 878. In considering what form of sanction to impose, the Court may consider: (1) whether the conduct was willful or negligent; (2) whether the activity was isolated or part of a pattern of activity; (3) whether the conduct affected only a single event within the case or the entire litigation; (4) any previous similar conduct by the attorney; (5) whether the conduct was intended to cause injury; (6) the effect of the conduct on the litigation in terms of time and expense; (7) whether the responsible party was trained in the law; and (8) what

---

[3] This procedure provides the person with the required notice and opportunity to respond. Fed. R. Civ. P. 11 Advisory Committee's note to 1993 amendment.

10

sanction, given the financial resources of the responsible person, is needed to deter similar activity by other litigants. *Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1190 (E.D. Tex. 1996) (citing Fed. R. Civ. P. 11 Advisory Committee's note to 1993 amendment). Whatever the sanction imposed, it should be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Fed. R. Civ. P. 11(c)(4). Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee. *Id.*

Under the Federal Rules of Civil Procedure, the sanction may include nonmonetary directives; penalties paid into court; or, if upon motion, payment to the movant of reasonable attorneys' fees and other expenses. The Advisory Committee's note to the 1993 amendment of Rule 11 also suggests (1) an issuance of an admonition, reprimand or censure; (2) requiring the attorney participate in seminars or educational programs; (3) an imposition of a fine payable to the Court; (4) referral of the matter to disciplinary authorities; and (5) payment of fees to the opposing side. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment (citing *Manual for Complex Litigation, Second*, § 42.3). Monetary sanctions may not be imposed *sua sponte* unless the Court issued the Rule 11(c)(3) show-cause order before voluntary dismissal or settlement of the claims made by or against the party, or whose attorney, that is to be sanctioned. Fed. R. Civ. P. 11(c)(5)(B). Where there is no Rule 11 motion for sanctions, and the case has already concluded, sanctions are limited to nonmonetary sanctions or a monetary penalty payable to the court. *See Marlin v. Moody Nat. Bank, N.A.*, 533 F.3d 374, 379 (5th Cir. 2008) ("Sanctions imposed on the district court's initiative, as in this instance, are limited to nonmonetary sanctions or a monetary penalty payable to the court." (citing Fed. R. Civ. P. 11(c)(4)).

Examples of appropriate monetary penalties payable to the court and nonmonetary sanctions for violating Rule 11(b)(3) include: (1) a public reprimand contained within a Memorandum Opinion and Order, *see Jenkins v. Methodist Hosps. of Dallas, Inc.*, No. 3:02–CV–1823–M, 2004 WL 2871006 (N.D.Tex. Dec. 14, 2004), *aff'd*, 478 F.3d 255 (5th Cir. 2007); (2) ordering the violating attorney to complete 30 hours of continuing legal education and to submit letters of apology to the opposing party and counsel, *see Crank v. Crank*, No. CIV.A. 3:96-CV-1984D, 1998 WL 713273, at *1 (N.D. Tex. Oct. 8, 1998), *aff'd*, 194 F.3d 1309 (5th Cir. 1999); and (3) a public reprimand, completion of ten hours of continuing legal education in the area of ethics (in addition to the CLE requirements imposed by the Texas State Bar) within 1 year of the sanctions order, presenting the Court with proof of completion of such, a $2,500 fine payable to the Court, and referring the case to the Texas State Bar Association's Disciplinary Committee for further investigation, *Bullard*, 925 F. Supp. at 1191.

Here, Pia's admitted lack of diligence in investigating critical factual contentions represented to this Court is simply inexcusable. This matter has already concluded pursuant to the dismissal order, *see* [Dkt. No. 279]; [Dkt. No. 283], and there was no Rule 11 motion for sanctions. The Court is thus limited to imposing a nonmonetary sanction or a monetary penalty payable to the court. This Memorandum Opinion and Order shall serve as a **public reprimand to Joseph G. Pia** and an Order to him to submit a $1,000 fine payable to the Clerk of this Court within 30 days.

**SIGNED this 26th day of December, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE